In the United States District Court
Southern District of Texas
Houston Division

| | | |
|---|---|---|
| United States of America ex rel. BakerRipley, | § § § § § | |
| Plaintiff, | § | |
| vs. | § § | Case No. 23-cv-1124 |
| Kids U US, Inc. d/b/a Fueling Brains, Cimberli Johnson Darrough, an individual, Antonio Corrales, an individual, Stirling Evaluation and Assessment, LLC, Michele Peters, an individual and MNA Evaluation and Assessment, LLC, | § § § § § § § § | Jury Demanded |
| Defendants. | § | |

### **Defendant Cimberli Johnson Darrough's Motion to Dismiss[1], and Brief in Support**

To the Honorable Judge of Said Court:

Comes now Cimberli Johnson Darrough, Defendant herein, who hereby makes and files this, her Motion to Dismiss, and Brief in Support, and in support whereof would respectfully show unto the Honorable Court as follows:

---

[1] This motion is timely, as the Plaintiff had previously granted an extension to file an answer or responsive pleading by January 17, 2024.

1

# I.
## Introduction

Darrough is one of a number of defendants named in a FCA lawsuit filed by BakerRipley, allegedly to recover amounts fraudulent extracted from the Plaintiff in connection with its administration of programs offered in the Houston area on behalf of Head Start, the federal program aimed at helping underprivileged children. The fact of the matter is that BakerRipley is guilty of gross mismanagement of its contracts, and is seeking to deflect blame from itself onto others by this lawsuit. However, its more immediate problem with the claims brought against Darrough is its pleadings are insufficient and fail to state a claim against Darrough under the False Claims Acts, and so should be dismissed.

# II.
## Dismissal Standard

A. <u>Rule 9(b) Standard</u>

When a suit alleges the defendant committed fraud, Rule 9(b) imposes a heightened pleading standard: "In alleging fraud ... a party must state with particularity the circumstances constituting fraud ..." Fed. R. Civ. Pro. 9(b); *accord, Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008). This requires the plaintiff to plead the "who, what, when, where and how" of the supposed fraud. *Colonial Oaks Assisted Living Lafayette, L.L.C. v. Hannie*

*Development, Inc.*, 972 F.3d 684, 693 (5th Cir. 2020); *West African Ventures, Ltd. v. Fleming*, 634 F.Supp.3d 391, 397 (S.D. Tex. 2022). A suit brought under the False Claims Act are subject to the requirements of Rule 9(b). *United States ex rel. Colquitt v. Abbott Laboratories*, 858 F.3d 365, 371 (5th Cir. 2017); *United States ex rel. Patel v. Catholic Health Initiatives*, 312 F.Supp.3d 584, 594 (S.D. Tex. 2018). Whether a claim is subject to dismissal for noncompliance with Rule 9(b) is determined using the same rules that determine if a claim is subject to dismissal under Rule 12(b)(6). *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996).

B. <u>Rule 12(b)(6) Standard</u>

Rule 12(b)(6) mandates the dismissal of a lawsuit if it "fail[s] to state a claim upon which relief can be granted. Fed. R. Civ. Pro. 12(b)(6). To avoid dismissal, a plaintiff's pleading must both provide fair notice of the nature of his claims, and assert plausible factual allegations supporting the claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79, 129 S.Ct. 1937 (2009). The claims must make the relief sought "plausible, not merely conceivable," *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 186 (5th Cir. 2009), and the Court should not "strain to find inferences favorable to the plaintiff." *Dorsey*, 540 F.3d at 338. In deciding a Rule 12(b)(6) motion, the Court may consider: (1) the Complaint; (2) attachments thereto; (3) attachments to the

3

Motion that were referenced in the Complaint, and which are central to the claims in the suit; and (4) things of which the Court may take judicial notice. *Id.*

III.
Arguments and Authorities

A.  False Claims Suits Generally

Generally speaking, the False Claims Act covers all fraudulent efforts to get the federal government to pay out money or property. *United States v. Neifert-White Co.*, 390 U.S. 228, 233, 88 S.Ct. 959 (1968). As such, the FCA is limited: it does not cover all fraud committed against the government, only fraud related to a claim for payment. *United States ex rel. Bennett v. Medtronic, Inc.*, 747 F.Supp.2d 745, 764 (S.D. Tex. 2010).

A claim under the FCA has four elements: (1) a false statement or fraudulent course of conduct regarding a claim; (2) made or carried out with the requisite scienter; (3) that was material; (4) that caused the federal government to pay out money or forfeit monies due. *United States v. Bollinger Shipyards, Inc.*, 775 F.3d 255, 259 (5th Cir. 2014); *United States ex rel. Longhi v. United States*, 575 F.3d 458, 467-68 (5th Cir. 2009). A "claim" on which a FCA suit may be based is a request or demand, under contract or otherwise, for money or property from the federal government. 31 U.S.C. §

4

3729(b)(2); *Abbott v. BP Exploration & Production, Inc.*, 781 F.Supp.2d 453, 461 (S.D. Tex. 2011). The scienter needed for a FCA claim is actual knowledge a statement is false, or that it was made with reckless disregard for the truth. *Bollinger Shipyards*, 775 F.3d at 259-60.

Under the FCA, a claim can be false in one of three ways:

1. "factually false," meaning it is based on either an incorrect description of the goods and services provided, or seeks payment for goods and services not provided, *Medtronic,* 747 F.Supp.2d at 765;

2. "legally false" (also referred to as "false certification"), meaning when the claimant falsely certifies his compliance with a statute or regulation, *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 902 (5th Cir. 1997); and

3. "promissory fraud" (also known as "fraud in the inducement"), where the claimant certified it would comply with a statute, regulation or term in the future, knowing at the time he promised that he would not do so. *United States ex rel. Graves v. ITT Educational Svcs., Inc.*, 284 F.Supp.2d 487, 503 (S.D. Tex. 2003), *aff'd*, 111 Fed.Appx. 296 (5th Cir. Oct. 20, 2004), *cert. denied*, 544 U.S. 978, 125 S.Ct. 1869 (2005) (also noting this is a "rare" basis for FCA liability, and that "there is no inference of

5

fraudulent intent not to perform from the mere fact that a promise made is subsequently not performed").

The courts analyze FCA suits through the prism of these categories in order to maintain the "crucial distinction between punitive FCA liability and ordinary breaches of contract." *United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 268 (5th Cir. 2010).

The materiality requirement means the false statement is one that has to be made in order to receive the payment. *United States ex rel. Spicer v. Westbrook*, 751 F.3d 354, 366 (5th Cir. 2014). The Supreme Court has characterized the materiality requirement as a "rigorous" one. *United Health Svcs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 181, 136 S.Ct. 1989 (2016). It is "rigorous" because not every statutory, regulatory or contract requirement is automatically "material" to requests for payment, "even if they are labeled as conditions of payment." *United Health Svcs.*, 579 U.S. at 191. The limitations imposed by the materiality requirement is the means courts use to preclude the FCA from becoming "an all-purpose anti-fraud statute," or "a vehicle for punishing garden-variety breaches of contract or regulatory violations. *Id.* at 194. This means a representation may not be material even if the government could have declined a request for payment if it knew some representation was not wholly true. *Id.*, at 194-96.

B. Plaintiff's Claims

The Plaintiff's First Amended Complaint, Doc. 8, is nothing if not prolix. However, its length is not an indication that the pleading is sufficient — a careful reading of it does not help understand what it is that Darrough is supposed to have done that violates the FCA.

Plaintiff does not characterize the basis of its claims as factually false, legally false or promissory fraud — these terms appear nowhere in its pleading. With respect to Darrough, this is to be expected, because Darrough worked for the Plaintiff, and so was not in a position to be contracting with it. Instead, in accusing Darrough, the Plaintiff relies on innuendo and speculation (with allegations often explicitly made on "information and belief" that some course of events was "likely," or even merely "possible," *see, e.g.*, Doc. 8, ¶¶ 14, 16, 37, 47, 96, 108-09, 111, 115), asserting Darrough must have been doing something wrong because some of those who contracted to provide professional services to the Plaintiff for the benefit of children were academics who had been involved with Darrough's own dissertation. *See, e.g.*, Doc. 8, ¶¶ 4, 8-9, 44-46, 86. It asserts Darrough "assisted" other defendants in receiving contracts from the Plaintiff, and "facilitated" their being paid, Doc. 8, ¶¶ 8, 46-47, but never asserts she made a claim or that anything she did was material to the payment of claims, under the definition set forth above.

7

They claim she "authorized" contracts and payments, *see, e.g.*, Doc. 8, ¶¶ 48, 80-81, 83, 87, an assertion that (in addition to being factually false, an issue the Court cannot consider in connection with this Motion), is also not the assertion that Darrough made a "claim" that can be the basis of a FCA claim. The Plaintiff complains about the supposed falsity of statements Darrough made after the payments it seeks to recoup had been made, *see, e.g.*, Doc. 8, ¶¶ 69-71, statements which (in addition to not being false, as the Plaintiff claims) fails to explain how the statement could be "material" as the term is used in the FCA, having been made after the payment was made. The Plaintiff complains of supposed marketing done to third parties, without ever explaining what any of this has to do with the FCA claim it brings, or how this supposed "marketing" led it to make payments it now claims were improper. *See, e.g.*, Doc. 8, ¶¶ 101-09. The Plaintiff complains about the existence of a non-profit entity Darrough established, although what it was supposed to have done or how Darrough was supposed to have used it to violate the FCA with respect to the Plaintiff goes unexplained. *See, e.g.*, Doc. 8, ¶¶ 10, 47, 105, 110. Finally, the Plaintiff even tries to cite anodyne statements by Darrough, following up regarding some alleged defect in the performance of some contract, trying to spin her request for more information as "proof" that Darrough was somehow engaged in fraud, the kind of heads-I-

win-tails-you lose assertion insufficient to state any claim, much less a fraud claim. *See, e.g.*, Doc. 8, ¶ 64.[2]

The Plaintiff's pleading is insufficient under Rule 9(b), and also fails to state a claim against Darrough for which relief can be granted. While the lengthy First Amended Complaint sets for a lot of who, what, when, where and how, none of it says anything about Darrough related to the relevant issue, supposed violations of the FCA. Even if the Court assumes the suppositions made about Darrough by the Plaintiff are accurate, they do not assert she made any claims that are factually false, legally false or which qualify as promissory fraud under the FCA, or that anything she said was "material" to a payment. Instead, the Plaintiff tries to impugn Darrough generally, spinning her relationships and actions as fraud. This is not enough — there must be a connection between alleged fraud and the claim. The Plaintiff's suppositions about what are "likely" and "possible" are insufficient.

Rule 9(b) requires "particularity" regarding the "circumstances constituting fraud ..." Fed. R. Civ. Pro. 9(b). The Plaintiff's efforts to substitute volume for quality, and supposition for fact, are insufficient. Likewise, Rule 12(b)(6) requires pleading plausible facts that support the

---

[2] "I'm not guilty!" "That's exactly what a guilty person would say." The specific logical fallacy of this kind of argument is "affirming the consequent."

9

specific legal claim brought against the defendant, something the Plaintiff failed to do. Accordingly, the Plaintiff's suit against Darrough ought to be dismissed pursuant to Fed. R. Civ. Pro. 9(b) and 12(b)(6).

Wherefore, premises considered, Darrough prays her Motion be granted, and the case against her dismissed with prejudice, for the reasons set forth herein.

Darrough prays for such other and further relief, general or special, in law or in equity, to which she may prove herself to be justly entitled.

Respectfully submitted,

The Singhal Law Firm


*/s/ Dinesh H. Singhal*
Dinesh H. Singhal
Texas Bar No. 24003383
dinesh@singhallaw.com
2700 Post Oak Blvd., Suite 1750
Houston, Texas 77056
Tel: 713.222.8500

Attorney for Cimberli Darrough

## Certificate of Service

The undersigned hereby certifies that a true and correct copy of the foregoing Motion has been served on Joseph E. Hoffer, lead counsel of record for the Plaintiff, c/o Schulman Lopez, 845 Preston Road, San Antonio, Texas 78258 and Jill ondrejko Venezia, lead counsel of record the United States of America, through the Court's CM/ECF system, on this the 16 day of January, 2023.

*/s/ Dinesh H. Singhal*
Dinesh HariKiran Singhal