# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| United States of America, ex rel. BakerRipley 4450 Harrisburg, Suite 200 Houston, TX 77011 | § § § § § | |
| & BakerRipley<br>　　　Plaintiffs | § § § | |
| v. | § § | Case No. 23-CV-1124 |
| Kids U US, Inc. d/b/a Fueling Brains, Cimberli Johnson Darrough, an individual, Antonio Corrales, an individual, Sterling Evaluation and Assessment, LLC, Michele Peters, an individual, and MNA Evaluation and Assessment, LLC<br>　　　Defendants | § § § § § § § § § | |

## CORRALES DEFENDANTS' MOTION TO DISMISS RELATOR'S SECOND AMENDED COMPLAINT

TO THE HONORABLE JUDGE LEE ROSENTHAL:

Pursuant to Federal Rule of Civil Procedure 9(b) and 12(b)(6), Defendants Antonio Corrales ("Dr. Corrales") and Sterling Evaluation and Assessment, LLC (collectively, the "Corrales Defendants") submit this memorandum in support of its partial motion to dismiss Plaintiff/Relator BakerRipley's Second Amended Complaint (the "Complaint"), and in support would respectfully show as follows:

# I. NATURE AND TIMELINE OF LITIGATION

1. Plaintiff/Relator BakerRipley ("Relator") filed this qui tam action under seal on March 27, 2023. [Dkt. 1]. Relator brings False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733, claims under Sections 3729(a)(1)(A) and (B) ("affirmative FCA claims"), Section 3729(a)(1)(G) (commonly referred to as "reverse FCA claims"), and Section 3729(a)(1)(C) (conspiracy to violate the FCA). Relator also brings state law claims for fraud, fraud by nondisclosure, civil conspiracy, breach of contract and covenant of good faith and fair dealing, unjust enrichment, payment by mistake, money had and received, and violation of the Texas Theft Liability Act ("TTLA").

2. On October 18, 2023, after investigating the allegations, the federal government ("the Government") declined to intervene in this case. [Dkt. 7]. On November 6, 2023, the Court ordered that the case be unsealed and served upon the Defendants by Relator. [Dkt. 10].

3. Relator filed its First Amended Complaint on October 24, 2023, [Dkt. 8] and its Second Amended Complaint on February 2, 2024. [Dkt. 22].

4. Upon information and belief, all Defendants have been served.

## II.   TABLE OF CONTENTS

I.   NATURE AND TIMELINE OF LITIGATION ................................2

II.   TABLE OF CONTENTS ...........................................3

III.   TABLE OF AUTHORITIES ........................................3

IV.   SUMMARY ...................................................10

V.   TIMELINESS OF MOTION.........................................10

VI.   STANDARD OF REVIEW ..........................................11

    A.   The Rule 9(b) Standard........................................11

    B.   The Rule 12(b)(6) Standard....................................12

VII.   ARGUMENT ...................................................12

    A.   False Claims Act ...........................................12

        (1)   Overview of the Act .......................................12

        (2)   Liability under the Act ....................................14

            (a)   "Falsity" Requirement...............................14

            (b)   "Scienter" Requirement .............................15

    B.   FCA Claims................................................16

        (1)   Claims for False Submissions and False Statements .................16

            (a)   Failure to Meet Rule 9(b) "Particularity" Pleading Requirement...................................17

            (b)   The Theory of Implied False Certification Does Not Apply.........18

                (i)   No Liability Under Head Start Act....................19

                (ii)   No Violation Under Anti-Kickback Act ...........................20

            (c)   The Public Disclosure Bar Applies ...............................22

| | (2) | Reverse False Claims | 23 |
|---|---|---|---|
| | (3) | FCA Conspiracy Claim | 24 |
| **C.** | | **Common-Law Claims** | **26** |
| | (1) | Failure to Meet FRCP 12(b)(6) and 9(b) Pleading Standards | 26 |
| | | (a) Claims for Fraud and Fraud by Nondisclosure | 26 |
| | | (b) Claim for Civil Conspiracy | 27 |
| | | (c) Quasi-Contractual Claims | 28 |
| **D.** | | **TTLA Claim** | **28** |
| **VIII.** | | **REQUEST FOR RELIEF** | **29** |

# III. TABLE OF AUTHORITIES

## CASES

*Abbott v. BP Exploration & Production, Inc.*,
  781 F.Supp.2d 453 (S.D. Tex. 2011) ...................................................................14

*Al-Tamimi v. Adelson*,
  916 F.3d 1 (D.C. Cir. 2019) ........................................................................ 28

*Ashcroft v. Iqbal*,
  556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) .....................................12

*Banc One Capital Partners Corp. v. Kneipper*,
  67 F.3d 1187 (5th Cir. 1995) ...................................................................... 28

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) .....................................12

*Blusal Meats, Inc. v. United States*,
  638 F.Supp. 824 (S.D.N.Y. 1986) ................................................................ 26

*Chihi v. Cath. Health Initiatives*,
  No. 4:18-CV-00123, 2022 WL 2652135 (S.D. Tex. July 8, 2022)....................................25

*Fortune Production Co. v. Conoco, Inc.*,
  52 S.W.3d 671 (Tex. 2000) ........................................................................ 29

*Gines v. D.R. Horton, Inc.*,
  699 F.3d 812 (5th Cir. 2012) ......................................................................12

*Gregory v. Houston Independent School Dist.*,
  No. CV H-14-2768, 2016 WL 5661701 (S.D. Tex. Sept. 30, 2016)................................... 11

*Hawaii ex rel. Torricer v. Liberty Dialysis-Hawaii LLC*,
  512 F.Supp.3d 1096 (D. Haw. 2021) ...............................................................25

*Holcomb v. State*,
  445 S.W.3d 767 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) ................................ 30

*In re Deepwater Horizon*,
  857 F.3d 246 (5th Cir. 2017) ...................................................................... 28

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
    762 F.Supp.2d 942 (S.D. Tex. 2010) ................................................................. 29

*Jones v. The Park at Lakeside Apartments*,
    No. CIV.A. H-08-0001, 2008 WL 4820083 (S.D. Tex. Nov. 5, 2008) ........................... 13

*Porter-Garcia v. Travis Law Firm, P.C.*,
    564 S.W.3d 75 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) ............................... 30

*Stewart Title Guar. Co. v. Mims*,
    405 S.W.3d 319 (Tex. App.—Dallas 2013, no pet.) ................................................ 29

*Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*,
    300 S.W.3d 348 (Tex. App.—Dallas 2009, pet. denied) ............................................ 30

*U.S. ex rel. Bennett v. Bos. Sci. Corp.*,
    No. CIV.A. H-07-2467, 2011 WL 1231577 (S.D. Tex. Mar. 31, 2011) ................... 13, 15, 18

*U.S. ex rel. Campbell v. KIC Development, LLC*,
    No. EP-18-CV-193-KC, 2019 WL 6884485 (W.D. Tex. Dec. 10, 2019) ......................... 29

*U.S. ex rel. Foster v. Bristol-Myers Squibb Co.*,
    587 F.Supp.2d 805 (E.D. Tex. 2008) .................................................................. 11

*U.S. ex rel. Haight v. RRSA (Commercial Div.), LLC*,
    No. 16-cv-1975, 2020 WL 6163139 (N.D. Tex. Oct. 20, 2020) .................................. 21

*U.S. ex rel. Hebert v. Dizney*,
    295 F. App'x 717 (5th Cir. 2008) ..................................................................... 21

*U.S. ex rel. Kasowitz Benson Torres LLP v. BASF Corp.*,
    929 F.3d 721 (D.C. Cir. 2019) ........................................................................ 26

*U.S. ex rel. Ligai v. ETS-Lindgren Inc.*,
    No. CIV.A. H-112973, 2014 WL 4649885 (S.D. Tex. Sept. 16, 2014) ...................... 24, 25

*U.S. ex rel. McFarland v. Fla. Pharmacy Sols.*,
    358 F. Supp. 3d 1316 (M.D. Fla. 2017) .............................................................. 20

*U.S. ex rel. Reagan v. E. Tex. Med. Ctr. Reg'l Healthcare Sys.*,
    384 F.3d 168 (5th Cir. 2004) ......................................................................... 22

*U.S. ex rel. Sonnier v. Standard Fire Ins. Co.*,
    84 F. Supp. 3d 575 (S.D. Tex. 2015) .................................................................. 11

*U.S. ex rel. Wilkins v. N. Am. Constr. Corp.*,
    101 F. Supp. 2d 500 (S.D. Tex. 2000) ...........................................................11, 17

*U.S. v. Bracco USA, Inc.*,
    No. 20CV8719 (EP) (JSA), 2022 WL 17959578 (D.N.J. Dec. 27, 2022)...........................25

*U.S. v. Cath. Health Initiatives*,
    No. 4:18-CV-123, 2022 WL 2657131 (S.D. Tex. Mar. 31, 2022) .......................................25

*United States ex rel. Atkinson v. Pennsylvania Shipbuilding Co.*,
    2000 WL 1207162 (E.D. Pa. Aug. 24, 2000) .....................................................25

*United States ex rel. Bain v. Georgia Gulf Corp.*,
    386 F.3d 648 (5th Cir. 2004)................................................................... 24

*United States ex rel. Bennett v. Medtronic, Inc.*,
    747 F.Supp.2d 745 (S.D. Tex. 2010).................................................... 14, 18, 26

*United States ex rel. Davis v. District of Columbia*,
    679 F.3d 832 (D.C. Cir. 2012).......................................................... 22, 24

*United States ex rel. Durcholz v. FKW, Inc.*,
    189 F.3d 542 (7th Cir. 1999).............................................................. 26

*United States ex rel. Grubbs v. Kanneganti*,
    565 F.3d 180 (5th Cir. 2009) ......................................................... passim

*United States ex rel. Hopper v. Anton*,
    91 F.3d 1261 (9th Cir. 1996) ...............................................................13

*United States ex rel. Lamers v. City of Green Bay*,
    168 F.3d 1013 (7th Cir. 1999) ............................................................ 20

*United States ex rel. Longhi v. United States*,
    575 F.3d 458 (5th Cir. 2009) ......................................................11, 14, 18

*United States ex rel. Matheny v. Medco Health Solutions, Inc.*,
    671 F.3d 1217 (11th Cir. 2012) ............................................................25

*United States ex rel. Ruscher v. Omnicare, Inc.*,
    No. 4:08-CV-3396, 2014 WL 2618158 (S.D. Tex. June 12, 2014) ...................................... 13

*United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*,
    125 F.3d 899 (5th Cir. 1997) ................................................................11, 17, 20, 28

*United States ex rel. Vavra v. Kellogg Brown & Root, Inc.*,
    903 F.Supp.2d 473 (E.D. Tex. 2011) ................................................................21

*United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*,
    336 F.3d 375 (5th Cir. 2003) ................................................................13

*United States ex. rel. Steury v. Cardinal Health, Inc.*,
    625 F.3d 262 (5th Cir. 2010) ................................................................15

*United States v. Bollinger Shipyards, Inc.*,
    775 F.3d 255 (5th Cir. 2014) ................................................................ 14, 15

*United States v. Columbia Healthcare Corp.*,
    No. CIV.A. H-98-861, 2005 WL 1924187 (S.D. Tex. Aug. 10, 2005) .............................. 13

*United States v. McNinch*,
    356 U.S. 595, 78 S.Ct. 950, 2 L.Ed.2d 1001 (1958) ............................................ 13

*United States v. Neifert-White Co.*,
    390 U.S. 228, 88 S.Ct. 959 (1968) ................................................................ 13

*United States v. Southland Mgmt. Corp.*,
    326 F.3d 669 (5th Cir. 2003) ................................................................19

*United Teacher Assocs. Ins. Co. v. Union Labor Life Ins. Co.*,
    414 F.3d 558 (5th Cir. 2005) ................................................................ 28

*Universal Health Servs., Inc. v. U.S. ex rel. Escobar*,
    579 U.S. 176, 136 S. Ct. 1989, 195 L.Ed.2d 348 (2016) ....................................15, 18, 19

*Wellogix, Inc. v. Accenture, LLP*,
    788 F.Supp.2d 523 (S.D. Tex. 2011) ................................................................ 30

*Williams v. WMX Techs., Inc.*,
    112 F.3d 175 (5th Cir. 1997) ................................................................ 11

## STATUTES

31 U.S.C. § 3729 .................................................................................. passim

31 U.S.C. § 3730 ............................................................................ 13, 22, 27

41 U.S.C. §§ 87 et seq. ............................................................................ 20

42 U.S.C. § 9837 ..................................................................................... 19

45 C.F.R. § 1303 ..................................................................................... 19

Tex. Civ. Prac. & Rem. Code § 134.003 ................................................. 30

## RULES

Fed. R. Civ. P. 12(b)(6) ............................................................ 1, 12, 16, 31

Fed. R. Civ. P. 8(a)(2) ............................................................................. 12

Fed. R. Civ. P. 9(b) ........................................................................... passim

## IV.  SUMMARY

5.     Relator has brought suit under the False Claims Act ("FCA") to recover funds that it alleges were fraudulently extracted from the Government in connection with Relator's administration of federal Head Start and Early Head Start (collectively, "Head Start") program grants to local Houston-area entities.

6.     Understandably seeking to deflect blame for its egregious failures in managing its own contracts, Relator attempts to spin a narrative in which the Corrales Defendants conspired with other individuals and businesses to defraud the federal government through the submission of false claims for payment.

7.     However, Relator's claims against the Corrales Defendants are defective due to their failure to conform to Federal Rule of Civil Procedure ("FRCP") 9(b)'s heightened pleading standard applied to FCA claims, as well as its failure to state a claim entitling it to relief under FRCP 12(b)(6).

8.     Accordingly, the Corrales Defendants request the Court dismiss all counts in Relator's Second Amended Complaint with prejudice, with the exception of Count Seven (Breach of Contract).

## V.  TIMELINESS OF MOTION

9.     This Motion is timely filed in accordance with the extended deadline granted to defendants by Relators for the filing of answers and responsive pleadings in this lawsuit and the Court's Order [Dkt. 32] extending the deadline to March 21, 2024.

# VI.  STANDARD OF REVIEW

## A.    The Rule 9(b) Standard

10.    A claim filed under the False Claims Act must comply with the heightened particularity pleading standard provided in Rule 9(b). *United States ex rel. Thompson v. Thompson*, 125 F.3d 899, 903 (5th Cir. 1997); *United States ex rel. Longhi v. United States*, 575 F.3d 458, 468 (5th Cir. 2009). Specifically, FRCP 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Malice, intent, knowledge, and other condition of mind of a person may be alleged generally." *Id.*

11.    Although the particularity Rule 9(b) demands differs with each case, "[a]t a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where, and how[1]' of the alleged fraud." *Thompson*, 125 F.3d at 903 (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 179 (5th Cir. 1997)); *see U.S. ex rel. Sonnier v. Standard Fire Ins. Co.*, 84 F. Supp. 3d 575, 585 (S.D. Tex. 2015). The Fifth Circuit "strictly interprets Rule 9(b)," *Gregory v. Houston Independent School Dist.*, No. CV H-14-2768, 2016 WL 5661701, at *3 (S.D. Tex. Sept. 30, 2016), applying it to FCA complaints "with 'bite' and 'without apology.'" *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009) (quoting *Williams*, 112 F.3d at 178). Given the requirement of particularity, "[g]enerally, pleadings of fraud cannot be based on information and belief." *U.S. ex rel. Foster v. Bristol-Myers Squibb Co.*, 587 F.Supp.2d 805, 819 (E.D. Tex. 2008).

---

[1]    In cases in which the mechanism or basis of the alleged fraud is not otherwise apparent from the face of the complaint, the Fifth Circuit has consistently applied the Rule 9(b) standard to require a plaintiff to explain how the fraud worked. *U.S. ex rel. Wilkins v. N. Am. Constr. Corp.*, 101 F. Supp.2d 500, 512–13 (S.D. Tex. 2000).

## B. The Rule 12(b)(6) Standard

12. The Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see Ashcroft v. Iqbal*, 556 U.S. 662, 663, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

13. To survive Defendants' Rule 12(b)(6) Motion to Dismiss, Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012) (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft*, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555. As the claimant, Plaintiff is required to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*

## VII.  ARGUMENT

### A.  False Claims Act

#### (1)  Overview of the Act

14. The False Claims Act is a remedial statute first enacted in 1863 to curb widespread fraud during the Civil War. *Grubbs*, 565 F.3d at 184. The FCA applies to fraudulent attempts to induce the federal government to remit money or property. *United States v. Neifert-White Co.*, 390

U.S. 228, 233, 88 S.Ct. 959 (1968); *see* 31 U.S.C. §§ 3729, 3730. However, the Supreme Court has cautioned that the FCA does not punish every type of fraud committed on the government. *United States v. McNinch*, 356 U.S. 595, 599, 78 S.Ct. 950, 2 L.Ed.2d 1001 (1958); *see U.S. ex rel. Bennett v. Bos. Sci. Corp.*, No. CIV.A. H-07-2467, 2011 WL 1231577, at *12 (S.D. Tex. Mar. 31, 2011). "The [FCA] attaches liability, not to the underlying fraudulent activity, but to the 'claim for payment.' " *United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1266–67 (9th Cir. 1996); *see United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 382–83 (5th Cir. 2003).

15.     The FCA provides for civil suits brought by both the Attorney General and by private persons, referred to as "relators." *Grubbs*, 565 F.3d at 184. "[R]elators share in the government's winnings, receiving a bounty of up to thirty percent of the government's proceeds." *United States ex rel. Ruscher v. Omnicare, Inc.*, No. 4:08-CV-3396, 2014 WL 2618158, at *2 (S.D. Tex. June 12, 2014) (quotation omitted). Importantly, the FCA makes clear that notwithstanding the relator's statutory right to the government's share of the recovery, the underlying fraud claim always belongs to the government. *Jones v. The Park at Lakeside Apartments*, No. CIV.A. H-08-0001, 2008 WL 4820083, at *1 (S.D. Tex. Nov. 5, 2008); *see* 31 U.S.C. § 3730(c)(5) (providing that "the Government may elect to pursue its claim through any alternate remedy.").

16.     Actions arising under the quit tam provisions of the False Claims Act are filed under seal to provide the United States an opportunity to investigate and decide whether to intervene. *United States v. Columbia Healthcare Corp.*, No. CIV.A. H-98-861, 2005 WL 1924187, at *1 (S.D. Tex. Aug. 10, 2005); *see* 31 U.S.C. § 3730(b)(3). When the government chooses not to intervene, a relator bringing a qui tam action for a violation of § 3729 is representing the interests of the

government and prosecuting the action on its behalf. *Jones*, 2008 WL 4820083, at *1; *see* 31 U.S.C. § 3730(b)(1).

**(2)    Liability under the Act**

17.    Although the Act creates liability for seven categories of conduct,[2] most FCA suits arise from allegations that the defendant knowingly submitted or caused another to submit a false or fraudulent claim[3] for payment to the government. 31 U.S.C. § 3729(a)(1)(A). To prove this type of FCA violation, a plaintiff must demonstrate the following: (1) a false statement or fraudulent course of conduct regarding a claim; (2) made or carried out with the requisite scienter; (3) that was material; (4) that caused the federal government to pay out money or forfeit monies due. *United States v. Bollinger Shipyards, Inc.*, 775 F.3d 255, 259 (5th Cir. 2014); *Longhi*, 575 F.3d at 467-68.

**(a)    "Falsity" Requirement**

18.    Under the Act, a claim for payment can be categorized as false in any one of three ways:

1) "factually false," which involves an incorrect description of goods or services provided or a request for reimbursement for goods or services never provided. *United States ex rel. Bennett v. Medtronic, Inc.*, 747 F.Supp.2d 745, 765 (S.D. Tex. 2010);

---

[2]    For example, liability is also triggered under the Act when one knowingly uses a false record or statement material to a fraudulent claim or improperly evades an obligation to pay the government). 31 U.S.C. § 3729(a)(1)(B), (G).

[3]    Precisely, a "claim" upon which an FCA suit may be based is a request or demand, under contract or otherwise, for money or property from the federal government. 31 U.S.C. § 3729(b)(2); *Abbott v. BP Exploration & Production, Inc.*, 781 F.Supp.2d 453, 461 (S.D. Tex. 2011).

2) "legally false," which involves a false certification of compliance with a material statutory, regulatory, or contractual requirement. *Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 579 U.S. 176, 136 S. Ct. 1989, 195 L.Ed.2d 348 (2016); and

3) "promissory fraud," where the defendant certified it would comply with a statute, regulation, or term in the future, knowing at the time of the promise that he would not do so. *Id.* at 503 (emphasizing that fraud in the inducement is a "rare" basis for FCA liability, and that "there is no inference of fraudulent intent not to perform from the mere fact that a promise made is subsequently not performed").

19.     Courts evaluate FCA suits through the prism of these categories so as to maintain the "crucial distinction between punitive FCA liability and ordinary breaches of contract." *United States ex. rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 268 (5th Cir. 2010) (citation omitted).

### (b)     "Scienter" Requirement

20.     An FCA claim must allege that the false statements were "knowingly" made or caused to be made. *Bos. Sci. Corp.*, 2011 WL 1231577, at *14. The FCA defines "knowing or knowingly" to mean "that a person, with respect to information," (i) "has actual knowledge of the information"; (ii) "acts in deliberate ignorance of the truth or falsity of the information"; or (iii) "acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1–3); *see Bollinger Shipyards*, 775 F.3d at 259–60 (the requisite scienter for an FCA claim is actual knowledge that a statement is false, or that it was made with reckless disregard for the truth).

21.     "To plead with particularity the circumstances constituting fraud for a FCA section [3729(a)(1)(A) ] claim, a relator's complaint, if it cannot allege the details of an actually submitted false claim, may nevertheless survive by alleging particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Id.* at 190. To plead with the requisite particularity a § 3729(a)(1)(B) claim, the relator must

allege facts linking a scheme to submit false claims to the submission of false claims. *Solvay Pharms.*, 588 F.3d at 1325.

## B.  FCA Claims

22.    Relator brings four different claims against Defendants for violation of the FCA, alleging causes of action for: (1) the submission of, or causing the submission of, false claims;[4] (2) use of false statements;[5] (3) reverse false claims;[6] and (4) conspiracy to violate the FCA.[7] Despite the long-windedness of its Complaint, Relator fails to support its allegations with the requisite particularity as to the circumstances constituting fraud, nor does it plead plausible facts supporting any of the FCA claims asserted against Defendants. *See* Fed. R. Civ. Proc. 9(b), 12(b)(6). As such, Relator's FCA claims against the Corrales Defendants should be dismissed pursuant to FRCP 9(b) and 12(b)(6).

### (1)  Claims for False Submissions and False Statements

23.    Relator's FCA claim against the Corrales Defendants for the submission of false claims is inadequate due to its inability to conform to Rule 9(b)'s pleading requirements, as well as deficient as a matter of law in its failure to state a claim under Rule 12(b)(6), thus warranting its dismissal.

---

[4]    31 U.S.C. § 3729(a)(1)(A).

[5]    31 U.S.C. § 3729(a)(1)(B).

[6]    31 U.S.C. § 3729(a)(1)(G).

[7]    31 U.S.C. § 3729 (a)(1)(C).

### (a) Failure to Meet Rule 9(b) "Particularity" Pleading Requirement

24. Relator's FCA falsity claims are deficient as a matter of law because of its short-comings in demonstrating the prima facie elements of its cause of action in accordance with the requirements of Rule 9(b).

25. Although Relator attempts to set forth the "who, what, when, [and] where"[8] of the alleged fraud, its allegations are riddled with inaccuracies and outright falsehoods. Additionally, Relator utterly fails to allege plausible facts detailing exactly how either the scheme as a whole, or the conduct of the Corrales Defendants, was fraudulent. *See Wilkins*, 101 F. Supp.2d at 512–13 (applying the Rule 9(b) standard to require the plaintiff to explain how the fraud worked). Instead, Relator relies on speculative and conclusory statements, as well as outright false assertions, in its attempt to spin a narrative that Dr. Corrales helped mastermind a nefarious conspiracy to defraud the Government.

26. Although Relator makes several conclusory allegations regarding the Corrales Defendants' creation of "false statements or records material to the false or fraudulent claims"[9] submitted to it, Relator fails to identify specific statements or records fitting this description and explain why they were false. *See Medtronic*, 747 F.Supp.2d at 766; *Graves*, 284 F.Supp.2d at 497, 503. Accordingly, Relator cannot meet the "scienter" element of its false statements claim, under

---

[8] *See Thompson*, 125 F.3d at 903 (citation omitted).

[9] [Dkt. 22 at ¶ 91].

which it carries the burden of showing that specific false statements were "knowingly" made or caused to be made.[10] *Bos. Sci. Corp.*, 2011 WL 1231577, at *14.

27.     Relatedly, Relator cannot meet the "materiality" element of its false statements claim, requiring it to show that the alleged false statements "have the potential to influence the government's decisions," because it fails to directly identify any specific false statements made by the Corrales Defendants. *See Longhi*, 575 F.3d at 470. In summation, Relator's false statement claim fails because it is unable to plead facts plausibly linking a scheme to submit false claims to the submission of false claims, as required to plead its § 3729(a)(1)(B) claim with the necessary particularity. *See Solvay Pharms.*, 588 F.3d at 1325; Fed. R. Civ. P 9(b).

### (b)     The Theory of Implied False Certification Does Not Apply

28.     The theory of "implied false certification" provides that when a defendant submits a claim, it impliedly certifies compliance with all conditions of payment. *Escobar*, 579 U.S. at 186–87. Under the theory, a claim for payment is false and thus gives rise to liability under the FCA when a defendant submitting a claim: (1) omits violations of any statutory, regulatory, or contractual requirements; and (2) the omissions render the defendant's representations misleading with respect to the goods or services provided. *Id.* at 187.

29.     Here, liability does not attach to the Corrales Defendants under implied false certification theory because they did not violate any statutory, regulatory, or contractual requirements in their submission of claims. *Id.*

---

[10]     Conversely, Relator's Complaint relies upon numerous factual misstatements to prop up its faulty narrative concerning Dr. Corrales's relationships with the co-defendants and their alleged scheme, as well as his submission of claims for payment. [*See generally* Dkt. 22].

### (i)      No Liability Under Head Start Act

30.      Firstly, despite Relator's assertion to the contrary, the Corrales Defendants, as vendors providing services to Relator, are not bound by the Head Start Act's ("HSA") conflict-of-interest provisions, nor are they subject to Relator's internal policies governing such matters. Although the Head Start regulations require that *grantees* "comply with all grants management regulations" including their "own procurement procedures," 45 C.F.R. § 1303.55 (emphasis added), the plain language of the HSA provides that these constraints only bind the Head Start agency itself and its governing body, *not* the entities contracting to provide services to the Head Start agency. 42 U.S.C. § 9837(c)(1)(C) (emphasis added). The contracts between Relator and the Corrales Defendants do not feature a conflict-of-interest provision or any similar restraints, a fact that Relator seems to concede given that they make no allegation to this effect. [*See generally* Dkt. 22].

31.      Even assuming, arguendo, that the Corrales Defendants are subject to the Relator's internal conflict-of- interest policies, and they failed to comply with the same, the courts have rejected liability in such situations. *See United States v. Southland Mgmt. Corp.*, 326 F.3d 669, 682 (5th Cir. 2003) (stating that the federal appellate courts have rejected the proposition that claimants knowingly presented false claims in instances of mere contractual or regulatory noncompliance); *United States ex rel. Lamers v. City of Green Bay*, 168 F.3d 1013, 1019 (7th Cir. 1999) ("violations of [agency] regulations are not fraud unless the violator knowingly lies to the government about them.").

### (ii) No Violation Under Anti-Kickback Act

32.     Relators further allege that the Corrales Defendants and Fueling Brains violated the Anti-Kickback Act of 1986[11] ("AKA") by engaging in the payments of "kickbacks" to referral sources recruited to solicit contracts for Fueling Brains. [Dkt. 22 at 34–36]. Under Rule 9(b), Relator must assert "[1] particular details of a scheme to submit false claims paired with [2] reliable indicia that lead to a strong inference that [false] claims were actually submitted" to the government as a result. *Grubbs*, 565 F.3d at 190.

33.     However, Relator's Complaint falls short under this two-prong test, as it fails to assert facts linking the alleged payment of kickbacks to the supposed falsity of the Corrales Defendants' submitted claims for payment. Firstly, Relator fails to provide information regarding the "who, what, when, [and] where"[12] of the alleged kickback scheme. Relator's kickback allegations rely on speculative and conclusory statements made "on information and belief" that alleged—yet unspecified and unproven—unlawful payments may have been made. *See U.S. ex rel. McFarland v. Fla. Pharmacy Sols.*, 358 F. Supp. 3d 1316, 1326 (M.D. Fla. 2017) ("[A] relator cannot base a fraud claim on 'information and belief'"; "[r]ather, [the relator] must allege the time, the circumstance, and the details of the alleged fraud."). Throughout its Complaint, Relator lazily groups all Defendants together: "Defendants…pa[id] each other commissions or 'kickbacks' on the contracts fraudulently obtained." [Dkt. 22 at ¶ 17]; *see also id.* at ¶¶ 20, 37, 53, 56, 57, 69, 151, 158. However, Rule

---

[11]     *See* 41 U.S.C. §§ 87 et seq.

[12]     *See Thompson*, 125 F.3d at 903 (citation omitted).

9(b) requires Relator to narrowly identify the supposedly unlawful conduct attributable to each defendant. *See U.S. ex rel. Hebert v. Dizney*, 295 F. App'x 717, 722 (5th Cir. 2008).

34. Secondly, Relator's Complaint is devoid of any reliable indicia that false claims were actually presented to the Government stemming from the alleged kickback scheme. *Grubbs*, 565 F.3d at 190. To plead falsity, a relator must specifically "tie…acceptance of kickbacks to [the defendant's] submitted claims for payment." *United States ex rel. Vavra v. Kellogg Brown & Root, Inc.*, 903 F.Supp.2d 473, 487 (E.D. Tex. 2011), *rev'd on other grounds*, 727 F.3d 343 (5th Cir. 2013). Absent any contractual restraint regarding the acceptance of kickbacks, which was not present here, a relator can establish such a link only where the defendant "actually passed [the kickback costs] on to the government." *Id.*[13]

35. Relator's complaint lacks any facts demonstrating that the price paid by the Government with respect to the Corrales Defendants' and/or Fueling Brains' contracts with Relator were inflated due to the alleged kickback scheme. Thus, Relator's "Anti-Kickback" allegations fail to meet the requirements imposed by Rule 9(b), and do not give rise to liability under the FCA. *See id.* (dismissing plaintiff government's FCA false submissions claim that failed include evidence linking the defendant's alleged kickbacks to inflated claim for payment submitted to the government, and holding that claim failed to meet Rule 9(b)'s particularity standard).

---

[13]    Courts in the Fifth Circuit have previously noted there is no authority for the proposition that a "violation of the AKA can serve as a basis for an FCA claim." *See U.S. ex rel. Haight v. RRSA (Commercial Div.), LLC*, No. 16-cv-1975, 2020 WL 6163139, at *5 & n.12 (N.D. Tex. Oct. 20, 2020).

### (c)      The Public Disclosure Bar Applies

36.      The public disclosure bar prohibits a qui tam relator from bringing an FCA suit based on fraudulent conduct that has already been disclosed through public channels, unless the relator is an "original source"[14] of the information. 31 U.S.C. § 3730(e)(4)(A).

37.      The Fifth Circuit employs a three-prong test to determine whether the public disclosure bar applies, examining: (1) whether there has been a public disclosure of the allegations of transactions; (2) whether the qui tam action is based upon such publicly disclosed allegations, and (3) if so, whether the relator is the original source of the information. *U.S. ex rel. Reagan v. E. Tex. Med. Ctr. Reg'l Healthcare Sys.*, 384 F.3d 168, 173 (5th Cir. 2004) (citations omitted). Under the public disclosure bar analysis, a crucial inquiry is whether the relator's allegations are "substantially similar" to information already in the public domain. *United States ex rel. Davis v. District of Columbia*, 679 F.3d 832, 836 (D.C. Cir. 2012).

38.      Relator's Complaint repeatedly points to the relationships between Dr. Corrales, Dr. Peters, and Dr. Darrough in support of their FCA claims, alleging that Dr. Corrales and his co-defendants failed to disclose impermissible conflicts of interest created by Dr. Corrales' and Dr. Peters' positions as Dr. Darrough's dissertation advisors, as well as Dr. Corrales' referral fee arrangement with Fueling Brains. However, information concerning the academic advisor-advisee relationship, as well as Dr. Corrales's strategic partnership with Fueling Brains, has been in the public domain since a time well prior to Relator's filing of this lawsuit on March 27, 2023. [Dkt. 1].

---

[14]      An original source is "an individual who…prior to public disclosure…has voluntarily disclosed to the Government the information on which the allegations or transactions in a claim are based, or…has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions…." *See* 31 U.S.C. § 3730(e)(4)(B).

39.     As such, the allegations serving as the basis for Relator's FCA claims are "substantially similar" to information in the public domain prior to Relator's lawsuit. *See Davis*, 679 F.3d at 836. Thus, the public information bar applies to Relator's lawsuit.

**(2)     Reverse False Claims**

40.     In a reverse-false-claims suit, the defendant's alleged conduct "does not result in improper payment by the government to the defendant, but instead results in no payment to the government when a payment is obligated." *U.S. ex rel. Ligai v. ETS-Lindgren Inc.*, No. CIV.A. H-112973, 2014 WL 4649885, at *12 (S.D. Tex. Sept. 16, 2014), *aff'd sub nom. U.S. ex rel. Ligai v. ESCO Techs., Inc.*, 611 F. App'x 219 (5th Cir. 2015) (quoting *United States ex rel. Bain v. Georgia Gulf Corp.*, 386 F.3d 648, 653 (5th Cir. 2004)). Section 3729(a)(1)(G) imposes liability on one who "knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(G).

41.     Crucially, this Court has held that a relator may not "recast[] [its] affirmative FCA claims as reverse false claims," and a claim alleging "a failure to refund the false claims the government paid…is merely recasting [an affirmative] claim…[and] is not actionable under subsection (a)(1)(G)." *Ligai*, 2014 WL 4649885, at *13 (quotation marks and brackets omitted); *see also U.S. v. Bracco USA, Inc.*, No. 20CV8719 (EP) (JSA), 2022 WL 17959578, at *7 (D.N.J. Dec. 27, 2022) ("reverse false claims may not be based on the same conduct as a plaintiff's claims under 31 U.S.C. §§ 3729(a)(1)(A) and (a)(1)(B).").

42.     Thus, the Corrales Defendants' failure to refund "the same money the Government allegedly paid in relation to [Relator's] § 3729(a)(1)(a) and (B) claims" is not actionable

under the reverse FCA provision. *See U.S. v. Cath. Health Initiatives*, No. 4:18-CV-123, 2022 WL 2657131, at *11 (S.D. Tex. Mar. 31, 2022), *report and recommendation adopted sub nom. Chihi v. Cath. Health Initiatives*, No. 4:18-CV-00123, 2022 WL 2652135 (S.D. Tex. July 8, 2022); *see also Hawaii ex rel. Torricer v. Liberty Dialysis-Hawaii LLC*, 512 F.Supp.3d 1096, 1119 (D. Haw. 2021) (stating "substantial authority" holds that "an actionable reverse false claim cannot be based on a defendant's failure to refund the same payment that was obtained by an actionable [affirmative] false claim").

43.     Furthermore, beyond the redundancy issue outlined above, no false record or statement whatsoever was created by the Corrales Defendants, and no overpayment from government to the Corrales Defendants occurred. *See United States ex rel. Matheny v. Medco Health Solutions, Inc.*, 671 F.3d 1217, 1222 (11th Cir. 2012). Thus, the Corrales Defendants were not obligated to make any payment of the funds received as remuneration for the Training Courses to the Government. *See id.*; *Ligai*, 2014 WL 4649885, at *12. As such, no reverse-false-claim liability can attach.

**(3)     FCA Conspiracy Claim**

44.     To prevail on an FCA conspiracy claim, a plaintiff must allege an unlawful agreement between parties. *Graves*, 284 F.Supp.2d at 509 (citing *United States ex rel. Atkinson v. Pennsylvania Shipbuilding Co.*, 2000 WL 1207162, at *12 (E.D. Pa. Aug. 24, 2000)). To state a claim under § 3729(a)(1)(C), a plaintiff must allege facts showing that: (1) the defendant conspired with one or more persons to get a false or fraudulent claim allowed or paid by the United States; (2) that one or more conspirators performed any act to effect the object of the conspiracy; and (3) that the government suffered damages as a result of the false or fraudulent claim. *Blusal Meats, Inc. v. United States*, 638 F.Supp. 824, 828 (S.D.N.Y. 1986), *aff'd*, 817 F.2d 1007 (2d Cir. 1987).

45. The Court must dismiss Relator's FCA conspiracy claim against the Corrales Defendants because Relator has failed to plausibly allege an underlying FCA violation, nor has it adequately pled facts establishing the other prima facie elements of conspiracy.

46. FCA conspiracy claims cannot survive without an underlying substantive violation. *See United States ex rel. Durcholz v. FKW, Inc.*, 189 F.3d 542, 546 n.3 (7th Cir. 1999) (holding that general civil conspiracy principles apply to conspiracy claims under the FCA). "Since liability for civil conspiracy depends on performance of some underlying [wrongful] act, the conspiracy is not independently actionable; rather, it is a means for establishing vicarious liability for the underlying [wrong]." *U.S. ex rel. Kasowitz Benson Torres LLP v. BASF Corp.*, 929 F.3d 721, 728-29 (D.C. Cir. 2019) (citation omitted).

47. As discussed above, the Corrales Defendants did not submit a false claim for payment to Relator at any point. *See Medtronic*, 747 F.Supp.2d at 766; *Graves*, 284 F.Supp.2d at 497, 503. Relator has failed to plead facts plausibly demonstrating that Dr. Corrales' actions were in any way improper with respect to his performance of the contracts. Instead, Relator dubiously attempts to spin a narrative that Dr. Corrales must be guilty of sinister wrongdoing due to his publicly-disclosed relationships with Co-Defendants, without actually pointing to any conduct constituting the creation of an overtly false statement or record, an impermissible conflict of interest, or other violation of his contractual duties owed to Relator.

48. Thus, Relator's FCA conspiracy claim against the Corrales Defendants fails as a matter of law.

**C.      Common-Law Claims**

49.      Relator's common-law claims asserted against the Corrales Defendants (e.g., fraud, fraud by nondisclosure, and civil conspiracy) and Dr. Corrales individually (unjust enrichment, payment by mistake, and money had-and-received) fail as a matter of law due to the deficiencies described below.

**(1)      Failure to Meet FRCP 12(b)(6) and 9(b) Pleading Standards**

50.      The Corrales Defendants expressly incorporate the preceding paragraphs as fully set forth herein for all purposes.

51.      In the alternative, even if Relator's common-law causes of action are somehow not barred because of its status as a partial assignee pursuant to 31 U.S.C. § 3730(b)(1), Relator's claims still fail as a matter of law for failing to adhere to the plausibility-pleading standards provided in the Federal Rules of Civil Procedure. Relator fails to plead facts sufficient to inject its common-law claims with the facial plausibility necessary for relief in accordance with FRCP 12(b)(6), as well as the heightened Rule 9(b) standard applied to Relator's claims for Fraud and Fraud by Nondisclosure.

**(a)      Claims for Fraud and Fraud by Nondisclosure**

52.      The traditional elements of common-law fraud are: (1) a knowing or reckless material misrepresentation; (2) that the tortfeasor intended to act on; and (3) that harmed the plaintiff. *In re Deepwater Horizon*, 857 F.3d 246, 249 (5th Cir. 2017). Under Texas law, a claim for fraud by nondisclosure requires proof of the same elements that must be proven in an affirmative fraud claim, with the exception that the "misrepresentation" element can be proven by nondisclosure

or concealment of material fact in light of a duty to disclose. *United Teacher Assocs. Ins. Co. v. Union Labor Life Ins. Co.*, 414 F.3d 558, 567 (5th Cir. 2005).

53.     Here, as outlined above in discussion of Relator's FCA claims, it has failed to meet Rule 9(b)'s heightened pleading standard by stating the circumstances constituting fraud with particularity. Fed. R. Civ. P. 9(b). Relator has not plead facts setting forth the "who, what, when, where, and how" of any "knowing or reckless material misrepresentation" or omission giving rise to liability for common-law fraud. *See Thompson*, 125 F.3d at 903; *Deepwater Horizon*, 857 F.3d at 249; *Union Labor*, 414 F.3d at 567. As such, the Corrales Defendants cannot be held liable under Relator's common-law fraud theories, and the claims must be dismissed.

### (b)     Claim for Civil Conspiracy

54.     To demonstrate a prima facie case of civil conspiracy, Relator must show: (1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the common scheme. *Al-Tamimi v. Adelson*, 916 F.3d 1, 9 (D.C. Cir. 2019). In order for liability to attach, "there must be an unlawful, overt act in furtherance of the conspiracy." *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1194 (5th Cir. 1995).

55.     Applying the same logic warranting the dismissal of Relator's FCA conspiracy claim, the state-law conspiracy claim must also be dismissed because Relator has failed to plead any underlying fraud, nor has it presented facts showing specific intent to defraud with particularity. *See In re Enron Corp. Sec., Derivative & ERISA Litig.*, 762 F.Supp.2d 942, 1011 (S.D. Tex. 2010).

56. Here, the Corrales Defendants have not committed any underlying unlawful act through which liability can attach. Therefore, Relator's civil conspiracy claim must be dismissed.

### (c) Quasi-Contractual Claims

57. Relator's quasi-contractual claims (e.g., unjust enrichment, payment by mistake, money had and received) are utterly nonsensical and fail as a matter of law because a plaintiff cannot assert a quasi-contract theory while simultaneously alleging the existence of an actual contract. *See Fortune Production Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000) ("[W]hen a valid, express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory"). Pursuant to Texas law, are three of the aforementioned claims are premised on quasi-contractual theories of liability that are "generally precluded by the existence of an express contract." *U.S. ex rel. Campbell v. KIC Development, LLC*, No. EP-18-CV-193-KC, 2019 WL 6884485, at *17 (W.D. Tex. Dec. 10, 2019) (payment by mistake); *Stewart Title Guar. Co. v. Mims*, 405 S.W.3d 319, 339 (Tex. App.—Dallas 2013, no pet.) (unjust enrichment and money had and received).

58. Here, by Relator's own admission, there were valid contracts governing the issues at the core of the parties' dispute. [Dkt. 22 at ¶ 111]. Thus, Relator's common-law claims against the Corrales Defendants must be dismissed.

## D. TTLA Claim

59. Under the Texas Theft Liability Act, "a person who commits theft is liable [civilly] for the damages resulting from the theft." Tex. Civ. Prac. & Rem. Code § 134.003(a); *see generally Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 366 (Tex. App.—Dallas 2009, pet. denied). For all TTLA claims, a plaintiff must establish: (1) the plaintiff

had a possessory right to property or was the provider of services; (2) the defendant unlawfully appropriated property or unlawfully obtained services in violation of the Texas Penal Code; and (3) the plaintiff sustained damages as a result of the theft. *Wellogix, Inc. v. Accenture, LLP*, 788 F.Supp.2d 523, 542 (S.D. Tex. 2011) (citations omitted).

60.     "When a claim of theft is made in connection with a contract, there must be 'proof of more than an intent to deprive the owner of property and subsequent appropriation of the property'"; "the appropriation [must have been] a result of a false pretext or fraud." *Porter-Garcia v. Travis Law Firm, P.C.*, 564 S.W.3d 75, 91 (Tex. App.—Houston [1st Dist.] 2018, pet. denied). As such, a theory for breach of contract can support a TTLA claim only if the defendant "did not intend to deliver at…at the time [it] entered into the contracts." *See Holcomb v. State*, 445 S.W.3d 767, 782 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd).

61.     Relator does not allege facts demonstrating that the Corrales Defendants never intended to perform at the time the parties entered into the contracts. [*See generally* Dkt. 22]. In conclusion, Relator's TTLA claim fails as a matter of law because it fails to allege theft, the most fundamental element of the cause of action. *See Porter-Garcia*, 564 S.W.3d at 91; *Holcomb*, 445 S.W.3d at 782.

62.     Therefore, Relator's claim for violation of the TTLA must be dismissed for failure to state a claim under Rule 12(b)(6).

## VIII.  REQUEST FOR RELIEF

63.     FOR THESE REASONS, Defendants Antonio Corrales and Sterling Evaluation and Assessment, LLC respectfully pray that this Court dismiss all claims asserted against them in Relator's Second Amended Complaint with prejudice, with the exception of Count Seven (Breach

of Contract). Relator has already amended its complaint twice, yet has failed to cure basic pleading deficiencies, making further amendment futile.

Respectfully Submitted,

**Mills Shirley L.L.P.**
2200 Market Street, Suite 300
Galveston, TX 77550
Phone:    409.763.2341
Fax:        409.763.2879
By: _____
    Fred D. Raschke
    Attorney-In-Charge
Texas Bar No. 16551450
S.D. Texas Bar No. 7123
fraschke@millsshirley.com
    Andres "Andy" Soto
    Of Counsel
Texas Bar No. 24071128
S.D. Texas Bar No. 1057789
asoto@millsshirley.com
    Jesse G. Potts
    Of Counsel
Texas Bar No. 24126325
SDTX Bar No. 2794269
jpotts@millsshirley.com

**Attorneys for Defendants,**
**Antonio Corrales and**
**Sterling Evaluation and Assessment, LLC**

**CERTIFICATE OF SERVICE**

By my signature, I hereby certify that a true and correct copy of this document has been served via eFileTexas.gov to all known parties and counsel of record on March 21, 2024.

Fred D. Raschke
Attorney-In-Charge