# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

UNITED STATES OF AMERICA *ex rel.*
BakerRipley,

       Plaintiffs/Relator,

       v.

Kids U US, Inc. d/b/a Fueling Brains;
Cimberli Johnson Darrough;
Antonio Corrales;
Sterling Evaluation and Assessment, LLC;
Michele Peters; and
MNA Evaluation and Assessment, LLC,


       Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 23-cv-1124


ORAL ARGUMENT
REQUESTED

## MOTION OF DEFENDANT KIDS U US, INC. d/b/a FUELING BRAINS TO DISMISS SECOND AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page**

NATURE AND STAGE OF THE PROCEEDING.......................................................... 1

SUMMARY OF THE ARGUMENT AND REQUEST FOR RULING........................................ 1

BACKGROUND .......................................................................................... 4

I.     The Head Start Program.......................................................................... 4

II.    Relator's Allegations ............................................................................ 5

LEGAL STANDARD...................................................................................... 6

ARGUMENT ............................................................................................... 7

I.     The Court Should Dismiss Relator's Affirmative FCA Claims (Counts One and Two) ........................................................................................ 7

       A.    The Court Should Dismiss Relator's FCA Claims Related to Fueling Brains' Alleged Failure to Provide Educational Services and Materials................ 8

       B.    The Court Should Dismiss Relator's FCA Claims Based on Kickback Theories............................................................................ 11

       C.    Relator Has Not Plausibly Pled an FCA Claim Against Fueling Brains Related to Darrough's Violation of Head Start Conflict of Interest and Procurement Requirements.................................................. 16

II.    The Court Should Dismiss Relator's Reverse FCA Claim (Count Three) Because It is Based on the Same Conduct as Relator's Affirmative FCA Claims .............................................................................................. 18

III.   The Court Should Dismiss Relator's FCA Conspiracy Claim (Count Four).................... 19

IV.   The Court Should Dismiss Relator's State Law Claims ........................................ 21

       A.    The Court Should Dismiss Relator's State Law Fraud Claims............................ 21

       B.    The Court Should Dismiss Relator's Quasi-Contract Claims Because Relator Alleges an Express Contract Existed With Fueling Brains...................... 23

       C.    Relator Does Not Allege a Violation of The Texas Theft Liability Act............... 24

CONCLUSION AND REQUEST FOR ORAL ARGUMENT.................................................. 25

**Cases**

*Archer v. Griffith,*
 390 S.W.2d 735 (Tex. 1964) ..................................................................................23

*Ashcroft v. Iqbal,*
 556 U.S. 662 (2009) ................................................................................................6

*Bishop v. Wells Fargo & Co.,*
 823 F.3d 35 (2d Cir. 2016) ....................................................................................20

*Bradford v. Vento,*
 48 S.W.3d 749 (Tex. 2001) ....................................................................................22

*Collin Cnty. v. Sungard Pub. Sector, Inc.,*
 No. 4:14CV364, 2015 WL 5853169 (E.D. Tex. Sept. 29, 2015) ..........................22

*Eder v. City of Burleson,*
 No. 3:23-CV-00948-K, 2024 WL 812030 (N.D. Tex. Feb. 27, 2024) ...................10

*Fortune Production Co. v. Conoco, Inc.,*
 52 S.W.3d 671 (Tex. 2000) ....................................................................................24

*Gregory v. Hous. Ind. Sch. Dist.,*
 No. 14-cv-2768, 2016 WL 5661701 (S.D. Tex. Sept. 30, 2016) ............................7

*Harrison v. Westinghouse Savannah River Co.,*
 176 F.3d 776 (4th Cir. 1999) ..................................................................................8

*Hawaii ex rel. Torricer v. Liberty Dialysis-Hawaii LLC,*
 512 F. Supp. 3d 1096 (D. Haw. 2021) ...................................................................19

*Holcomb v. State,*
 445 S.W.3d 767 (Tex. App. —Houston [1st Dist.] 2014, pet. ref'd) .....................25

*In re Enron Corp. Sec., Derivative & ERISA Litig.,*
 762 F. Supp. 2d 942 (S.D. Tex. 2010) ...................................................................23

*Jacked Up, LLC v. Sara Lee Corp.,*
 854 F.3d 797 (5th Cir. 2017) .................................................................................22

*Kellogg Brown & Root Servs., Inc. v. United States,*
 99 Fed. Cl. 488 (2011) ...........................................................................................15

*Lewis v. Bank of America NA*,
343 F.3d 540 (5th Cir. 2003) .......................................................................23

*Lyons v. Am.'s Wholesale Lender.*,
No. 3:13-CV-2608-B, 2014 WL 5326609 (N.D. Tex. Oct. 16, 2014)..............24, 25

*Marshall v. Kusch*,
84 S.W.3d 781 (Tex. App. —Dallas 2002, pet. denied) ....................................23

*Montano-Valdez v. Wells Fargo Bank*,
No. CIV.A. H-13-3078, 2014 WL 69886 (S.D. Tex. Jan. 8, 2014).....................11

*Neukranz v. Conestoga Settlement Servs., LLC*,
No. 3:19-CV-1681-L, 2022 WL 19518462 (N.D. Tex. Nov. 23, 2022)................23

*Pace v. Cirrus Design Corp.*,
No. 22-60603, 2024 WL 739343 (5th Cir. Feb. 23, 2024) ...............................21, 22

*Petrello v. Prucka*,
484 F. App'x 939 (5th Cir. 2012) ..................................................................20

*Porter-Garcia v. Travis L. Firm, P.C.*,
564 S.W.3d 75 (Tex. App. —Houston [1st Dist.] 2018, pet. denied)...................25

*Stewart Title Guar. Co. v. Mims*,
405 S.W.3d 319 (Tex. App.—Dallas 2013, no pet.).........................................24

*U.S. ex rel. Aflatooni v. Kistap Physicians Serv.*,
314 F.3d 995 (9th Cir. 2002) .......................................................................14

*U.S. ex rel. Barko v. Halliburton Co.*,
241 F. Supp. 3d 37 (D.D.C. 2017) ................................................................15

*U.S. ex rel. Barko v. Halliburton Co.*,
709 F. App'x 23 (D.C. Cir. 2017) ..................................................................14

*U.S. ex rel. Bennett v. Medtronic, Inc.*,
747 F. Supp. 2d 745 (S.D. Tex. 2010) ...........................................................14, 16

*U.S. ex rel. Campbell v. KIC Development, LLC*,
No. EP-18-CV-193-KC, 2019 WL 6884485 (W.D. Tex. Dec. 10, 2019) ..............24

*U.S. ex rel. Dooley v. Metic Transplantation Lab, Inc.*,
No. CV-1307039-SJOJEMX, 2016 WL 9819559 (C.D. Cal. June 6, 2016) ..........13

*U.S. ex rel. Dustman v. Advocate Health & Hosps. Corp.*,
No. 20-cv-1243, 2023 WL 2799699 (C.D. Ill. Apr. 5, 2023) .............................10

*U.S. ex rel. Farmer v. City of Hous.*,
  523 F.3d 333 (5th Cir. 2008) ....................................................................21

*U.S. ex rel. Foster v. Bristol-Myers Squibb Co.*,
  587 F. Supp. 2d 805 (E.D. Tex. 2008) ................................................7, 13

*U.S. ex rel. Frazier v. IASIS Healthcare Corp.*,
  812 F. Supp. 2d 1008 (D. Ariz. 2011) .......................................................16

*U.S. ex rel. Graves v. ITT Educ. Servs., Inc.*,
  284 F. Supp. 2d 487 (S.D. Tex. 2003) ..................................................9, 10

*U.S. ex rel. Grubbs v. Kanneganti*,
  565 F.3d 180 (5th Cir. 2009) .........................................................7, 12, 20

*U.S. ex rel. Gudur v. Deloitte Consulting LLP*,
  512 F. Supp. 2d 920 (S.D. Tex. 2007) .........................................................8

*U.S. ex rel. Haight v. RRSA (Commercial Div.), LLC*,
  No. 16-cv-1975, 2020 WL 6163139 (N.D. Tex. Oct. 20, 2020) ................15

*U.S. ex rel. Hebert v. Dizney*,
  295 F. App'x 717 (5th Cir. 2008) ...............................................................12

*U.S. ex rel. Hopper v. Anton*,
  91 F.3d 1261 (9th Cir. 1996) .......................................................................9

*U.S. ex rel. Kasowitz Benson Torres LLP v. BASF Corp.*,
  929 F.3d 721 (D.C. Cir. 2019) ...................................................................20

*U.S. ex rel. Lam v. Tenet Healthcare Corp.*,
  481 F. Supp. 2d 689 (W.D. Tex. 2007) ......................................................13

*U.S. ex rel. Ligai v. ETS-Lindgren Inc.*,
  No. CIV.A. H-112973, 2014 WL 4649885 (S.D. Tex. Sept. 16, 2014) ....8, 18

*U.S. ex rel. Longhi v. Lithium Power Techs., Inc.*,
  575 F.3d 458 (5th Cir. 2009) .......................................................................7

*U.S. ex rel. McFarland v. Fla. Pharmacy Sols.*,
  358 F. Supp. 3d 1316 (M.D. Fla. 2017) ................................................13, 16

*U.S. ex rel. Owens v. First Kuwaiti Gen. Trading & Constr. Co.*,
  612 F.3d 724 (4th Cir. 2010) .............................................................2, 11, 12

*U.S. ex rel. Paul v. Biotronik, Inc.*,
  No. 8:18-CV-396-T-36JSS, 2021 WL 211474 (M.D. Fla. Jan. 21, 2021) ............13

*U.S. ex rel. PCA Integrity Assocs., LLP v. NCO Fin. Sys., Inc.,*
No. 15-CV-750(RC), 2020 WL 686009 (D.D.C. Feb. 11, 2020) ..........................................20

*U.S. ex rel. Petratos v. Genetech, Inc.,*
141 F. Supp. 3d 311 (D.N.J. 2015) ..........................................................................19

*U.S. ex rel. Phillips v. L-3 Commc'ns Integrated, Sys. L.P.,*
No. 10-cv-1784-L, 2012 WL 3649699 (N.D. Tex. Aug. 24, 2012)..........................................20

*U.S. ex rel. Polansky v. Executive Health Resources, Inc.,*
599 U.S. 419 (2023)..........................................................................................25

*U.S. ex rel. Pritzker v. Sodexho, Inc.,*
364 F. App'x 787 (3d Cir. 2010) ..............................................................................17

*U.S. ex rel. Ruscher v. Omnicare, Inc.,*
663 F. App'x 368 (5th Cir. 2016) .............................................................................16

*U.S. ex rel. Spicer v. Westbrook,*
751 F.3d 354 (5th Cir. 2014) .................................................................................11

*U.S. ex rel. Steury v. Cardinal Health, Inc.,*
625 F.3d 262 (5th Cir. 2010) ..............................................................................8, 11

*U.S. ex rel. Vavra v. Kellogg Brown & Root, Inc.,*
903 F. Supp. 2d 473, 486 (E.D. Tex. 2011) ....................................................................15

*U.S. ex rel. Whipple v. Rockwell Space Operations Co.,*
No. 96-cv-3626, 2002 WL 864246 (S.D. Tex. Apr. 3, 2002)....................................................8

*U.S. ex rel. Willard v. Humana Health Plan of Texas, Inc.,*
336 F.3d 375 (5th Cir. 2003) ..............................................................................6, 10

*U.S. ex rel. Ziebell v. Fox Valley Workforce Dev. Bd., Inc.,*
806 F.3d 946 (7th Cir. 2015) ..............................................................................9, 10

*U.S. v. Bracco USA, Inc.,*
No. 20CV8719 (EP) (JSA), 2022 WL 17959578 (D.N.J. Dec. 27, 2022)............................................18

*U.S. v. Cath. Health Initiatives,*
No. 4:18-CV-123, 2022 WL 2657131 (S.D. Tex. Mar. 31, 2022) ...........................................19, 21

*Universal Health Servs., Inc. v. U.S. ex rel. Escobar,*
579 U.S. 176 (2016)........................................................................................2, 17

*Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens,*
529 U.S. 765 (2000)..........................................................................................11

*Waldmann v. Fulp*,
259 F. Supp. 3d 579 (S.D. Tex. 2016) ...................................................17

*Williams v. WMX Technologies, Inc.*,
112 F.3d 175 (5th Cir. 1997) ..............................................................7

## Statutes

31 U.S.C. § 3729(a)(1)(A) ...........................................................1, 7, 19

31 U.S.C. § 3729(a)(1)(B) ...........................................................1, 7, 19

31 U.S.C. § 3729(a)(1)(G) ...............................................................1, 18

42 U.S.C. § 9836 .................................................................................4

42 U.S.C. § 9837(c) .............................................................................4

42 U.S.C. § 9837(c)(1)(C) ..................................................................18

42 U.S.C. § 9837(c)(1)(E)(iv)(X) .......................................................17

41 U.S.C. §§ 87 *et seq.* ......................................................................15

Tex. Civ. Prac. & Rem. Code § 134.002 .............................................24

## Other Authorities

Fed. R. Civ. P. 9(b) ................................................................ *passim*

Fed. R. Civ. P. 12(b)(6) .......................................................................1

45 C.F.R. Pt. 1303 Subpart D ..............................................................4

45 C.F.R. § 75.351(b)(5) ......................................................................4

45 C.F.R. § 1303.55 .........................................................................4, 17

Head Start, *Head Start Services*, https://www.acf.hhs.gov/ohs/about/head-start ...........................4

Pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), Defendant Kids U US, Inc. d/b/a Fueling Brains ("Fueling Brains") submits this partial motion to dismiss the Second Amended Complaint ("SAC").

## NATURE AND STAGE OF THE PROCEEDING

Plaintiff/Relator BakerRipley filed this *qui tam* action under seal on March 27, 2023. Dkt. 1. Relator brings claims under Sections 3729(a)(1)(A) and (B) of the False Claims Act ("FCA") (commonly referred to as "affirmative FCA claims"), Section 3729(a)(1)(G) (commonly referred to as a "reverse FCA claim"), and Section 3729(a)(1)(C) (conspiracy to violate the FCA). Relator also brings state law claims for unjust enrichment, payment by mistake, breach of contract, fraud, fraud by non-disclosure, civil conspiracy, money had and received, and violation of the Texas Theft Liability Act.

After having an opportunity to investigate the allegations and despite Relator's disclosure regarding its own conduct to the U.S. Department of Health and Human Services ("HHS") Office of Inspector General, SAC ¶ 50, the federal government declined to intervene. Dkt. 7. The case was unsealed. Relator filed a First Amended Complaint in October 2023, Dkt. 8, and the SAC on February 2, 2024, Dkt. 22. It appears all Defendants have been served.

## SUMMARY OF THE ARGUMENT AND REQUEST FOR RULING

This case involves Relator's attempt to shift responsibility for its own administrative failures and admitted violation of federal grant requirements by lashing out at others with a tale of fraud, kickbacks, and conspiracy. Relator alleges that Fueling Brains violated the FCA and various Texas state laws in connection with Fueling Brains' agreement to provide early childhood educational services to Relator during the COVID-19 pandemic. Specifically, Relator alleges that Fueling Brains failed to timely deliver all of the services Relator purchased, entered into inappropriate business relationships with certain co-defendants, and violated procurement

procedures and conflict of interest requirements.  In reality, Fueling Brains is an established early childhood curriculum provider that delivered significant value and worked tirelessly to help the early childhood education community in South Texas.  For the reasons discussed below, Relator's claims against Fueling Brains suffer from several fundamental pleading deficiencies and should be dismissed with prejudice.

*First*, the Court should dismiss Relator's FCA claims related to Fueling Brains' alleged failure to provide educational materials and services.  Relator's theory—that Fueling Brains did not deliver what it promised—is cognizable under the FCA only if Fueling Brains never intended to perform in the first place.  But Relator has not made that allegation, nor could it.  Relator does not even allege that Fueling Brains wholly failed to perform; it instead complains that Fueling Brains partially performed some services and delivered materials late.  Although Relator tosses around terms like "sham" and "fraud," it offers no factual allegations to support that rhetoric.  Relator's allegations concern a dispute over a potential breach of contract, but the FCA is a fraud prevention statute; it is not "a vehicle for punishing garden-variety breaches of contract." *Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 579 U.S. 176, 194 (2016).  Because Relator has not adequately alleged fraud, its FCA claims related to Fueling Brains' partial performance fail.

*Second*, stuck with a garden-variety breach of contract case, Relator tries to smear Fueling Brains' reputation in broad fashion and manufacture an FCA claim through a series of unsubstantiated and speculative assertions that someone—"on information and belief"—might have paid kickbacks to someone else.  Fueling Brains strongly denies any such claims.  More importantly, to survive a motion to dismiss on this theory, Relator must plead with particularity both the existence of an underlying kickback scheme and that those kickbacks resulted in the

submission of a false claim for payment to the government.  The SAC falls woefully short on both counts.  Relator's speculation—almost always based on "information and belief"— that kickbacks may have been paid and they may have related to federally funded projects is not close to enough to satisfy Rule 9(b).

*Third*, Relator's attempt to blame Fueling Brains for Relator's own conduct fails.  Relator alleges that Defendant Cimberli Darrough, the former senior director of its Head Start program, did not follow certain mandatory procurement procedures when awarding work to Fueling Brains and labored under conflicts of interest that were impermissible under HHS regulations and Relator's internal procedures.  But Darrough's alleged conduct does not give rise to an FCA claim against Fueling Brains, which was not a grant recipient and was not subject to any of the same requirements.  Accordingly, Relator has not alleged that Fueling Brains violated any material statutory, regulatory, or contractual requirements and cannot sustain an FCA claim on that basis.

*Fourth*, the Court should dismiss Relator's claim under the "reverse" FCA provision because it is duplicative of Relator's affirmative FCA claims.  Relator's reverse false claims theory is premised on Fueling Brains' failure to return money that it acquired through the same alleged conduct on which the affirmative claims are based.  Courts have consistently held that collapsing affirmative and reverse FCA claims in this way—and seeking double recovery for essentially the same conduct—is impermissible.

*Fifth*, the Court should dismiss Relator's FCA conspiracy claim because Relator did not and cannot allege an underlying FCA violation or any of the essential elements of civil conspiracy.

*Sixth*, the Court should dismiss (1) all state law fraud claims for the same reasons as the federal FCA claims, (2) all state law quasi-contract claims because Relator alleges that an enforceable contract exists between the parties, and (3) Relator's Texas Theft Liability Act claim

because Relator fails to plead facts showing Fueling Brains never intended to perform. Accordingly, Fueling Brains requests the Court dismiss all counts in the SAC with prejudice, with the exception of Count Seven (Breach of Contract).

## BACKGROUND

### I. The Head Start Program

The Head Start and Early Head Start programs (collectively, "Head Start") are federally funded programs for low-income families that promote school readiness for infants, toddlers, and preschoolers. Office of Head Start, *Head Start Services*, https://www.acf.hhs.gov/ohs/about/head-start (last accessed Mar. 20, 2024). To fund this program, HHS uses a federal-to-local funding model, under which it provides grants to "school districts, nonprofit and for-profit groups, faith-based institutions, tribal councils, and other organizations" that then implement and administer Head Start. *Id.*; 42 U.S.C. § 9836. Relator BakerRipley is a Head Start grantee in Houston, TX and surrounding areas. SAC ¶¶ 2, 41.

Head Start grantees are required to provide services in accordance with all applicable program requirements. *See* 45 C.F.R. Pt. 1303 Subpart D. Those requirements include, among other things, that the grantee's governing body refrain from conflicts of interest and that the grantee empower the governing body to establish conflict-of-interest policies for the officers, employees, and agents of the grantee. 42 U.S.C. § 9837(c). Head Start regulations also require that grantees "comply with all grants management regulations" including their "own procurement procedures." 45 C.F.R. § 1303.55. By their plain terms, these conflict of interest and procurement requirements do not automatically apply to vendors that provide goods or services to Head Start grantees. *See also* 45 C.F.R. § 75.351(b)(5) (entities that contract with grantees to provide goods or services not necessarily "subject to compliance requirements of the Federal program as a result of the agreement."). Vendors are bound by such requirements only if the grantee elects to expressly

incorporate them into the parties' agreement. Relator did not incorporate any conflict of interest or procurement requirements into its agreements with Fueling Brains.

## II.    Relator's Allegations

Relator alleges that it engaged Fueling Brains in 2020 to provide early childhood educational services. SAC ¶¶ 33, 46. Relator alleges that Fueling Brains submitted a proposal to provide materials and services for 3,000 Head Start students and their families during the 2020-2021 school year. *Id.* ¶ 60. The proposal included student assessments, customized curriculum, parent engagement, professional development, and related materials. *Id.* ¶¶ 70, 72, 73, 77. Relator contends that Fueling Brains did not fully and timely perform, alleging that Fueling Brains performed a smaller number of student assessments than agreed upon, SAC ¶¶ 70-71; did not provide a platform to facilitate at-home learning or adequately communicate with parents, *id.* ¶ 72; conducted professional development courses that did not include all staff, *id.* ¶¶ 73-76; and delivered material kits late, *id.* ¶¶ 77-80. Following the late material kit delivery, Relator decided not to renew its contractual relationship with Fueling Brains, refused to pay outstanding invoices, and demanded that Fueling Brains return the prior payments. *Id.* ¶¶ 82, 83, 84. Fueling Brains has not returned those payments. *Id.* ¶ 89.

Separate from Fueling Brains' alleged failure to provide portions of the promised goods and services, Relator alleges that Fueling Brains' relationship with Defendants Antonio Corrales, Michele Peters, and Cimberli Darrough resulted in FCA (and other common law) violations. According to Relator, Corrales and Peters worked for Fueling Brains, Corrales as a strategic advisor, *id.* ¶ 10, and Peters as Executive Director of Research and Evaluation, *id.* ¶ 14. Darrough served as Relator's Senior Director of Head Start programs, and in this role, was responsible for ensuring program compliance as well as managing vendor contracts. *Id.* ¶ 44. Concurrently with her work for Relator, Darrough began a doctoral program at the University of Houston Clear Lake

("UHCL"), where Defendants Corrales and Peters (both university professors) advised Darrough on her dissertation. *See id.* ¶ 48.  Fueling Brains had no contractual relationship with Darrough.

One of Relator's chief complaints relates to Corrales' payment structure under his consulting agreement with Fueling Brains:  According to Relator, Corrales was to receive 20% commissions for any contracts he secured for Fueling Brains. *Id.* ¶ 11.  Relator does not allege Corrales was employed by a current or prospective Fueling Brains client or had authority to make procurement decisions for such organizations, but Relator nonetheless characterizes Fueling Brains' commission payments to Corrales as "kickbacks."  Relator further alleges that these commission payments were paid, in part, with Head Start grant funds. *See, e.g., id.* ¶ 51.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).  A claim is plausible only if it permits the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged"; it is not enough for a complaint to raise only the "possibility" that the defendant acted unlawfully. *Id.*  Although this Court must view allegations in the light most favorable to Relator, it should not accept legal conclusions couched as facts, "conclusory allegations," or "unwarranted deductions of fact." *U.S. ex rel. Willard v. Humana Health Plan of Texas, Inc.*, 336 F.3d 375, 379 (5th Cir. 2003) (citation omitted).

Fraud claims, including those brought under the FCA, also are subject to Rule 9(b)'s heightened pleading standard, which requires plaintiffs to "state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b); *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009).  Relator must allege with particularity "the who, what, when, and where . . . before access to the discovery process is granted." *Williams v. WMX Technologies, Inc.*,

112 F.3d 175, 178 (5th Cir. 1997) (emphasis removed). The Fifth Circuit "strictly interprets Rule 9(b)," *Gregory v. Hous. Ind. Sch. Dist.*, No. 14-cv-2768, 2016 WL 5661701, at *3 (S.D. Tex. Sept. 30, 2016), applying it to FCA complaints "with 'bite' and 'without apology.'" *Grubbs*, 565 F.3d at 185 (quoting *Williams*, 112 F.3d at 178). Since particularity is required, "[g]enerally, pleadings of fraud cannot be based on information and belief." *U.S. ex rel. Foster v. Bristol-Myers Squibb Co.*, 587 F. Supp. 2d 805, 819 (E.D. Tex. 2008).

## ARGUMENT

### I. The Court Should Dismiss Relator's Affirmative FCA Claims (Counts One and Two)

Relator brings affirmative FCA claims under 31 U.S.C. §§ 3729(a)(1)(A) and (B) based on three separate theories, alleging that Fueling Brains failed to provide some of the required goods and services, paid commission payments amounting to kickbacks in connection with federally funded projects, and violated Head Start procurement procedures and conflict of interest requirements. To plead an affirmative FCA claim, "a relator must plausibly allege four distinct elements: (1) there was a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money or to forfeit moneys due (i.e., that involve a 'claim')." *U.S. ex rel. Longhi v. Lithium Power Techs., Inc.*, 575 F.3d 458, 467 (5th Cir. 2009) (citation omitted).

Relator's claims related to Fueling Brains' allegedly deficient contract performance fail because Relator has not alleged with plausibility or particularity that Fueling Brains intended not to fulfill its promises and therefore Relator has not identified any false statement. Relator's kickback theories fail because Relator neither alleges the payment of a kickback with particularity nor links any such kickback to the submission of a false claim for payment of federal funds. And finally, Relator's theory related to alleged conflict of interest and procurement procedure violations

fail because Fueling Brains did not violate any statutory, regulatory, or contractual requirement.

Accordingly, the Court should dismiss Relator's affirmative FCA claims.

### A. The Court Should Dismiss Relator's FCA Claims Related to Fueling Brains' Alleged Failure to Provide Educational Services and Materials

"The FCA is not a general enforcement device for federal statutes, regulations, and contracts." *U.S. ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 267 (5th Cir. 2010). "[B]reach of contract claims are not the same as fraudulent conduct claims," *U.S. ex rel. Ligai v. ETS-Lindgren Inc.*, No. CIV.A. H-112973, 2014 WL 4649885, at *13 (S.D. Tex. Sept. 16, 2014), and thus "[n]ot every breach of . . . contract is an FCA problem," *Steury*, 625 F.3d at 267. Neither "contractual . . . noncompliance," *U.S. ex rel. Gudur v. Deloitte Consulting LLP*, 512 F. Supp. 2d 920, 931 (S.D. Tex. 2007), nor "poor and inefficient management of contractual duties," *U.S. ex rel. Whipple v. Rockwell Space Operations Co.*, No. 96-cv-3626, 2002 WL 864246, at *11 (S.D. Tex. Apr. 3, 2002) (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 789 (4th Cir. 1999)), constitutes an FCA violation. Relator's allegation that Fueling Brains failed to fully and timely deliver required goods and services alleges—at most—a breach of contract.[1]

Relator alleges that Fueling Brains submitted a proposal in August 2020 "to provide [Relator's] Head Start programs with a virtual learning platform that included material kits and curriculum, ongoing professional development, student and program assessment, and support services for 3000 students and their families during the for the 2020-2021 school year at a cost of $300,000.00." SAC ¶ 60. Relator further alleges that Fueling Brains later submitted three invoices for the "Purchase of Fueling Brains Program for 2010-2021 school year" and separate invoices for professional development services and material kits. *Id.* ¶¶ 67-69, 74, 77. Relator does not allege

---

[1] To be clear, Fueling Brains disputes that it materially breached any contract with Relator, but does not seek to dismiss Relator's breach of contract claim (Count Seven) in this motion.

- 8 -

that the three invoices state that Fueling Brains had already provided the services. And by Relator's admission, the professional development and material kit invoices were prospective, meaning they sought payment for goods and services to be provided in the future. *See* SAC ¶ 69 (professional development invoice "provided for prepayment of $250,000"); *id.* ¶ 76 (Mar. 2021 invoice for material kits to be delivered "prior to the beginning of the 2021-2022 school year"). Relator alleges that Fueling Brains did not ultimately deliver what it promised. Specifically, Relator asserts Fueling Brains performed fewer student assessments than agreed upon, SAC ¶¶ 70-71; did not provide a platform to facilitate at-home learning or adequately communicate with parents, *id.* ¶ 72; conducted professional development courses that did not include all staff, *id.* ¶¶ 73-76; and delivered material kits late, *id.* ¶¶ 77-80. These allegations are insufficient to plead a fraud claim under the FCA.

A theory of "promissory fraud" like the one Relator advances here is actionable only in "rare" circumstances under the FCA. *U.S. ex rel. Graves v. ITT Educ. Servs., Inc.*, 284 F. Supp. 2d 487, 503 (S.D. Tex. 2003) (quoting *U.S. ex rel. Hopper v. Anton*, 91 F.3d 1261, 1267 (9th Cir. 1996)). It is not enough to allege that Fueling Brains broke its promise; Relator must identify specific facts indicating that Fueling Brains' "promise [to perform] was false when made." *Hopper*, 91 F.3d at 1267; *see U.S. ex rel. Ziebell v. Fox Valley Workforce Dev. Bd., Inc.*, 806 F.3d 946, 951 (7th Cir. 2015) ("[F]raud requires more than breach of promise; fraud entails making a false representation."); *Graves*, 284 F. Supp. 2d at 503 ("mere fact of nonperformance" is not fraud). "Promises of future compliance can be false only if made with intent not to perform." *Ziebell*, 806 F.3d at 951 (promissory fraud requires false statement "such as . . . that the speaker will do something it plans not to do"). Relator's allegation that Fueling Brains agreed to provide certain goods and services and then did not do so may "constitute a broken promise, but [it does

not constitute] fraud" unless Fueling Brains "never meant to [perform] in the first place." *See U.S. ex rel. Dustman v. Advocate Health & Hosps. Corp.*, No. 20-cv-1243, 2023 WL 2799699, at *6 (C.D. Ill. Apr. 5, 2023); *Graves*, 284 F. Supp. 2d at 503 (dismissing promissory fraud FCA claim because "Relators failed to allege facts showing that when [defendant] entered into the [agreements], [it] had no intention of complying"); *cf. Eder v. City of Burleson*, No. 3:23-CV-00948-K, 2024 WL 812030, at *5 (N.D. Tex. Feb. 27, 2024) (dismissing FCA retaliation claim because the plaintiff had "not alleged that the [defendant] was lying about its intent to comply when it made the promise").

Relator does not allege that Fueling Brains did not intend to perform—and certainly does not allege it with the specificity required by Rule 9(b).[2] To the contrary, Relator's admission that Fueling Brains *partially* performed—providing numerous services and ultimately delivering the material kits—is flatly inconsistent with Relator's allegation of fraud. For example, Relator concedes that Fueling Brains performed some student assessments but complains that the remaining assessments and related data analysis were never fully completed. *See* SAC ¶¶ 70-71. Similarly, Relator admits that Fueling Brains provided a professional development course but asserts that it should have trained more staff members. *Id.* ¶¶ 73-76. With respect to the material kits, Relator acknowledges that Fueling Brains delivered the units, but alleges that the deliveries, due in the midst of the COVID-19 pandemic, came too late for the program to be useful. *Id.* ¶¶ 77-

---

[2] In the context of a promissory fraud theory, whether the defendant intended to perform goes to the FCA's falsity element, which is subject to Rule 9(b)'s heightened pleading standard. Nonetheless, even if the Court considered this a scienter issue, Relator still fails to identify any "specific facts" to support an allegation of intent not to perform. *See Willard*, 336 F.3d at 385.

80.  In short, Relator does not contend that Fueling Brains wholly failed to perform, but instead that it did not perform well enough.  That is a classic breach of contract theory—not fraud.[3]

Relator's attempt "[t]o blur the distinction between fraud and breach of contract contradict[s] the purpose of the [FCA]."  *U.S. ex rel. Owens v. First Kuwaiti Gen. Trading & Constr. Co.*, 612 F.3d 724, 726–27 (4th Cir. 2010) (cleaned up).  Given the FCA's "essentially punitive" regime of treble damages and per-claim penalties, *Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 784 (2000), "allowing the [statute] to be used in run-of-the-mill contract disputes would burden, not help, the contracting process, thereby driving up costs for the government and, by extension, the American public."  *Id.*  Accordingly, Relator's FCA claims based on a partial contract performance theory should be dismissed.  *See U.S. ex rel. Spicer v. Westbrook*, 751 F.3d 354, 366 (5th Cir. 2014) (dismissing FCA claims based on a breach of contract theory where the relator had alleged noncompliance but no "FCA false statement" because "not every breach of a federal contract is an FCA problem" (citing *Steury*, 625 F.3d at 268)).

**B.**     **The Court Should Dismiss Relator's FCA Claims Based on Kickback Theories**

Relator also asserts a kickback-related theory of FCA liability.  To satisfy Rule 9(b), Relator must allege "[1] particular details of a scheme to submit false claims paired with [2] reliable indicia that lead to a strong inference that [false] claims were actually submitted" to the government as a result.  *Grubbs*, 565 F.3d at 190.  The SAC fails both prongs of this test because it does not plead that Fueling Brains actually paid a kickback, let alone tie any alleged kickback to the submission of a false claim.

---

[3] Relator's contention that the March 2021 professional development and material kits invoices were "double bill[s]," SAC ¶ 89, is likewise insufficient to plead an FCA claim.  Relator concedes that each invoice clearly stated the services to be provided, *see id.* ¶¶ 77, 89, and Relator has not identified any false statements on those invoices.  Relator's professed confusion years later about what services were to be billed at what time does not give rise to a fraud claim.

*First*, Plaintiffs have not identified the "who, what, when, where, and how" of any supposed kickback scheme. Relator's speculative musings, almost always made "on information and belief," that payments may have been made, those payments may have been unlawful, the payments may have been related to Fueling Brains' work with school districts, and those school districts may have received federal funds through the Head Start program fall woefully short of Rule 9(b)'s high bar. Relator frequently lumps all "Defendants" together, alleging, for example, that "Defendants . . . pa[id] each other commissions or 'kickbacks' on the contracts fraudulently obtained." SAC ¶ 17; *see also id.* ¶¶ 20, 37, 53, 56, 57, 69, 151, 158. Rule 9(b), however, requires Relator to specifically identify the allegedly wrongful conduct attributable to each defendant. *See U.S. ex rel. Hebert v. Dizney*, 295 F. App'x 717, 722 (5th Cir. 2008). And when Fueling Brains' relationship with each defendant is considered separately, it is clear Relator has not alleged with particularity that Fueling Brains paid *anyone* a kickback—not Corrales, Darrough, or any of the anonymized "public servants" discussed in the SAC.[4]

Beginning with Corrales, Relator alleges that he "received remuneration in the form of kickbacks and unlawful payments structured as 'commissions' from Fueling Brains for the sale of Fueling Brains program and services" and that these payments were made "at least in part [with] federal funds." SAC ¶ 51. Relator offers no authority, however, for the proposition that it was unlawful for Fueling Brains to enter into a commission-based arrangement with another private individual related to the marketing and sale of Fueling Brains' products—and Fueling Brains is aware of no such authority. Accordingly, the SAC does not "provide[] sufficient information to discern that the . . . financial arrangements" between Fueling Brains and Corrales "were illegal [kickbacks]" at all. *See U.S. ex rel. Lam v. Tenet Healthcare Corp.*, 481 F. Supp. 2d 689, 698

---

[4] Relator does not appear to allege that Peters received kickbacks.

(W.D. Tex. 2007). And even if it did, Relator fails to offer any of the details Rule 9(b) requires, such as when Corrales received payment, in what amount, and in exchange for what services.

Turning to Darrough, Relator's speculative assertions that Darrough may have received kickbacks in exchange for awarding work to Fueling Brains are likewise insufficient. The SAC alleges that, "*[o]n information and belief*, Darrough . . . received financial and career benefit from Fueling Brains for the leads and referrals she directed to Fueling Brains, including contracts obtained through [Relator]." SAC ¶ 142 (emphasis added); *see also id.* ¶ 53 (referring to "likely 'off the books' arrangements between Defendants"). Again, Relator does not identify any specific payments made to Darrough, let alone when those payments were made, how they were made, who made them, or what Fueling Brains' role was in the supposed payments. Rule 9(b) requires those details. *See Foster*, 587 F. Supp. 2d at 825; *U.S. ex rel. McFarland v. Fla. Pharmacy Sols.*, 358 F. Supp. 3d 1316, 1326 (M.D. Fla. 2017) ("[A] relator cannot base a fraud claim on 'information and belief'"; "[r]ather, [the relator] must allege the time, the circumstance, and the details of the alleged fraud"); *see, e.g.*, *U.S. ex rel. Paul v. Biotronik, Inc.*, No. 8:18-CV-396-T-36JSS, 2021 WL 211474, at *3 (M.D. Fla. Jan. 21, 2021) (dismissing kickback allegations under Rule 9(b) when "[a]llegations as to purported payments . . . were entirely devoid of a date the payment was made"); *U.S. ex rel. Dooley v. Metic Transplantation Lab, Inc.*, No. CV-1307039-SJOJEMX, 2016 WL 9819559, at *4 (C.D. Cal. June 6, 2016) (dismissing kickback theory when relator failed to identify "any specific occurrence of a kickback actually being paid" because a "vague description of a 'kickback arrangement' does not provide enough 'particular' information to satisfy the purposes of Rule 9(b)").

Undeterred by its inability to offer any details about a purported kickback scheme involving its own employee and contracts Relator itself awarded, Relator goes on to allege "on information

and belief," that the scheme "extend[ed] to numerous *[other]* Federal Government grantees, Head Start agencies, public school systems, other entities throughout the State of Texas and in other states." SAC ¶ 38 (emphasis added); *see also id.* ¶ 17 ("On information and belief, the Defendants further benefitted . . . by paying each other commissions as 'kickbacks' on the contracts fraudulently obtained with other school systems and federal grantees."); *id.* ¶ 154 ("Based on information and belief, . . . it is likely Darrough was to receive a 'commission' from Fueling Brains" and "these likely were kickbacks"). Although Relator offers some details about *Corrales'* alleged "arrangements with referral sources to support his efforts to sell Fueling Brains to federal grantees," *id.* ¶ 157, Relator does not allege that Fueling Brains was party to, or played any role in, these arrangements, and the particulars Rule 9(b) requires with respect to Fueling Brains' involvement are entirely absent.

*Second*, even if Relator had adequately pled the existence of an underlying kickback scheme, its kickback-related FCA claims still fail because it does not link any kickback to the submission of a false claim. The FCA "attaches liability, not to . . . underlying fraudulent activity, but to the 'claim for payment.'" *U.S. ex rel. Bennett v. Medtronic, Inc.*, 747 F. Supp. 2d 745, 765 (S.D. Tex. 2010). Thus, "[m]aking out a claim under the [FCA] requires proof not only that [someone] engaged in improper or illegal behavior, but also that this behavior was tied to the submission of [false] claims against the government." *U.S. ex rel. Barko v. Halliburton Co.*, 709 F. App'x 23, 25 (D.C. Cir. 2017); *see U.S. ex rel. Aflatooni v. Kistap Physicians Serv.*, 314 F.3d 995, 1002 (9th Cir. 2002) (FCA "focuses on the submission of a claim, and does not concern itself with whether or to what extent exists a menacing underlying scheme"). For this reason, the FCA "does not reach kickback schemes that lack false claims." *U.S. ex rel. Barko v. Halliburton Co.*, 241 F. Supp. 3d 37, 52 (D.D.C. 2017). "[H]owever strong the policy concerns may be that are

implicated by [kickbacks], they are not a substitute for the specific requirements that [an FCA plaintiff] allege facts showing the falsity *of a claim* and [the defendant's] knowledge of that falsity." *Kellogg Brown & Root Servs., Inc. v. United States*, 99 Fed. Cl. 488, 513 (2011) (emphasis added), *aff'd*, 728 F.3d 1348 (Fed. Cir. 2013).

To plead falsity, a relator must specifically "tie . . . acceptance of kickbacks to [the defendant's] submitted claims for payment." *U.S. ex rel. Vavra v. Kellogg Brown & Root, Inc.*, 903 F. Supp. 2d 473, 486 (E.D. Tex. 2011), *rev'd on other grounds*, 727 F.3d 343 (5th Cir. 2013). Absent a contractual prohibition on the acceptance of kickbacks (which did not exist here), a relator can establish such a tie only where the defendant "actually passed [the kickback costs] on to the government." *Id.* at 487.[5] Relator has not alleged that the amount of any supposed kickback was passed along to the government, nor could it do so. That alone is sufficient to warrant dismissal of Relator's FCA claims based on kickback theories.

In addition, the Relator does not and cannot connect the supposed kickbacks to claims submitted by Fueling Brains for the payment of federal funds. The best Relator can do is assert that Corrales—not Fueling Brains—entered into arrangements with anonymized "public servants" under which those individuals would "steer[] opportunities to Fueling Brains." SAC ¶ 157. But Relator does not allege that any of those "opportunities" resulted in a contract award to Fueling Brains involving federal funds, or even that those individuals actually received payment. The SAC's allegations "about kickbacks purportedly offered by [Corrales]" therefore do not "provide the next link in the FCA liability chain: showing that [Fueling Brains] actually submitted

---

[5] The SAC references the Anti-Kickback Act, 41 U.S.C. §§ 87 *et seq.* ("AKA"), SAC ¶ 37 n.21, but Relator does not allege the AKA was incorporated into its contract with Fueling Brains. As courts in the Fifth Circuit have observed, there is no authority for the proposition that a "violation of the AKA can serve as a basis for an FCA claim." *See U.S. ex rel. Haight v. RRSA (Commercial Div.), LLC*, No. 16-cv-1975, 2020 WL 6163139, at *5 & n.12 (N.D. Tex. Oct. 20, 2020).

reimbursement claims" tied to those contemplated kickbacks. *See McFarland*, 358 F. Supp. 3d at 1326. "[W]ithout this link to a submitted claim for payment," Corrales' alleged "offer to provide remuneration fails to state a claim [against Fueling Brains] under the [FCA]." *Id.*; *see also U.S. ex rel. Frazier v. IASIS Healthcare Corp.*, 812 F. Supp. 2d 1008, 1018 (D. Ariz. 2011) (dismissing kickback-related FCA claim under Rule 9(b) and noting that even "assum[ing] that there was an improper financial relationship . . . or a referral scheme," allegations were insufficient where relator had identified the person who allegedly accepted kickbacks but failed to plead specific facts about the actual improper referrals or billing/payment).

For all of these reasons, Relator has failed to allege with the requisite particularity a kickback scheme that resulted in Fueling Brains' submission of false claims.

### C. Relator Has Not Plausibly Pled an FCA Claim Against Fueling Brains Related to Darrough's Violation of Head Start Conflict of Interest and Procurement Requirements

The SAC spills considerable ink detailing Darrough's alleged violation of Head Start procurement procedures and conflicts of interest under which she allegedly labored. But Relator's admission that it, through its then-senior employee, violated Head Start grant requirements provides no basis for an FCA claim against Fueling Brains, which was not subject to any such requirements.

Claims under the FCA may be factually or legally false. *Bennett*, 747 F. Supp. 2d at 765. Factually false claims are limited to situations where "the information provided to the government for reimbursement is inaccurate," *U.S. ex rel. Ruscher v. Omnicare, Inc.*, 663 F. App'x 368, 373 (5th Cir. 2016), such as where the goods or services are incorrectly described, *Waldmann v. Fulp*, 259 F. Supp. 3d 579, 593 (S.D. Tex. 2016). A claim is legally false when it falsely certifies compliance with a material statutory, regulatory, or contractual requirement. *Escobar*, 579 U.S. at 190. Relator's contention that Fueling Brains violated conflict of interest and procurement

requirements raises a legal falsity theory. It fails for a simple reason—Relator has not identified a single provision of the Head Start Act, HHS regulations, or the parties' contract that required Fueling Brains to follow certain bidding procedures or disclose potential conflicts of interest.

HHS regulations set forth certain procurement processes that Head Start grantees must follow. 45 C.F.R. § 1303.55. Relator asserts that it implemented those processes, SAC ¶ 43, and that Darrough did not follow them in awarding work to Fueling Brains, *id.* ¶ 47. Relator does not plausibly allege, however, that Fueling Brains was required to, but did not, follow any particular bidding process. *See U.S. ex rel. Pritzker v. Sodexho, Inc.*, 364 F. App'x 787, 790 (3d Cir. 2010) (affirming dismissal of FCA claim based on failure to comply with procurement regulations because regulations did not apply to entities that contracted with grantees). It is the grantee's responsibility, as the steward of federal funds, to ensure that bids are evaluated and contracts are awarded consistent with program requirements. 45 C.F.R. § 1303.55 (mandating a "*grantee* must comply with all grants management regulations" (emphasis added)). That Relator here may have deviated from those requirements in awarding work to Fueling Brains does not mean that Fueling Brains violated any statute, regulation, or contract term. *See Pritzker*, 364 F. App'x at 790.

As to Relator's conflict of interest theory, Relator alleges that the Head Start Act "prohibits 'any conflict of interest, and any appearance of a conflict of interest . . . by officers and employees of the Head Start agency, and consultants and agents who provide services of furnish goods to the Head Start Agency.'" SAC ¶ 37 (partially quoting 42 U.S.C. § 9837(c)(1)(E)(iv)(X)). But that is not what the statute says. It requires the *Head Start agency's governing body* to refrain from certain specified conflicts of interest. 42 U.S.C. § 9837(c)(1)(C). It imposes no obligation directly on consultants and agents who provided goods or services to the grantee. The language Relator quotes comes from a portion of the statute that requires the grantee to establish policies governing

conflicts of interest. *See id.* § 9837(c)(1)(E). Although Relator alleges that it established such policies, it does not allege that those policies were ever communicated to Fueling Brains, let alone that they were incorporated into Relator's contract with Fueling Brains. Accordingly, Fueling Brains' alleged failure to disclose conflicts of interest did not violate any law, regulation, or contract term, and cannot give rise to a legally false claim.[6]

## II. The Court Should Dismiss Relator's Reverse FCA Claim (Count Three) Because It is Based on the Same Conduct as Relator's Affirmative FCA Claims

Under the reverse FCA provision, 31 U.S.C. § 3729(a)(1)(G), a defendant may be liable if it "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." This Court has made clear that a relator may not "recast[] [its] affirmative FCA claims as reverse false claims," and a claim alleging "a failure to refund the false claims the government paid . . . is merely recasting [an affirmative] claim . . . [and] is not actionable under subsection (a)(1)(G)." *Ligai*, 2014 WL 4649885, at *13 (quotation marks and alterations omitted); *see also U.S. v. Bracco USA, Inc.*, No. 20CV8719 (EP) (JSA), 2022 WL 17959578, at *7 (D.N.J. Dec. 27, 2022) ("reverse false claims may not be based on the same conduct as a plaintiff's claims under 31 U.S.C. §§ 3729(a)(1)(A) and (a)(1)(B)."); *U.S. ex rel. Petratos v. Genetech, Inc.*, 141 F. Supp. 3d 311, 322 (D.N.J. 2015) (similar). Yet that is precisely what Relator seeks to do here.

Relator alleges that "Defendants" violated the reverse FCA provision by "making false statements relating to their *failure to provide materials and services it was to provide the Agency*

---

[6] The SAC includes allegations regarding Corrales' and Peters' relationship with Darrough, and their provision of services to Relator separate from Fueling Brains. Those allegations do not form the basis for any claim against Fueling Brains, and therefore this brief will not address them.

and/or to repay the Agency for overpayments to which the Defendants were not entitled." SAC ¶ 182 (emphasis added). This theory is exactly the same as Relator's affirmative false claim theory, which seeks to impose liability for Fueling Brains' alleged provision of deficient products or services. That Relator alleges it requested repayment of the allegedly fraudulently procured funds makes no difference. Relator alleges no *new* falsehood related to Fueling Brains' allegedly defective products or services made *at the time* Relator requested a refund. In any event, Fueling Brains' failure to refund "the same money the Government allegedly paid in relation to [Relator's] § 3729(a)(1)(A) and (B) claims" is not actionable under the reverse FCA provision. *See U.S. v. Cath. Health Initiatives*, No. 4:18-CV-123, 2022 WL 2657131, at *11 (S.D. Tex. Mar. 31, 2022), *report and recommendation adopted sub nom. Chihi v. Cath. Health Initiatives*, No. 4:18-CV-00123, 2022 WL 2652135 (S.D. Tex. July 8, 2022); *see also Hawaii ex rel. Torricer v. Liberty Dialysis-Hawaii LLC*, 512 F. Supp. 3d 1096, 1119 (D. Haw. 2021) (noting "substantial authority" holds that "an actionable reverse false claim cannot be based on a defendant's failure to *refund* the *same* payment that was obtained by an actionable [affirmative] false claim").

## III.     The Court Should Dismiss Relator's FCA Conspiracy Claim (Count Four)

The Court should dismiss Relator's FCA conspiracy claim because Relator has not adequately pled an underlying FCA violation, nor has it pled sufficient facts to establish the other essential elements of a conspiracy claim.

First, FCA conspiracy claims cannot survive without an underlying substantive violation. "General civil conspiracy principles apply to [FCA] conspiracy claims." *U.S. ex rel. Phillips v. L-3 Commc'ns Integrated, Sys. L.P.*, No. 10-cv-1784-L, 2012 WL 3649699, at *8 (N.D. Tex. Aug. 24, 2012). "Since liability for civil conspiracy depends on performance of some underlying [wrongful] act, the conspiracy is not independently actionable; rather, it is a means for establishing vicarious liability for the underlying [wrong]." *U.S. ex rel. Kasowitz Benson Torres LLP v. BASF*

*Corp.*, 929 F.3d 721, 728-29 (D.C. Cir. 2019); *see Petrello v. Prucka*, 484 F. App'x 939, 942-43 (5th Cir. 2012) ("Because there is no actionable [Fair Housing Act] claim against the appellees, [plaintiff's] civil conspiracy claim fails."). Applying these principles, courts have uniformly held that "[b]ecause FCA liability attaches to 'the claim for payment,' there can by definition be no ground for FCA liability unless [an FCA plaintiff] establishes the submission of an actionably false claim." *U.S. ex rel. PCA Integrity Assocs., LLP v. NCO Fin. Sys., Inc.*, No. 15-CV-750(RC), 2020 WL 686009, at *29 (D.D.C. Feb. 11, 2020); *see, e.g.*, *Bishop v. Wells Fargo & Co.*, 823 F.3d 35, 50 (2d Cir. 2016) ("[T]he relators cannot show a conspiracy to commit fraud given that they have not sufficiently pleaded fraud under the FCA."), *vacated on other grounds*, 137 S. Ct. 1067 (2017). An FCA plaintiff "cannot raise a stand-alone conspiracy claim." *PCA*, 2020 WL 686009, at *29. Here, Relator has failed to plead an underlying violation of the FCA. As a result, the Court must also dismiss Relator's FCA conspiracy claim. *See Phillips*, 2012 WL 3649699, at *8.

Second, Rule 9(b)'s particularity requirements "apply to the [FCA's] conspiracy provision with equal force." *Grubbs*, 565 F.3d at 193. To satisfy Rule 9(b) in this context, Relator must allege with particularity: "(1) the existence of an unlawful agreement between defendants to get a false or fraudulent claim allowed or paid by the Government and (2) at least one act performed in furtherance of that agreement." *Grubbs*, 565 F.3d at 193. In addition, an FCA conspiracy claim requires proof that the "defendants shared a specific intent to defraud the Government." *U.S. ex rel. Farmer v. City of Hous.*, 523 F.3d 333, 343 (5th Cir. 2008) (internal quotation marks and brackets omitted); *see also Cath. Health Initiatives*, 2022 WL 2657131, at *12 (dismissing conspiracy claims and noting that "even if Relator did sufficiently allege an agreement between [the defendants], he fail[ed] to allege such an agreement was made with specific intent to defraud the Government" so the claims failed as a matter of law).

Relator does not allege facts to support a conspiracy, much less with the specificity required by Rule 9(b). Although Relator makes vague allegations regarding to financial arrangements among various Defendants, Relator does not identify any specifics regarding such arrangements. *See supra* at 12-14. Nor does Relator identify a particular agreement Fueling Brains allegedly entered into with the specific intent to defraud the federal government, let alone provide the who, what, when, where, and how of such an agreement. Without these particulars, Relator's FCA conspiracy claim should be dismissed. *See Cath. Health Initiatives*, 2022 WL 2657131, at *12.

## IV. The Court Should Dismiss Relator's State Law Claims

The Court should dismiss (1) Relator's state law fraud claims because they suffer from the same deficiencies as the federal FCA claims, (2) state law quasi-contract claims because Relator alleges that an enforceable contract existed between the parties, and (3) Relator's Texas Theft Liability Act claim for failure to plead the essential elements.

### A. The Court Should Dismiss Relator's State Law Fraud Claims

Relator brings two state law fraud claims (fraud and fraud by nondisclosure) and a civil conspiracy claim. Like their federal counterparts, these claims are subject to Rule 9(b). *See Pace v. Cirrus Design Corp.*, No. 22-60603, 2024 WL 739343, at *3-4 (5th Cir. Feb. 23, 2024). Thus, Relator must identify the "who, what, when, where, and how of the fraud or misrepresentation." *Id.* For the reasons already discussed, the SAC does not clear this high bar.

To state a fraud claim under Texas law, Relator must allege with particularity "(1) a material misrepresentation that (2) was false, (3) was either known to be false when made or was asserted without knowledge of its truth, (4) was intended to be acted upon, (5) was relied upon, and (6) caused injury." *Jacked Up, LLC v. Sara Lee Corp.*, 854 F.3d 797, 810 (5th Cir. 2017). Likewise, to plead a claim for fraud by non-disclosure, Relator must allege specific facts that demonstrate: (1) a party concealed or failed to disclose a material fact; (2) the party knew that the

other party was ignorant of the fact and did not have an equal opportunity to discovery the truth; (3) the party intended to induce the other party to take some action by concealing or failing to disclose the fact; and (4) the other party suffers injury as a result of acting without knowledge of the undisclosed fact. *Bradford v. Vento*, 48 S.W.3d 749, 754-55 (Tex. 2001).

The SAC lacks the required detail. Relator does not adequately plead that Fueling Brains' proposal or invoices were fraudulent because it does not identify any facts indicating that Fueling Brains intended not to perform the services as proposed. Nor does Relator plead fraud based on alleged payment of kickbacks or Relator's own violation of conflict of interest and procurement requirements. Without these particulars, Relators state fraud claims fail. *See Collin Cnty. v. Sungard Pub. Sector, Inc.*, No. 4:14CV364, 2015 WL 5853169, at *4 (E.D. Tex. Sept. 29, 2015) (dismissing fraud claim where the plaintiff, a local government entity, alleged the defendant had breached its proposal to provide software because the complaint did not satisfy Rule 9(b) and because "the Court view[ed] it as nothing more than a breach of contract case").

Moreover, with respect to the fraud by nondisclosure claim in particular, "[a]s a general rule, a failure to disclose information does not constitute fraud unless there is a duty to disclose." *Marshall v. Kusch*, 84 S.W.3d 781 (Tex. App. —Dallas 2002, pet. denied); *see also Lewis v. Bank of America NA*, 343 F.3d 540, 546 (5th Cir. 2003) ("[M]ere failure to disclose information is not actionable 'misrepresentation' under Texas law, absent a fiduciary relationship."). Accordingly, Relator must allege that Fueling Brains owed Relator some legal or equitable duty and breached that duty. *See Archer v. Griffith*, 390 S.W.2d 735 (Tex. 1964). It has not done so.

Relator complains that details regarding Fueling Brains' relationships with Corrales and Peters were not disclosed, but as discussed above, Relator has not identified any statute, regulation, or contract provision imposing a disclosure requirement on Fueling Brains. Nor has Relator

alleged that Fueling Brains acted as Relator's fiduciary or otherwise occupied a position vis-à-vis Relator that would create a disclosure obligation.  For these additional reasons, Relator's fraud by nondisclosure claim must be dismissed.  *See Neukranz v. Conestoga Settlement Servs.*, LLC, No. 3:19-CV-1681-L, 2022 WL 19518462, at *13 (N.D. Tex. Nov. 23, 2022) (dismissing fraud by nondisclosure claim under Rule 9(b) where the plaintiff had employed group pleading and failed to plead breach of fiduciary duty with specificity).

Finally, Relator's state-law civil conspiracy claim is based on a theory that Defendants conspired to defraud Relator.  *See* SAC ¶ 161.  This claim should be dismissed for the same reasons as Relator's FCA conspiracy claim—that is, because Relator has not pled any underlying actionable fraud and because Relator failed to allege facts showing specific intent to defraud with specificity.  *See e.g.*, *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 762 F. Supp. 2d 942, 1011 (S.D. Tex. 2010) ("Plaintiffs' conspiracy claim fails because the allegations are insufficient to state an underlying fraud claim . . . and they fail to allege any facts demonstrating that there was a 'meeting of the minds' between . . . defendants.").

### B.    The Court Should Dismiss Relator's Quasi-Contract Claims Because Relator Alleges an Express Contract Existed With Fueling Brains

Relator's claims for unjust enrichment, payment by mistake, and money had and received (Counts Five, Six, and Twelve, respectively) all fail as a matter of law because a plaintiff cannot maintain a quasi-contract claim where it has alleged the existence of an actual contract.  Under Texas law, all three of these claims are based on so-called quasi-contract theories of liability, which are "generally precluded by the existence of an express contract".  *U.S. ex rel. Campbell v. KIC Development, LLC*, No. EP-18-CV-193-KC, 2019 WL 6884485, at *17 (W.D. Tex. Dec. 10, 2019) (payment by mistake); *Stewart Title Guar. Co. v. Mims*, 405 S.W.3d 319, 339 (Tex. App.—Dallas 2013, no pet.) (unjust enrichment and money had and received).  "[W]hen a valid, express contract

covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory," *Fortune Production Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000), because "parties should be bound by their express agreements." *Id.* Here, Relator's quasi-contract claims fail because, by its own account, there was a valid, written contract that covered the subject matter of the parties' dispute. *See, e.g.*, SAC ¶¶ 8, 82. Thus, Relator's unjust enrichment, payment by mistake, and money had and received claims should be dismissed.

### C. Relator Does Not Allege a Violation of The Texas Theft Liability Act

The Texas Theft Liability Act ("TTLA") imposes civil liability on a person who "unlawfully appropriate[es] property or unlawfully obtain[s] services" Tex. Civ. Prac. & Rem. Code § 134.002. "To prevail on a claim under the [TTLA], a plaintiff must demonstrate that (1) he had a possessory right to property or was the provider of services; (2) the defendant unlawfully appropriated property or unlawfully obtained services in violation of certain sections of the Texas Penal Code; and (3) the plaintiff sustained damages as a result of the theft." *Lyons v. Am.'s Wholesale Lender*, No. 3:13-CV-2608-B, 2014 WL 5326609, at *5 (N.D. Tex. Oct. 16, 2014). "[T]he plaintiff must allege that the defendant possessed an intent to deprive the plaintiff of his property permanently or for an extended period of time." *Id.*

"When a claim of theft is made in connection with a contract, there must be 'proof of more than an intent to deprive the owner of property and subsequent appropriation of the property'"; "the appropriation [must have been] a result of a false pretext or fraud." *Porter-Garcia v. Travis L. Firm, P.C.*, 564 S.W.3d 75, 91 (Tex. App. —Houston [1st Dist.] 2018, pet. denied). Therefore, a breach of contract can give rise to a TTLA claim only if the defendant "did not intend to deliver at . . . at the time [it] entered into the contracts." *See Holcomb v. State*, 445 S.W.3d 767, 782 (Tex. App. —Houston [1st Dist.] 2014, pet. ref'd). As discussed above, Relator pleads no facts showing Fueling Brains never intended to perform. Thus, Relator's TTLA claim should be dismissed.

<u>**CONCLUSION AND REQUEST FOR ORAL ARGUMENT**</u>

For all of these reasons, the Court should dismiss all counts in Relator's Second Amended Complaint with prejudice, with the exception of Count Seven (Breach of Contract).[7] Relator has already amended its complaint twice and failed to cure basic pleading deficiencies. Further amendment would be futile.

Given the complexity of the legal issues and the gravity of Relator's complaint—which seeks to impose on Fueling Brains essentially punitive treble damages and per-claim penalties—Fueling Brains respectfully submits that oral argument will assist the Court in deciding this motion and requests that the Court set the case for oral argument.

Dated: March 21, 2024                    Respectfully Submitted,

*/s/ Allissa Pollard*
Allissa Pollard
Attorney-in-charge
Texas Bar No. 24065915
Southern District of Texas Bar No. 982820
**ARNOLD & PORTER KAYE SCHOLER LLP**
700 Louisiana St., Suite 4000
Houston, TX 77002
Tel.: (713) 576-2400
Fax: (713) 576-2499
Allissa.Pollard@arnoldporter.com

Randy Miller
Of counsel *(Pro Hac Vice pending)*
Colorado Bar No. 33694
**ARNOLD & PORTER KAYE SCHOLER LLP**
1144 Fifteenth St., Suite 3100

---

[7] As Justice Thomas noted in dissenting from the Supreme Court's decision in *U.S. ex rel. Polansky v. Executive Health Resources, Inc.*, 599 U.S. 419, 449 (2023), "[t]here are substantial arguments that the [FCA's] qui tam device is inconsistent with Article II [of the U.S. Constitution] and that private relators may not represent the interests of the United States in litigation." Fueling Brains does not raise a constitutional challenge to the FCA here but intends to assert a constitutional defense should it be required to file an answer to the FCA claims. Fueling Brains reserves its right to ask this Court to adjudicate the constitutional question on a subsequent motion for judgment on the pleadings.

Denver, CO 80202
Tel.: (303) 863-1000
Fax: (303) 863-2301
Randy.Miller@arnoldporter.com

Christian Sheehan
Of counsel *(Pro Hac Vice)*
District of Columbia Bar No. 1045233
**ARNOLD & PORTER KAYE SCHOLER LLP**
601 Massachusetts Ave, NW
Washington, DC 20001
Tel.: (202) 942-5000
Fax: (202) 942-5999
Christian.Sheehan@arnoldporter.com

**ATTORNEYS FOR DEFENDANT
KIDS U US, INC. d/b/a FUELING BRAINS**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on March 21, 2024, the foregoing document was electronically filed with the Clerk of Court using CM/ECF.

Respectfully Submitted,

*/s/ Allissa Pollard*
Allissa Pollard