In the United States District Court
Southern District of Texas
Houston Division

| | | |
|---|---|---|
| United States of America ex rel. BakerRipley, | § § § | |
| Plaintiff, | § § | |
| vs. | § § | Case No. 23-cv-1124 |
| Kids U US, Inc. d/b/a Fueling Brains, | § § | Filed In Camera and Under Seal |
| Cimberli Johnson Darrough, an individual, Antonio Corrales, an individual, Stirling Evaluation and Assessment, LLC, Michele Peters, an individual and MNA Evaluation and Assessment, LLC, | § § § § § § § | Jury Demanded |
| Defendants. | § | |

**Defendant Cimberli Johnson Darrough's:
(1) Amended Motion to Dismiss, and Brief in Support;
(2) Motion to Partially Join in Motion to Dismiss Second Amended Complaint filed by Defendant Kids U US, Inc. d/b/a Fueling Brains'; and
(3) Motion to Partially Join in Motion to Dismiss Second Amended Complaint filed by Defendants Antonio Corrales and <u>Stirling Evaluation and Assessment, LLC</u>**

To the Honorable Judge of Said Court:

Comes now Cimberli Johnson Darrough, Defendant herein, who hereby makes and files this, her: (1) Amended Motion to Dismiss, and

Brief in Support; (2) Motion to Partially Join in the Motion to Dismiss Second Amended Complaint filed by Defendant Kids U US, Inc. d/b/a Fueling Brains'; and (3) Motion to Partially Join in the Motion to Dismiss Second Amended Complaint filed by Defendants Antonio Corrales and Stirling Evaluation and Assessment, LLC, and in support whereof would show unto the Honorable Court as follows:

I.
Introduction

Darrough is one of a number of defendants named in a FCA lawsuit filed by BakerRipley, allegedly to recover amounts fraudulent extracted from the Plaintiff in connection with its administration of programs offered in the Houston area on behalf of Head Start, the federal program aimed at helping underprivileged children. The fact of the matter BakerRipley is guilty of gross mismanagement of its contracts, and is seeking to deflect blame from itself onto others by this lawsuit, but its more immediate problem with the claims brought against Darrough is, even after having amended its prior pleading, its Second Amended Complaint is insufficient and fail to state a claim against Darrough under the False Claims Acts, and so should be

dismissed.

## II.
## Dismissal Standard

A.  Rule 9(b) Standard

When a suit alleges the defendant committed fraud, Rule 9(b) imposes a heightened pleading standard: "In alleging fraud ... a party must state with particularity the circumstances constituting fraud ..." Fed. R. Civ. Pro. 9(b); *accord, Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008). This requires the plaintiff to plead the "who, what, when, where and how" of the supposed fraud. *Colonial Oaks Assisted Living Lafayette, L.L.C. v. Hannie Development, Inc.*, 972 F.3d 684, 693 (5th Cir. 2020); *West African Ventures, Ltd. v. Fleming*, 634 F.Supp.3d 391, 397 (S.D. Tex. 2022). A suit brought under the False Claims Act are subject to the requirements of Rule 9(b), *United States ex rel. Colquitt v. Abbott Laboratories*, 858 F.3d 365, 371 (5th Cir. 2017); *United States ex rel. Patel v. Catholic Health Initiatives*, 312 F.Supp.3d 584, 594 (S.D. Tex. 2018), as are claims of alleged conspiracies to violate the FCA, *United States ex re. Grubbs v. Kanneganti*, 565 F.3d 180, 193 (5th Cir. 2009), or to otherwise commit acts of fraud. *Lampkin v. UBS*

*PaineWebber, Inc.*, 238 F.Supp.3d 799, 817 (S.D. Tex. 2017), *aff'd*, 925 F.3d 727 (5th Cir.), *cert. denied*, ___ US. ___, 140 S.Ct. 389 (2019); *Allstate Ins Co. v. Benhamou*, 190 F.Supp.3d 631, 665 (S.D. Tex. 2016). Whether a claim is subject to dismissal for noncompliance with Rule 9(b) is determined using the same rules used to determine that a claim is subject to dismissal under Rule 12(b)(6). *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996).

B. <u>Rule 12(b)(6) Standard</u>

Rule 12(b)(6) mandates the dismissal of a lawsuit if it "fail[s] to state a claim upon which relief can be granted. Fed. R. Civ. Pro. 12(b)(6). To avoid dismissal, a plaintiff's pleading must both provide fair notice of the nature of his claims, and assert plausible factual allegations supporting the claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79, 129 S.Ct. 1937 (2009). The claims must make the relief sought "plausible, not merely conceivable," *Grubbs*, 565 F.3d at 186, and the Court should not "strain to find inferences favorable to the plaintiff." *Dorsey*, 540 F.3d at 338. In deciding a Rule 12(b)(6) motion, the Court may consider: (1) the Second Amended Complaint; (2) attachments

thereto; (3) attachments to the Motion that were referenced in the Second Amended Complaint, and which are central to the claims in the suit; and (4) any other thing of which the Court may properly take judicial notice. *Id.*

### III. Arguments and Authorities

A. <u>False Claims Suits Generally</u>

Generally speaking, the False Claims Act covers all fraudulent efforts to get the federal government to pay out money or property. *United States v. Neifert-White Co.*, 390 U.S. 228, 233, 88 S.Ct. 959 (1968). As such, the FCA is limited: it does not cover all fraud committed against the government, only fraud related to a claim for payment. *United States ex rel. Bennett v. Medtronic, Inc.*, 747 F.Supp.2d 745, 764 (S.D. Tex. 2010).

A claim under the FCA has four elements: (1) a false statement or fraudulent course of conduct regarding a claim; (2) made or carried out with the requisite scienter; (3) that was material; (4) that caused the federal government to pay out money or forfeit monies due. *United States v. Bollinger Shipyards, Inc.*, 775 F.3d 255, 259 (5th Cir. 2014);

*United States ex rel. Longhi v. United States*, 575 F.3d 458, 467-68 (5th Cir. 2009). A "claim" on which a FCA suit may be based is a request or demand, under contract or otherwise, for money or property from the federal government. 31 U.S.C. § 3729(b)(2); *Abbott v. BP Exploration & Production, Inc.*, 781 F.Supp.2d 453, 461 (S.D. Tex. 2011). The scienter needed for a FCA claim is actual knowledge a statement is false, or that it was made with reckless disregard for the truth. *Bollinger Shipyards*, 775 F.3d at 259-60.

Under the FCA, a claim can be false in one of three ways:

> 1. "factually false," meaning it is based on either an incorrect description of the goods and services provided, or seeks payment for goods and services not provided, *Medtronic,* 747 F.Supp.2d at 765;
>
> 2. "legally false" (also referred to as "false certification"), meaning when the claimant falsely certifies his compliance with a statute or regulation, *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 902 (5th Cir. 1997); and
>
> 3. "promissory fraud" (also known as "fraud in the inducement"), where the claimant certified it would comply with a statute, regulation or term in the future, knowing at the time he promised that he would not do so. *United States ex rel. Graves v. ITT Educational Svcs., Inc.*, 284 F.Supp.2d 487, 503 (S.D. Tex. 2003), *aff'd*, 111 Fed.Appx. 296 (5th Cir. Oct. 20, 2004), *cert. denied*, 544 U.S. 978, 125 S.Ct. 1869

(2005) (also noting this is a "rare" basis for FCA liability, and that "there is no inference of fraudulent intent not to perform from the mere fact that a promise made is subsequently not performed").

The courts analyze FCA suits through the prism of these categories in order to maintain the "crucial distinction between punitive FCA liability and ordinary breaches of contract." *United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 268 (5th Cir. 2010).

The materiality requirement means the false statement is one that has to be made in order to receive the payment. *United States ex rel. Spicer v. Westbrook*, 751 F.3d 354, 366 (5th Cir. 2014). The Supreme Court has characterized the materiality requirement as a "rigorous" one. *United Health Svcs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 181, 136 S.Ct. 1989 (2016). It is "rigorous" because not every statutory, regulatory or contract requirement is automatically "material" to requests for payment, "even if they are labeled as conditions of payment." *United Health Svcs.*, 579 U.S. at 191. The limitations imposed by the materiality requirement is the means courts use to preclude the FCA from becoming "an all-purpose anti-fraud statute," or "a vehicle for punishing garden-variety breaches of contract

or regulatory violations. *Id.* at 194. This means a representation may not be material even if the government could have declined a request for payment if it knew some representation was not wholly true. *Id.*, at 194-96.

B.  Plaintiff's Claims

The first pleading of which Darrough was aware is the Plaintiff's First Amended Complaint, Doc. 8, which is nothing if not prolix. However, its length did nothing to make clear what Darrough supposedly did to violate the FCA. Broadly, the Plaintiff relied on innuendo and speculation (with allegations often explicitly made on "information and belief" that some course of events was "likely," or even merely "possible," *see, e.g.*, Doc. 8, ¶¶ 14, 16, 37, 47, 96, 108-09, 111, 115), asserting Darrough must have been doing something wrong because some of those who had contracted to provide professional services to the Plaintiff for the benefit of children were academics who had been involved with Darrough's doctoral dissertation. *See, e.g.*, Doc. 8, ¶¶ 4, 8-9, 44-46, 86. The Plaintiff asserted Darrough "assisted" other of the defendants in receiving contracts from the Plaintiff, and

"facilitated" their being paid, Doc. 8, ¶¶ 8, 46-47, but never asserted she made a claim or that anything she did was material to the payment of claims, under the definition set forth above. It also claimed she "authorized" certain contracts and payments, *see, e.g.*, Doc. 8, ¶¶ 48, 80-81, 83, 87, an assertion that (in addition to being factually false), is also not the assertion that Darrough made a "claim" that can be the basis of a FCA claim. The Plaintiff complained about the supposed falsity of statements Darrough made after the payments it seeks to recoup had been made, *see, e.g.*, Doc. 8, ¶¶ 69-71, statements which (in addition to not being false, as the Plaintiff claims) fails to explain how the statement could be "material" as the term is used in the FCA, having been made after the payment was made. The Plaintiff complained of supposed marketing done to third parties, without ever explaining what any of this has to do with the FCA claim it brings, or how this supposed "marketing" led it to make payments it now claims were improper. *See, e.g.*, Doc. 8, ¶¶ 101-09. The Plaintiff complained about the existence of a non-profit entity Darrough established, although what it was supposed to have done or how Darrough was

supposed to have used it to violate the FCA with respect to the Plaintiff went unexplained. *See, e.g.*, Doc. 8, ¶¶ 10, 47, 105, 110. Finally, the Plaintiff even tries to cite anodyne statements by Darrough, following up regarding some alleged defect in the performance of some contract, trying to spin her request for more information as "proof" that Darrough was somehow engaged in fraud, the kind of heads-I-win-tails-you lose assertion insufficient to state any claim, much less a fraud claim. *See, e.g.*, Doc. 8, ¶ 64.[1]

Darrough filed a Motion, pointing out these allegations failed under the standard established by Rule 9(b), discussed above, and also that the First Amended Complaint failed to state a claim against Darrough for which relief can be granted. Doc. 21.

In response, the Plaintiff failed its Second Amended Complaint. Doc. 22. In it, the Plaintiff changed the allegations made against Darrough somewhat. Some of its assertions, such as the claim that Darrough had "assisted" or "facilitated" those making claims for government funds did not change, *compare* Doc. 8, ¶ 8 *with* Doc. 22, ¶ 9,

---

[1] "I'm not guilty!" "That's exactly what a guilty person would say." The specific logical fallacy of this kind of argument is "affirming the consequent."

or that she had "authorized" certain payments, *compare* Doc. 8, ¶ 48 *with* Doc. 22, ¶ 55, remained essentially unchanged. However, in other places, the Plaintiff now asserted more directly that Darrough had herself made false claims. *Compare* Doc. 8, ¶ 46 ("Darrough facilitated fraudulent payments to [other named defendants] ..." *with* Doc. 22, ¶ 50 (the re-written version of the same allegation, "Darrough knowingly created and submitted false contracts and false claims to the Agency and directed fraudulent payments to be made to [other named defendants] ..."). Factually, Darrough is curious as to what the Plaintiff learned different that it believed allowed it to amend the allegations made against her in the way it did, but even if there is something the changes made are insufficient to rescue the Plaintiff's pleading from the deficiencies noted in Darrough's prior motion.

While both the Plaintiff's lengthy First Amended Complaint and its even lengthier Second Amended Complaint set forth a lot of who, what, when, where and how, its pleading still fail to say anything about Darrough related to the relevant issue, her supposed violations of the FCA. Even if the Court assumes the suppositions made about Darrough

by the Plaintiff are accurate, and that she was the person who filed the documents making at least a few of the claims that the Plaintiff now expressly asserts were false claims, the allegations are still insufficient to establish her participation in the conspiracy alleged, and insufficient to show that anything she said in the supposedly false claims was "material" to their payment, under the FCA's definition of material, set forth above. *United Health Svcs.*, 579 U.S. at 194-96.[2] Instead, the Plaintiff tries to impugn Darrough (and the other defendants) generally, spinning her relationships and actions as fraud. This is not enough — there must be a connection between alleged fraud and the claim. The Plaintiff's suppositions about what are "likely" and "possible," and its factually unsupported "information and belief" are insufficient.

Finally, even if none of the foregoing were true, the Plaintiff failed to allege a single fact that would show Darrough received a single cent of the money it claims was taken from it by the fraud alleged. This is

---

[2] Except in a general senses, unsupported by facts or even analysis. *See, e.g.*, Doc. 22, ¶ 54 (alleging that false claims allegedly made by Darrough "were material to the Grantee's Agency's payment of the claims and were also material to the Grantee's Agency's progress reporting and certification of the claims ..."); *accord*, Doc. 22, ¶¶ 58, 107. It is hard to imagine an assertion that is further from the requirement for specificity demanded by Rule 9(b), *Twombley* and *Iqbal* than this one.

important, and precludes the Plaintiff's claims against Darrough, because even if the Court assumes the Plaintiff has successfully plead that Darrough is responsible for making a false "claim," as the term is defined under the FCA, 31 U.S.C. § 3279(b)(2)(A), liability under the FCA requires not only that there have been a "claim" made that was false, but also that this claim was "material" to the decision to make the payment sought through the claim "to the *claimant*." *United States ex rel. Thomas v. Black & Veatch Spec. Products Corp.*, 820 F.3d 1162, 1169 (10th Cir. 2016); *United States ex rel. Hendlow v. University of Phoenix*, 461 F.3d 1166, 172 (9th Cir. 2006); *United States ex rel. Lorona v. Infilaw Corp.*, 3:15-cv-959-J-34PDDB, 2019 U.S. Dist. LEXIS 135300 * 57-58 (M.D. Fla. Aug. 12, 2019) (quotation found in each; emphasis added). In addition to being insufficient to show the claims were material to the payments the Plaintiff claims were falsely sought, there is nothing showing anything was paid to Darrough — excepting only the Plaintiff's wholly unsubstantiated speculation about kickbacks and payments it asserts must have been made, based on its "information and belief" (the information it claims to have not being provided, and

the basis for its purported belief not being explained or otherwise substantiated) — and so the pleading is insufficient to show that anything Darrough said, be it true or false, can be material under the FCA.

Rule 9(b) requires "particularity" regarding the "circumstances constituting fraud ..." or the facts supporting the existence of a claimed conspiracy. The Plaintiff's efforts to substitute volume for quality, and supposition for fact, are insufficient. Likewise, Rule 12(b)(6) requires pleading plausible facts that support the specific legal claim brought against the defendant, something the Plaintiff failed to do. Accordingly, the Plaintiff's suit against Darrough ought to be dismissed pursuant to Fed. R. Civ. Pro. 9(b) and 12(b)(6).

D.   Joinder of Other Motions

In addition to the arguments made herein, Darrough also joins the in portions of the Motions seeking dismissal that have been filed by other defendants herein:

> 1.   Fueling Brain's Motion, Doc. **34**, at 11-16 (argument seeking dismissal of FCA claims based on kickback theories), at 18-19 (arguments seeking dismissal of reverse FCA claims) and at 19-21 (arguments seeking dismissal of FCA

conspiracy claims); and

2. Corrales Defendants' Motion, Doc. **33**, ¶¶ 28-35 (argument seeking dismissal of implied false certification claims), ¶¶ 36-39 (arguments seeking dismissal due to application of the public disclosure bar), ¶¶ 4043 (arguments seeking dismissal of reverse FCA claims) and ¶¶ 44-48 (arguments seeking dismissal of FCA conspiracy claims).

Parties may, in the interest of judicial efficiency, join a motion filed by another if they are similarly situated, making the filing of independent motions redundant. *Tatung Co. v. Hsu*, 217 F.Supp.2d 1138, 1151 (C.D. Cal. 2016); *Vazquez v. Central States Joint Bd.*, 547 F.Supp.2d 833, 867 (N.D. Ill. 2008). An example of such a situation is when multiple defendants are accused in the same pleading of joint involvement in the same scheme, *see, e.g., United States v. Sneed*, 3:19-CR-0580-B, 2022 U.S. Dist. LEXIS 856 * 8 (N.D. Tex. Jan. 3, 2022), i.e., exactly the allegations made by the Plaintiff in this case. Here, the Plaintiff's claims against all the defendants are based on the assertion there was some grand conspiracy, involving all of them, to enrichment themselves by making false claims. If the movants in the motions in which Darrough seeks to join are entitled to the relief they seek in the

sections she joins, then Darrough is, also, and for the same reasons. Accordingly, Darrough asks the Court to allow her to join in the portions of the motions set forth above, and grant her the same relief it grants to the movants therein.

Wherefore, premises considered, Darrough prays her Motion be granted, and the case against her dismissed with prejudice, for the reasons set forth herein.

Darrough prays for such other and further relief, general or special, in law or in equity, to which she may prove herself to be justly entitled.

Respectfully submitted,

The Singhal Law Firm


*/s/ Dinesh H. Singhal*
Dinesh H. Singhal
Texas Bar No. 24003383
dinesh@singhallaw.com
2700 Post Oak Blvd., Suite 1750
Houston, Texas 77056
Tel: 713.222.8500

Attorney for Darrough

## Certificate of Service

The undersigned hereby certifies that a true and correct copy of the foregoing Motion has been served on the following counsel of record through the Court's CM/ECF system, on this the 21st day of March, 2024:

Joseph E. Hoffer,
Schulman Lopez
845 Preston Road
San Antonio, Texas 78258
Lead counsel for Plaintiff

Amanda Gadison
Bryan Cave
2200 Ross Avenue, Suite 4200 W
Dallas, Texas 75201
Lead counsel for Defendant Kids U Us

Jordan Raschke Elton
Greer Herz
One Moody Plaza, 18th Floor
Galveston, Texas 77550
Lead counsel for Defendants Peters
and MNA Evaluation

Fred D. Raschke
Mills Shirley
2200 Market Street, Suite 300
Galveston, Texas 77550
Counsel for Defendants Corrales and Sterling Evaluations

                                          */s/ Dinesh H. Singhal*
                                          Dinesh H. Singhal