**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel*. | § | |
| BakerRipley | § | |
| 4450 Harrisburg, Suite 200 | § | |
| Houston, TX 77011 | § | |
| | § | |
| & BakerRipley | § | |
| *Plaintiffs* | § | **Case No. 23-cv-1124** |
| | § | |
| | § | |
| | § | |
| v. | § | |
| | § | |
| | § | |
| Kids U US, Inc. d/b/a Fueling Brains, | § | |
| Cimberli Johnson Darrough, an individual, | § | |
| Antonio Corrales, an individual, | § | |
| Sterling Evaluation and Assessment, LLC, | § | **JURY DEMANDED** |
| Michele Peters, an individual, and | § | |
| MNA Evaluation and Assessment, LLC | § | |
| | § | |
| | § | |
| *Defendants* | § | |

**RESPONSE TO DEFENDANT**
**CIMBERLI JOHNSON DARROUGH'S MOTION TO DISMISS**

TO THE HONORABLE JUDGE OF SAID COURT:

BakerRipley, Plaintiff and Relator on behalf of the United States of America ("Agency," or "Relator"), asks the Court to deny Defendant Cimberli Johnson Darrough's ("Darrough") Motion to Dismiss the Second Amended Complaint.

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................ ii

TABLE OF AUTHORITIES ................................................................................... iii

I. INTRODUCTION ................................................................................................1

II. STANDARD OF REVIEW .................................................................................2

      A.      Federal Rule of Civil Procedure 9(b) ....................................................2

      B.      Federal Rule of Civil Procedure 12(b)(6) .............................................3

III. ARUGMENT ......................................................................................................4

      A.      Darrough's Motion to Dismiss Should be Denied Because the Agency Sufficiently Pled the Existence, Falsity, and Materiality of the False Claims and Statements Darrough Submitted and Caused to be Submitted ....................... 4

      B.      Darrough's Motion to Dismiss Should be Denied Because the FCA Conspiracy Claim Against Darrough is Sufficiently Pled ................................ 13

      C.      Darrough is Liable for the False Claims and Records She Submitted or Caused to be Submitted, Even if She was Not the "Claimant" ......................... 15

      D.      Darrough's Request to Join in the Other Motions Should be Denied; Alternatively, The Agency Incorporates its Responses to Those Motions as Though Fully Set Forth Herein ..................................................................... 17

IV. ALTERNATIVE MOTION FOR LEAVE TO AMEND .................................... 20

V. CONCLUSION .................................................................................................. 20

# INDEX OF AUTHORITIES

**UNITED STATES SUPREME COURT CASES:**

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ......................................................... 3

*Bell Atl. v. Twombly,*
550 U.S. 544 (2007) ......................................................... 3

*Neder v. United States,*
527 U.S. 1 (1999) ........................................................... 12

*United States v. Neifert–White Co.,*
390 U.S. 228, 233 (1968) .................................................... 5


**CASES FROM THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT:**

*Baker v. Putnal,*
75 F.3d 190, 196 (5th Cir. 1996) ............................................ 3

*Benchmark Elec., Inc. v. J.M. Huber Corp.,*
343 F.3d 719 (5th Cir.), *modified on other grounds*, 355 F.3d 356 (5th Cir. 2003) .......... 2

*Chavez v. De La Paz,*
156 Fed. App'x 694 (5th Cir. 2005) ......................................... 3

*Gonzalez v. Fresenius Med. Care N. Am.,*
689 F.3d 470 (5th Cir. 2012) ............................................. 4-5

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,*
313 F.3d 305 (5th Cir. 2002) ............................................... 20

*Morin v. Caire,*
77 F.3d 116 (5th Cir. 1996) ................................................ 3

*Riley v. St. Luke's Episcopal Hospital,*
355 F.3d 370 (5th Cir. 2004) ............................................. 5-6

*U.S. ex re. Colquitt v. Abbott Laboratories,*
858 F.3d 365 (5th Cir. 2017) ............................................... 4

*U. S. ex rel. Farmer v. City of Houston,*
523 F.3d 333 (5th Cir. 2008) .............................................. 13

*U.S. ex rel. Grubbs v. Kanneganti,*
    565 F.3d 180 (5th Cir. 2009) ........................................ 4, 13

*U.S. ex rel. Harman v. Trinity Industries, Inc.,*
    872 F.3d 645 (5th Cir. 2017) ........................................... 4

*U.S. ex rel. Longhi v. U.S.,*
    575 F.3d 458 (5th Cir. 2009) ........................................... 5

*U.S. v. Corporate Mgmt., Inc.,*
    78 F.4th 727 (5th Cir. 2023) .................................... 5, 6, 12

*White v. U.S. Corr., L.L.C.,*
    996 F.3d 302 (5th Cir. 2021) ........................................... 3


**CASES FROM OUR SISTER CIRCUITS:**

*U.S. ex rel. Conner v. Salina Reg'l Health Ctr, Inc.,*
    543 F.3d 1211 (10th Cir. 2008) ...................................... 16

*U.S. ex rel. Harrison v. Westinghouse Savannah River Co.,*
    352 F.3d 908 (4th Cir. 2003) ......................................... 16

*U.S. ex rel. Hendow v. Univ. of Phoenix,*
    461 F.3d 1166 (9th Cir. 2006) ....................................... 16

*U.S. ex rel. Thomas v. Black & Veatch Special Projects Corp.,*
    820 F.3d 1162 (10th Cir. 2016) ...................................... 16


**DISTRICT COURT CASES:**

*Abbott v. BP Exploration and Production, Inc.,*
    781 F.Supp.2d 453 (S.D. Tex. 2011) .................................. 5

*Eachus v. Steelman,*
    No. 4:20-CV-324, 2021 WL 857988 (E.D. Tex. Mar. 8, 2021) ........... 13

*Nuncio v. Webb County,*
    No. 5:20-CV-92, 2021 WL 4442518, (S.D. Tex. Sep. 28, 2021) .......... 3

*Tatung Co., Ltd. v. Shu Tze Hsu,*
    217 F.Supp.3d 1138 (C.D. Cal. 2014) .............................. 18, 19

*United States v. Americus Mortgage Corp.*,
    No. 4:12–cv–02676, 2014 WL 4274279 (S.D. Tex. Aug. 29, 2014) ............................... 5

*U.S. v. Colon*,
    No. 97 CR 659, 1998 WL 214714 (N.D. Ill. 1998) .................................................... 19, 20

*U.S. ex rel. Lorona v. Infilaw Corp.*,
    No. 3:15-cv-959-J-34PDB, 2019 WL 3778389 (M.D. Fla. Aug. 12, 2019) .................... 16

*U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*,
    200 F. Supp. 2d 673 (S.D. Tex. 2002) ........................................................................ 5, 6

*U.S. v. Sneed*,
    No. 3:19-CR-0580-B, 2022 WL 35801 (N.D. Tex. Jan. 4, 2022) .................................. 18

## RULES & STATUTES:

31 U.S.C. § 3729(a)(1)(A) ...................................................................................................... 4

31 U.S.C. § 3729(a)(1)(B) ...................................................................................................... 4

Fed. R. Civ. P. 9(b) ...................................................................................................... 2, 3, 12, 13

Fed. R. Civ. P. 12(b)(6) ...................................................................................................... 3, 12

# I. Introduction

1. BakerRipley is a Texas nonprofit corporation and public charity designated and funded by the Federal Government to operate Head Start and Early Head Start Federal programs throughout the Houston, Texas region.

2. In the wake of unprecedented challenges posed by the COVID-19 pandemic, BakerRipley, true to its mission, sought innovative and accessible educational solutions for vulnerable, low-income communities. It was during this time that Fueling Brains, a self-touted champion for educational advancement, emerged on the scene, making grand promises of transformative virtual learning platforms that were tailored specifically for those in need. Although Fueling Brains, along with the other Defendants, made grand promises of providing "individualized curriculum," "independent evaluations," "professional development," and "material kits," none of it materialized as promised. Instead, Fueling Brains and the other Defendants exploited the dire circumstances of the pandemic to enrich themselves at the expense of low-income families, threatening the integrity of public funds in the process. Under the guise of providing essential educational services to vulnerable populations, Fueling Brains, with Darrough's assistance, engaged in a calculated scheme to defraud the Government and the Agency, and unlawfully obtain federal grant funds.

3. BakerRipley entrusted Cimberli Darrough to perform her role as the Agency's Senior Director of Early Head Start/Head Start programs and project director/principal officer overseeing the Agency's Head Start programs. Darrough was also the Principal Investigator for the Head Start grant administration. In these roles, Darrough knew or should have known of both the Agency's internal policies and procedures for granting contracts under the comparative quote threshold as well as the Federal Government's procurement regulations and guidelines. Darrough

conspired with Fueling Brains and the other Defendants to conceive a deliberate and systematic effort to exploit benefits reserved for the most disadvantaged among us. In so doing, Fueling Brains not only betrayed the trust of the Agency and the community it purported to serve, but also undermined the very foundations of accountability and justice upon which our society relies.

## I.     STANDARD OF REVIEW

### A.     FEDERAL RULE OF CIVIL PROCEDURE 9(b)

4.      A complaint in a False Claims Act suit must fulfill the requirements of Rule 9(b). *See U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.,* 125 F.3d 899, 903 (5th Cir. 1997). Rule 9(b) states that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularly. Malice, intent, knowledge, and other condition of a mind of a person may be averred generally." Fed. R. Civ. 9(b). The amount of particularly required for pleading fraud differs from case to case. *See Benchmark Elec., Inc. v. J.M. Huber Corp.,* 343 F.3d 719, 724 (5th Cir.), *modified on other grounds,* 355 F.3d 356 (5th Cir. 2003). To plead fraud with particularly in the Fifth Circuit, a plaintiff must include the "'time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby.'" *Williams v. WMX Tech., Inc.,* 112 F.3d 175, 177 (5th Cir. 1997) (*quoting Tuchman v. DSC Communications Corp.,* 14 F.3d 1061, 1068 (5th Cir. 1994)), *cert. denied*, 522 U.S. 966 (1997); *see also Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005) (The 9(b) standard requires "specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation of why they were fraudulent.").

## B.     FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

5.     A Rule 12(b)(6) motion seeks to dismiss an action for failure to state a claim for which relief can be granted. FED. R. CIV. P. 12(b)(6). "A Rule 12(b)(6) motion to dismiss fails unless 'it appears . . . no relief could be granted under any set of facts that could be proved consistent with the allegations' in the complaint." *Chavez v. De La Paz*, 156 Fed. App'x 694 , 696 (5th Cir. 2005) (quoting *Morin v. Caire*, 77 F.3d 116 (5th Cir. 1996)).

6.     Rule 12(b)(6) must be read with Rule 8(a)'s pleading standard, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A plaintiff survives a Rule 12(b)(6) motion by pleading "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

7.     To do so, the plaintiff must plead sufficient facts to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Labels and conclusions, "a formulaic recitation of the elements of a cause of action," and bare assertions are insufficient. *Twombly*, 550 U.S. at 555. But the complaint must be liberally construed, all well-pleaded facts must be taken as true, and the Court "constru[es] all reasonable inferences in the light most favorable to the plaintiff." *White v. U.S. Corr., L.L.C.*, 996 F.3d 302, 306–07 (5th Cir. 2021); *Iqbal*, 556 U.S. at 679; *Baker v. Putnal,* 75 F.3d 190, 196 (5th Cir. 1996).

8.     Notably, for the Rule 9(b) and 12(b)(6) standards, a plaintiff "is not required to plead facts 'peculiarly within the knowledge of defendants,' as she has not had the benefit of discovery." *Nuncio v. Webb County*, No. 5:20-CV-92, 2021 WL 4442518, at *5, (S.D. Tex. Sep. 28, 2021) (quoting *Eachus v. Steelman*, No. 4:20-CV-324, 2021 WL 857988, at *18 (E.D. Tex. Mar. 8, 2021)). Thus, a plaintiff can survive a motion to dismiss FCA claims even without details

of a false claim, so long as they allege "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *U.S. ex rel. Colquitt v. Abbott Laboratories*, 858 F.3d 365, 372 (5th Cir. 2017) (quoting *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 191 (5th Cir. 2009)).

## II.     ARGUMENT

**A.     DARROUGH'S MOTION TO DISMISS SHOULD BE DENIED BECAUSE THE AGENCY SUFFICIENTLY PLED THE EXISTENCE, FALSITY, AND MATERIALITY OF THE FALSE CLAIMS AND STATEMENTS DARROUGH SUBMITTED AND CAUSED TO BE SUBMITTED.**

9.     Darrough's motion can be distilled into complaints about the existence, falsity, and materiality of the false claims and statements that Darrough submitted or caused to be submitted. Dkt. No. 35, at 11–12. Although Darrough contends that the Agency failed to assert that Darrough "made a claim or that anything she did was material to the payment of claims," that is simply inaccurate. Reading the Second Amended Complaint through the lens of current FCA law, it is clear the Agency properly asserted Darrough's rampant violations of the FCA and her numerous attempts to defraud both the Agency and the Government in an elaborate scheme to line her pockets and take advantage of the position within the Agency.  As set forth herein, Darrough's Motion to Dismiss should be DENIED in its entirety.

10.     Under the FCA, a defendant can be held liable when it "causes to be presented, a false or fraudulent claim" or "causes to be made or used, a false record or statement." 31 U.S.C. § 3729(a)(1)(A) & (B). Four elements are required for a court to find an FCA violation: (1) "a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money or to forfeit moneys due (i.e., that involved a claim)." *U.S. ex rel. Harman v. Trinity Indus., Inc.*, 872 F.3d 645, 654 (5th Cir. 2017) (quoting *Gonzalez v. Fresenius Med. Care N. Am.*, 689 F.3d 470, 475 (5th Cir. 2012)).

"[A] claim may be false or fraudulent under the FCA because it includes a certification of compliance with a federal statute, regulation, or contract that is a prerequisite to obtaining the government benefit." *U.S. ex rel Bennett v. Medtronic, Inc.,* 747 F.Supp.2d 745, 765 (S.D. Tex. 2010).

11.     For FCA purposes, a "claim" includes "any request or demand . . . for money . . . made to a contractor, grantee, or other recipient, if the money or property [is] to be spent or used on the Government's behalf or to advance a Government program or interest," and if the Government provides any portion of the money or reimburses the grantee. 31 U.S.C. § 3729(b)(2). This includes claims for payment or approval, and claims submitted under a contract the Government was fraudulently induced into entering, even if the claims for payment pursuant to those contracts themselves were not false. *U.S. ex rel. Guzder v. MKM Eng'rs, Inc.*, No. H–05– 895, 2010 WL 11595351, at *5 (S.D. Tex. Jan. 14, 2010); *U.S. v. Neifert–White Co.*, 390 U.S. 228, 233 (1968) (applying the FCA to a loan application); *U.S. v. Americus Mortg. Corp.*, No. 4:12– cv–02676, 2014 WL 4274279, at *4–5, 8–9 (S.D. Tex. Aug. 29, 2014) (applying the FCA to requests for HUD approval); *Abbott v. BP Expl. and Prod., Inc.*, 781 F.Supp.2d 453, 464–65 (S.D. Tex. 2011) (applying the FCA to a permit application); *U.S. ex rel. Longhi v. Lithium Power Tech., Inc.*, 513 F.Supp.2d 866, 882–84, 889 (S.D. Tex. 2007) (applying the FCA to proposals for contracts). In sum the FCA applies "to all attempts to cause the Government to pay out sums of money." *U.S. v. Neifert–White Co.*, 390 U.S. 228, 233 (1968).

12.     Additionally, "[t]he FCA applies to anyone who knowingly assists in causing the Government to pay claims grounded in fraud, without regard to whether that person has direct contractual relations with the Government." *U.S. v. Corporate Mgmt., Inc.*, 78 F.4th 727, 741 (5th Cir. 2023) (quoting U.*S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 378 (5th Cir.

2004)). The "knowing assistance" standard is similar to proximate causation. *Id.* (requiring "some sort of affirmative act that causes or assists the presentation of a claim"). That is, Darrough did not necessarily have to be the individual that submitted the claim herself, only that she had a material role in the submission of the false claim. *See id*; *U.S. v. Corporate Mgmt., Inc.*, 78 F.4th 727, 741 (5th Cir. 2023) ("'Knowing assistance does not require that a person be the one who actually submitted the claim forms in order to be liable.'" (quoting *Riley v. St. Luke's Episcopal Hosp.,* 355 F.3d 370, 378 (5th Cir. 2004))). Furthermore, a person is just as liable in the ostrich-type situation described in *Corporate Mgmt.*, as if they had actually submitted the false claim themselves. *U.S. v. Corporate Mgmt., Inc.*, 78 F.4th 727, 741 (5th Cir. 2023).

13.     Despite Darrough's (unfounded) beliefs to the contrary, the Second Amended Complaint sufficiently details her wrongful conduct, describing the necessary elements of "who, what, when, where, and how," required for FCA claims. In particular, the Second Amended Complaint provides:

- "Darrough used her position at the Agency to facilitate the submission of false claims by facilitating the Agency's contracts with, and payments, to Defendants Fueling Brains, Corrales, and Peters." SAC ¶ 9;

- "Darrough acted in concert with Co-Defendants—conspiring to circumvent federal and Agency contract procurement requirements in order to award HHS vendor contracts to the Defendants. Darrough's undisclosed relationships with the Agency vendors named as Defendants, both financial, professional, and personal constituted impermissible conflicts of interest. The Defendant vendors failed to perform under the contracts with the Agency, which failures Darrough helped obfuscate while she facilitated their false and fraudulent claims pushing payments through the Agency's system. Darrough and the Defendants also used the Agency's name to promote Fueling Brains without the Agency's knowledge or consent. They then used their official positions as an administrator with the Agency and as independent research professors at UHCL, holding out their "independence" to recommend and pursue contracts for services for Fueling Brains with other school systems and federal grantees." SAC ¶ 16;

- "Darrough participated in a conspiracy against the Agency along with multiple vendors, specifically including the other Defendants. Darrough, acting in concert

with these vendors, conspired to circumvent federal and Agency contract procurement law and requirements to award fraudulent HHS vendor contracts to the certain vendors with whom she had both professional and personal relationships. Once the contracts were awarded, the vendors failed to perform under the contracts (failures Darrough helped obfuscate while she pushed payments through the Agency's financial systems) and colluded to affirmatively cover up the fraudulent claims and payments." SAC ¶ 45;

- Darrough actively helped Defendant vendors restructure and submit false bids for contracts; assisted those bids to procurement by operating outside the Government's and the Agency's contract procurement requirements; and submitted false and fraudulent CQS forms, quotes, and invoices. SAC ¶¶ 53, 98–99;

- Darrough knowingly created false contracts to facilitate fraudulent payments to Defendant vendors. SAC ¶¶ 50, 51, 53, 54, 114;

- Darrough knew Defendant vendors failed to perform their contractual obligations, yet used her position to obfuscate Defendant vendors nonperformance while facilitating false and fraudulent claims. SAC ¶¶ 16, 50, 53, 57;

- Darrough authorized duplicative payments be sent to Defendant vendors. SAC ¶¶ 46, 50, 53, 94, 114;

- Darrough authorized contracts and claims, despite knowing of the existence of Defendant vendors prohibited conflict of interests. SAC ¶¶ 53, 57, 121–23, 126–27, 128–31, 134;

- Had the Agency known of Defendants' nonperformance and wrongful conduct, it would not have forwarded the claims to the Federal Government or tendered payment. SAC ¶¶ 20, 54, 56, 63, 128;

- "As described below with respect to each vendor contract, from 2020 through 2021 Darrough, among other things, authorized fraudulent contracts with, and made and authorized federal fund payments to, among others: (1) Fueling Brains; (2) Antonio Corrales d/b/a Sterling Evaluation and Assessment; and (3) Michelle Peters, individually and/or Peters d/b/a MNA Evaluation & Assessment LLC. Despite knowing these vendors materially failed to perform under the contracts, Darrough authorized payments to them using HHS funds. In some instances, Darrough colluded with the vendors and authorized fraudulent contract payments (and double payments) for services that were not contracted for and not provided to the Agency. Had BakerRipley known of this wrongful conduct, it would not have paid the invoices presented by these vendors." SAC ¶ 46; *see also* SAC ¶ 50;

- "Once Darrough negotiated services or executed a contract with a vendor to provide services under the HHS/ACF/OHS program, in compliance with the terms of the agreement or contract, Darrough was to submit a purchase order request for

payment. Darrough knew that the invoiced services were not contracted for, not provided, and/or double billed, and deliberately and recklessly withheld this information from BakerRipley. Based upon Darrough's material representations regarding vendor payment requests, and her failure to disclose critical information about the legitimacy of the invoiced services, Agency employees would "draw down" the HHS/ACF/OHS grant funds and pay the vendors." SAC ¶ 47;

- "From 2019 through 2021 Darrough, created false and fraudulent procurement forms, authorized false and fraudulent contracts, and made and authorized federal fund payments on false or fraudulent claims submitted by, among others: (1) Fueling Brains; (2) Antonio Corrales, individually and/or Corrales d/b/a Sterling Evaluation and Assessment, LLC; and (3) Michelle Peters, individually and/or Peters d/b/a MNA Evaluation & Assessment, LLC to provide goods and services to the Agency's Head Start program." SAC ¶ 55;

- Darrough's submission of a fraudulent CQS form on December 11, 2020. SAC ¶ 63. This CQS form contained fictional comparative price quotes, and an artificially deflated total cost to avoid proper procurement procedures. SAC ¶ 64;

- "On December 15, 2020, despite not having received any goods or services from Fueling Brains as promised, Darrough submitted a purchase order request for payment to Fueling Brains in the amount of $100,000.00 for the 'Fueling Brains Program for the 2020-2021 school year.' Despite representing to the Agency that the service agreement totaled $100,000.00, Darrough worked behind the scenes to ensure Fueling Brains received the full $300,000.00. For example, she sent Fueling Brains an email stating, 'We are working with our Procurement Department to submit one invoice for the amount of the full curriculum (sic) the payment can be procured during our budget period that ends on 12/31.' In another email sent within the Agency that same month, Darrough stated that Fueling Brains would be paid $300,000.00.[1] These, and other communications, demonstrate that Darrough was intentionally and fraudulently bypassing the Agency's and the federal grant requirements to ensure payment of fraudulent claims using federal HHS funds." SAC ¶¶ 64–66;

- Paragraphs 67 through 68 further list false invoices submitted by Fueling Brains to the Agency under Darrough's supervision. SAC ¶ 67–68. At the time, Darrough knew these invoices were false because Fueling Brains had failed to materially perform, but insisted on Fueling Brains being paid. SAC ¶ 69;

- "Fueling Brains was to deliver the "virtual" material kits to the Agency prior to the beginning of the 2021-2022 school year. Darrough was aware this did not occur and still pushed through false claims for goods that were never provided." SAC ¶ 78.

---

[1] Email from Darrough (Oct. 5, 2020).

- Paragraph 84 of the Complaint includes a chart of the fraudulent invoices and claims submitted by Fueling Brains and supervised by Darrough. SAC ¶ 84;

- "In April 2022, the $300,000 payments to Fueling Brains were the subject of an Agency audit finding based on Darrough's failure to follow procurement procedures. When the Agency asked Darrough why the Agency procured $100,000.00 but paid $300,000.00 for the 'virtual learning' program, Darrough responded that:

  *The Pandemic created an immediate crisis in education in 2020...The EHS/HS experienced a different barrier that included lack of basic needs for our low-income families to obtain the services we provided. [Fueling Brains] was the only entity that was able to fulfill all the needs and requirements to implement a virtual learning platform. In the Fall of 2020, the Agency EHS/HS program was the only program in the county that returned to face-to-face instruction for our parents who were essential workers. Although, the children returned to the classroom the model was still hybrid as COVID continued to run rapid. There were still safety concerns and [Fueling Brains] was able to assist with the virtual Hybrid learning platform...I do understand that the amount and number of invoices have resulted in a finding. However, during the unprecedented times that COVID brought, we were able to continue quality services to our children and families, for 3000 low income children/families, through Kids R Kids. We no longer use the program and ended the contract in 2021 with confidence that it assisted with closing the achievement gaps that children experienced during the pandemic.[2]*

SAC ¶ 85;

- "Every important part of Darrough's response is wholly and materially false. There was never a virtual learning platform. Fueling Brains did not support the Agency's efforts to continue offering quality services to children. Fueling Brains was never implemented at the Agency, and therefore had no impact on closing any achievement gaps." SAC ¶ 86;

- "In June of 2022, in response to a request from the Agency asking Darrough for information related to any complaints or concerns she had regarding Fueling Brains, and any discussion regarding payment or documentation regarding the Agency agreement with Fueling Brains, despite Fueling Brains' complete failure to perform Darrough stated, *'We do not have any complaints, other than a delay in delivering products last Summer...They provided the services we needed to close achievement gaps and offered a platform for virtual learning and professional*

---

[2] E-mail from Darrough (May 17, 2022). Darrough initially emailed another Agency employee on May 11, 2022, in response to the inquiry, stating, "*I'm not sure what my response should be.*" The audit finding and Darrough's explanation was regarding Kids U US/Fueling Brains, however Darrough mistakenly referenced another vendor named "Kids R Kids."

*development.*[3] However, Fueling Brains had provided no services, no assessment, no virtual learning platform, and scant professional development, and therefore could not have had any impact on closing any achievement gap." SAC ¶ 87;

- "As discussed above, also in April 2021, Darrough submitted requisition requests of $250,000.00 and $329,000.00 for Fueling Brains, which Corrales also worked for and received commissions from, to provide goods and services that were already included under another contract." SAC ¶ 94;

- "Shortly thereafter, in May 2021 and while Darrough was Corrales' doctoral student and business partner, Corrales d/b/a Sterling submitted, to Darrough, two separate contract proposals to provide: 1) emotional intelligence/trauma training and 2) financial literacy training for a total cost of $300,110.00. On June 16, 2021, Darrough completed Competitive Quote Summaries (CQS) approving Corrales' proposals despite both being over the small purchase procurement threshold.[4]" SAC ¶¶ 95–96;

- "However, the cost of the two proposals were above the Agency's small purchase threshold and required a full Request for Proposal (RFP). . . . Darrough and Corrales worked together to consolidate the courses into one proposal and contract for a total cost of $149,990. Darrough subsequently submitted a revised proposal and CQS, which covered both the financial literacy and emotional intelligence training for the total cost of $149,990.00, to be split into two payments (and intentionally structured by Darrough)." SAC ¶¶ 98–99;

- "Corrales ultimately submitted false claims for $300,110.00, and Darrough fraudulently ensured Corrales was paid the $300,110.00. While in the midst of a cyber-attack, which Darrough knew incapacitated the Agency's financial tracking systems and controls, Corrales submitted four separate fraudulent claims to Darrough which totaled $300,110.00–the exact amount of the original, but rejected, proposal. During the exigency and knowing the Agency did not have the capacity or controls at the time to verify the claims due to the cyber-attack, Darrough directed the Agency pay the $300,110.00 using government grant funds. . . . Corrales knowingly made false claims to the Agency, and Darrough knowingly approved, authorized, and submitted the false claims to the Agency four times in September and October 2021 for a total cost of $300,110.00." SAC ¶¶ 103, 108;

- "Shortly after Corrales aided Darrough regarding a job opportunity, on October 29, 2021, Darrough approved the two additional payment requests and directed Accounts Payable to make payments of $74,995 and $75,060 to Corrales d/b/a Sterling using federal grant funds. Because Accounts Payable could not check the Purchase Order directly because its program was still down, it relied on Darrough's

---

[3] Email from Darrough (June 20, 2022).
[4] The Agency later discovered that the CQSs submitted by Darrough were not valid.

material representation that the amounts requested were valid. Consequently, the Agency made the payment to Corrales using government funds." SAC ¶ 107;

- "Corrales failed to provide the training as agreed to. Of the 125 financial literacy sessions, 105 sessions had zero attendees. Darrough was aware that participation in these classes was virtually non-existent, but instead of cancelling the contract that included a termination with or without cause clause, as early as December 2021, Darrough inexplicably directed the "classes" continue—even though most had zero participants. Corrales knowingly failed to perform the services for which he received federal monies, and Darrough perpetuated the fraud." SAC ¶ 113;

- "Corrales d/b/a Sterling fraudulently invoiced the Agency $150,055.00 for services neither contracted for nor provided and additionally made claims of another $150,055.00 for services not provided. Darrough knowingly approved of and directed payment for these false claims, which is not coincidentally the same amount Darrough originally approved for payment to Sterling." SAC ¶ 114;

- Paragraphs 117 through 118 detail the fraudulent CQS forms Darrough submitted for the Agency's contracts with Corrales. SAC ¶¶ 117–18. Paragraphs 121 through 123 and 126 through 127 detail the fraudulent CQS forms Darrough submitted for the Agency's contracts with Peters. SAC ¶¶ 121–23, 126–27;

- "The Agency was unaware of Peters' affiliation with Fueling Brains at the time and would not have approved of any contract for Peters to conduct an independent evaluation of one of her employers. Unaware of Peters' conflict of interest, the Agency contracted with Peters to conduct the supposedly "independent evaluation" of the Agency's use of Fueling Brains and progress toward meeting its program goals." SAC ¶ 128; and

- Paragraphs 128 through 131 and 134 describe Peters' material breaches of contract, breaches that Darrough was aware of and avoided. SAC ¶¶ 128–31, 134.

14. Based on the above, the Agency has plead its FCA claims with sufficient particularity. Notably, the Agency has plead the context surrounding the various false claims and statements Darrough herself submitted[5] or caused to be submitted,[6] or the false claims and

[5] *See, e.g.*, SAC ¶¶ 46, 47, 50, 53, 55, 63, 64–66, 69, 85–86, 87, 94, 95–96, 98–99, 103, 108, 107, 117–18, 121–23, 126–27.
[6] *See, e.g.*, SAC ¶¶ 46, 47, 53, 55, 63, 64–66, 67–68, 69, 78, 84–86, 94, 95–96, 98–99, 103, 108, 107, 113, 114, 117–18, 121–23, 126–27, 128–31, 134.

statements she, like the ostrich described in *Corporate Management*, failed to inquire into before authorizing.[7] All subjecting Darrough to liability under the FCA.

15.     Additionally, the Agency sufficiently relayed the materiality of such false claims. *Neder v. United States*, 527 U.S. 1, 16 (1999) ("[A] false statement is material if it has a natural tendency to influence, or is capable of influencing, the decision of the decision making body to which it was addressed."). As the Agency makes clear: "Defendants' actions resulted in significant overcharging and submission of false and fraudulent claims to the Federal Government through the Agency, claims which would not have been submitted or paid had the Agency known of the Defendants' wrongful conduct." SAC ¶ 20. The Agency adequately explains how Darrough, individually or in concert with others, knowingly submitted legally and factually false and fraudulent claims and made false statements or records material to the false or fraudulent claims to the Agency—a Federal Government grantee, and that these false claims and false statements or records were material to the Grantee Agency's payment of the claims and were also material to the Grantee Agency's progress reporting and certification of the claims to the Federal Government. SAC ¶ 54. The Agency further details how, based upon Darrough's material (mis)represenations in the CQSs, agreements, and claims, it provided grant assurances, financial reports, and grant progress reports to trigger payments from the Government, which it would never had done had it been made aware of the truth that Darrough did not disclose. SAC ¶¶ 56, 63, 67, 68, 69, 104, 108, 128.

16.     Accordingly, the Agency has pled its FCA claims with sufficient particularity to satisfy its burden under Rules 9(b) and 8(a) (read with 12(b)(6)) and plead the existence, falsity, and materiality of its FCA claims with sufficient particularity.

---

[7] *See*, *e.g.*, SAC ¶¶ 55, 64–66, 67–68, 84, 85, 87, 94, 103, 108, 107, 113, 114, 128–31, 134.

**B.     DARROUGH'S MOTION TO DISMISS SHOULD BE DENIED BECAUSE THE FCA CONSPIRACY CLAIM AGAINST DARROUGH IS SUFFICIENTLY PLED.**

17.     Darrough further complains that the Agency's "allegations are still insufficient to establish [Darrough's] participation in the conspiracy alleged. Dkt. No. 35, at 12.  Importantly, at this stage, the Agency's burden is not to *establish* Darrough's participation in the conspiracy. Instead, the Agency need only show the *plausibility* of Darrough's participation.

18.     The Conspiracy Provision subjects anyone who conspires to commit a violation of any FCA provision to liability under the False Claims Act. § 3729(a)(1)(C). "[T]o prove a False Claims Act conspiracy, a relator must show '(1) the existence of an unlawful agreement between defendants to get a false or fraudulent claim allowed or paid by [the Government] and (2) at least one act performed in furtherance of that agreement.'" *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 193 (5th Cir. 2009) (quoting *U.S. ex rel. Farmer v. City of Houston*, 523 F.3d 333, 343 (5th Cir. 2008)). An intent to defraud is also an essential element under the Conspiracy Provision. However, at this stage, intent is not required to be plead with particularity. FED. R. CIV. P. 9(b); *U. S. ex rel. Farmer v. City of Houston*, 523 F.3d 333, 343 (5th Cir. 2008).

19.     Here, the Second Amended Complaint specifies, as reprinted above, that Darrough conspired with co-Defendants to submit false claims, statements, and records to the Agency in hopes of procuring contracts for co-Defendants and receiving payment via government funds.  The Second Amended Complaint further states:

- "Darrough and Corrales are also co-directors of Imperial Community Resources, Inc., an educational 501(c)(3) operating in Texas that they organize and control which may have been formed to further Defendants' fraudulent scheme against the Federal Government and the Agency." SAC ¶ 11, *see also* ¶ 93;

- "Darrough acted in concert with Co-Defendants—conspiring to circumvent federal and Agency contract procurement requirements in order to award HHS vendor contracts to the Defendants. Darrough's undisclosed relationships with the Agency vendors named as Defendants, both financial, professional, and personal

constituted impermissible conflicts of interest. The Defendant vendors failed to perform under the contracts with the Agency, which failures Darrough helped obfuscate while she facilitated their false and fraudulent claims pushing payments through the Agency's system." SAC ¶ 16;

- "On information and belief, the Defendants further benefitted from the conspiracy by paying each other commissions or "kickbacks" on the contracts fraudulently obtained with other school systems and federal grantees, and Defendants knowingly structured payments in such a way as to avoid contractual, state, and federal conflicts of interest disclosures and detection." SAC ¶ 17;

- "Defendants, among other fraudulent activities, knowingly and recklessly conspired to submit, caused to be submitted, or facilitated the submission of false and fraudulent documents and claims and made false and fraudulent representations to the Agency, a Federal Government grantee, over a period of several years, thereby plundering the Agency's federal funds and resources for the Defendants' illegitimate and unlawful purposes." SAC ¶ 21;

- "As described below with respect to each vendor contract, from 2020 through 2021 Darrough, among other things, authorized fraudulent contracts with, and made and authorized federal fund payments to, among others: . . .(3) Michelle Peters, individually and/or Peters d/b/a MNA Evaluation & Assessment LLC. Despite knowing these vendors materially failed to perform under the contracts, Darrough authorized payments to them using HHS funds. In some instances, Darrough colluded with the vendors and authorized fraudulent contract payments (and double payments) for services that were not contracted for and not provided to the Agency. Had BakerRipley known of this wrongful conduct, it would not have paid the invoices presented by these vendors." SAC ¶ 46;

- "Once Darrough negotiated services or executed a contract with a vendor to provide services under the HHS/ACF/OHS program, in compliance with the terms of the agreement or contract, Darrough was to submit a purchase order request for payment. Darrough knew that the invoiced services were not contracted for, not provided, and/or double billed, and deliberately and recklessly withheld this information from BakerRipley. Based upon Darrough's material representations regarding vendor payment requests, and her failure to disclose critical information about the legitimacy of the invoiced services, Agency employees would "draw down" the HHS/ACF/OHS grant funds and pay the vendors." SAC ¶ 47;

- "The arrangement included: a) Darrough procuring and approving contracts with Defendants outside of the proscribed contract procurement requirements of both the Federal Government and the Agency; b) Darrough directing Defendants to "re-structure" submittals, quotes, contracts, and invoices to circumvent Federal Government and Agency policies and controls; c) Darrough authorizing, approving, and directing payments to the other Defendants for services that she knew were not rendered or knew were of no value and did not meet the needs of

the Agency or the Head Start Program; d) Darrough authorizing fraudulent and/or duplicative payments to the Defendants in order to meet the financial terms and objectives of the Defendants and likely "off the books" arrangements between Defendants; and e) doing all of the above and other wrongful acts knowing of prohibited conflicts of interest amongst the Defendants and in conspiracy with same." SAC ¶ 53; and

- "The Defendants share joint financial and career arrangements which are clear conflicts of interest. Not only did Darrough benefit with respect to her career goals and doctoral candidacy by assisting Corrales d/b/a Sterling and Peters d/b/a MNA to submit false claims to the Agency, but on information and belief Darrough, along with Corrales and Peters, received financial and career benefit from Fueling Brains for the leads and referrals she directed to Fueling Brains, including contracts obtained through the Agency." SAC ¶ 142.

20. The Agency's Second Amended Complaint clearly pleads a claim for conspiracy by specifically referencing the Defendants' agreement—working in concert to submit, conceal, push through, and approve false and fraudulent claims to the Agency to procure contracts and government funds[8]—and the actions taken by Darrough in furtherance of that agreement—submitting, or deliberately ignoring, false and fraudulent claims within proposals, bids, CQS forms, and invoices to receive government funds. SAC ¶¶ 28–29, 34; *see also* SAC ¶¶ 46–47, 50, 53, 55, 63–69, 78, 84–87, 94–96, 98–99, 103, 107–08, 113–14, 117–18, 121–23, 126–31, 134. As the Exhibits submitted along with the Agency's Compliant demonstrate, Darrough was in an agreement with Co-Defendants to defraud BakerRipley and the Federal Government. Dkt. No. 1-1, Dkt. No. 1-2.

**C.    DARROUGH IS LIABLE FOR THE FALSE CLAIMS AND RECORDS SHE SUBMITTED OR CAUSED TO BE SUBMITTED, EVEN IF SHE WAS NOT THE "CLAIMANT."**

21. Next, Darrough posits that a defendant is not liable under the FCA for a materially false claim if "the payment sought through the claim" is not to the claimant. Dkt. No. 35, at 13.

---

[8] In part found at SAC ¶¶ 16–17, 21, 46–47, 53, 93, 142.

Essentially, Darrough argues because she was not paid as a result of the false claim, she is not liable under the FCA for her submission of that claim. Dkt. No. 35, at 12–13.

22.     First, liability under the False Claims Act is not "contingent upon the defendant's status as a recipient and beneficiary of the contract. . . . All that is required is the submission of a false claim." *Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 792 (4th Cir. 1999).

23.     Second, the non-binding authority Darrough cites for this proposition does not require the defendant to have received the payment, it just requires the defendant's false claim be material to the government's decision to pay the person seeking payment. *U.S. ex rel. Thomas v. Black & Veatch Special Projects Corp.*, 820 F.3d 1162, 1169 (10th Cir. 2016) ("[T]he false statement must be material to the government's decision to pay out moneys to the claimant." (quoting *U.S. ex rel. Conner v. Salina Reg'l Health Ctr, Inc.*, 543 F.3d 1211, 1219 (10th Cir. 2008))); *U.S. ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1172 (9th Cir. 2006) (same); *U.S. ex rel. Lorona v. Infilaw Corp.*, No. 3:15-cv-959-J-34PDB, 2019 WL 3778389, at 17 (M.D. Fla. Aug. 12, 2019) (same (quoting *Hendow*, 461 F.3d at 1172)).

24.     The materiality of Darrough's submission was properly plead, as discussed above. To restate, the Agency relied on Darrough, because of her role, to facilitate the Head Start program, which included complying with Government and agency procurement procedures, soliciting bids, checking for conflicts of interest, submitting valid CQS forms, performing comparative price quotes, reviewing programs, verifying the quality of work being performed, ensuring the Agency's vendors—like the Defendants—were meeting their obligations, and checking invoices and payment requests. Had Darrough not submitted the false claims, worked with the Defendants to submit false claims, authorized such false claims, or inquired into the validity of such false claims, the Agency would not have paid the claims, and certainly would not have paid them using

Governmental funds. *See, e.g.*, SAC ¶¶ 9, 20, 37, 46–47, 50, 54, 56, 63–66, 69, 85–87, 103, 107–08, 128.

25.     Moreover, assuming "Darrough is responsible for making a false 'claim,'" Dkt. No. 35, at 13, such claim was submitted so the claimant and her co-conspirators would be paid. The Agency alleged Darrough made these false claims to advance her financial and professional goals while knowing she would get a cut of the funds disbursed via the kickback scheme the Defendants were involved in. SAC ¶¶ 17, 53, 142, 154, 165–66; *see also* SAC-1, SAC-2 (affidavits evidencing the kickback scheme). Accordingly, Darrough's submissions were material, and she is liable for false claims and statements she made, whether she was the claimant or not.

**D.     DARROUGH'S REQUEST TO JOIN IN THE OTHER OTHERS SHOULD BE DENIED; ALTERNATIVELY, THE AGENCY INCORPORATES ITS RESPONSES AS THOUGH FULLY SET FORTH HEREIN.**

26.     Finally, Darrough requests to join Fueling Brains' and Corrales' motions to dismiss in certain provisions.  Dkt. No. 35, at 14.

27.     Generally, when a party raises a defense, such as those relevant to a Rule 12(b) motion, it must "state in short and plain terms its defenses to each claim asserted against it." FED. R. CIV. P. 8(b), 12(b). "The language of Rule 12(g) inhibits the joinder of motions with a Rule 12 motion." *Visintine v. Zickefoose*, 2012 WL 6691783, at 2 (D. NJ Dec. 21, 2012).

28.     Notwithstanding a "joinder of other motions" motion has no basis in the Federal Rules of Civil Procedure,[9] or in the Southern District of Texas's Local Rules, the reasoning behind the non-binding authorities Darrough cites are inapplicable to this case.

---

[9] A defendant tried and failed on the same motion in *Gulf Coast Beach Blvd., L.L.C. v. Fidelity National Title Insurance Co.*, No. 1:09-cv-681-LG-RHW, 2014 WL 11444114, at 1 (S.D. Miss. Oct. 10, 2014).

29.     First, Darrough relies upon *Tatung Co., Ltd. v. Shu Tze Hsu*, 217 F.Supp.3d 1138, 1151 (C.D. Cal. 2014) in an attempt to justify her joining the other defendants' Motions. The Central District of California allows the joinder of motions when either:

> (1) the parties are so similarly situated that filing an independent motion would be redundant, or
>
> (2) the party seeking joinder specifically points out: [i] which parts of the motion apply to the joining party, [ii] the joining party's basis for standing, and [iii] the factual similarities between the joining party and moving party that give rise to a similar claim or defense."

*Tatung Co., Ltd. v. Shu Tze Hsu*, 217 F.Supp.3d 1138, 1151 (C.D. Cal. 2014); *see also U.S. v. Sneed*, No. 3:19-CR-0580-B, 2022 WL 35801, at *3 (N.D. Tex. Jan. 4, 2022) (applying the same standard). In *Tatung Co.*, that court found the defendants were not similarly situated because the defendants were subject to different claims and held different roles in the alleged scheme. *Tatung Co., Ltd. v. Shu Tze Hsu*, 217 F.Supp.3d at 1152. Therefore, it denied the defendant's motions to join co-defendant's motions. *Id.*

30.     Second, Darrough relies upon *U.S. v. Sneed*, NO. 3:19-CR-0580-B, 2022 WL 35801, at *1–2 (N.D. Tex. Jan. 4, 2022). In *Sneed*, Clifton and Marva Sneed were facing numerous criminal charges for a fraudulent investment scheme. *U.S. v. Sneed*, 2022 WL 35801, at *1. The indictment repeatedly cited to "the Sneeds," indicating the couple faced these charges as a unit, without differentiating the conduct or allegations between the two. *U.S. v. Sneed*, 2022 WL 35801, at 1–2. Thus, that court found Clifton and Marva were similarly situated, and allowed Marva to join in Clifton's motion to dismiss.  *U.S. v. Sneed*, 2022 WL 35801, at *3.

31.     Finally, Darrough relies upon *Vazquez v. Cent. States Joint Bd.*, 547 F.Supp.2d 833, 867 (N.D. Ill. 2008) to support joinder. The Northern District of Illinois allows parties to adopt motions of other parties "when the facts between the parties are essentially the same and the adoption would promote judicial efficiency." *Vazquez v. Cent. States Joint Bd.*, 547 F.Supp.2d at

867. If an adopting co-defendant fails to submit "a statement detailing the factual differences" between the parties, the motion may be stricken. *U.S. v. Colon*, No. 97 CR 659, 1998 WL 214714, at 2 (N.D. Ill. 1998). In *Vazquez*, the defendants held the same positions on the same boards and "[t]he [c]omplaint [did] not make any differentiating allegations concerning" those defendants. *Vazquez v. Cent. States Joint Bd.*, 547 F.Supp.2d at 867.

32.     Here, Darrough seeks to join Defendants' motions who face different factual allegations than Darrough does and served different roles in the scheme to defraud the Agency and the Government. The parties Darrough wants to join hold completely different positions from her. Darrough was the Agency's employee, entrusted with managing the Head Start program, while the other Defendants were vendors for the program. Moreover, the nature of the false claims and statements Darrough is accused of submitting differ from those of the Defendant vendors. While the claims are related and there is overlap in some of the false claims and statements, this relation does not rise to the level required by these cases. The Second Amended Complaint clearly and explicitly calls out Darrough's conduct and differentiates it from the conduct of the other Defendants, where applicable.

33.     Moreover, Darrough fails to point out its basis for standing and the factual similarities "that give rise to a similar claim or defense." *Tatung Co., Ltd. v. Shu Tze Hsu*, 217 F.Supp.3d at 1151. The Agency's Second Amended Complaint is detailed in regard to its allegations against the Defendants, explicitly identifying single Defendants as required. Darrough's Motion to Dismiss, however, is overbroad and only says "the Plaintiff's claims against all the defendants are based on the assertion there was some grand conspiracy, involving them, to enrichment [*sic*] themselves by making false claims." Dkt. No. 35, at 15. The Defendants' conspiracy is just one of the claims Darrough and her co-Defendants face. Darrough fails to

articulate any factual similarities regarding the other claims and allegations sufficient to satisfy the standard articulated in the cases she cites for support.

34.     Succinctly put, as evidenced above, the facts underlying the allegations are not essentially the same and Darrough and the Defendants whose motions she wishes to join are not similarly situated. As such, Darrough's Motion to Dismiss on this point should be denied and the Motion stricken on this ground.  *See Colon*, 1998 WL 214714, at 2.

35.     Nevertheless, if the Court allows Darrough to join Defendants Fueling Brains' and Corrales' motions to dismiss, the Agency respectfully requests that the Court adopt the Agency's substantive responses to those Motions.

### III.     ALTERNATIVE MOTION FOR LEAVE TO AMEND

36.     When a plaintiff's complaint fails to state a claim, a court should generally give the plaintiff a chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice, unless it is clear that to do so would be futile. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 309 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."). In the unlikely event the Court determines the Complaint's allegations are insufficient to survive dismissal, the Agency respectfully requests leave to amend the complaint to plead with more particularity.

### IV.     CONCLUSION

37.     For these reasons, the Agency respectfully prays that this Court DENY Defendants' Motion to Dismiss in its entirety and for all other relief to which it is justly entitled.

Dated: June 10, 2024.

Respectfully submitted,

**MARTINEZ REILLY, LLP**

<u>/s/ Marion M. Reilly</u>
**Marion M. Reilly**
State Bar No. 24079195
Federal ID. 1357491
Email: Marion@mrtrial.com
**John B. Martinez**
State Bar No. 24010212
Federal ID. No. 23612
Email: John@mrtrial.com
3636 S. Alameda, Ste. B119
Corpus Christi, Texas 78412
Dir: (361) 273-6771
Fax: (361) 704-8355
**Service Email address
Service@mrtrial.com

**SCHULMAN, LOPEZ, HOFFER &
ADELSTEIN, LLP**
845 Proton Road
San Antonio, Texas 78258
Telephone:      210-538-5385
Facsimile:      210-538-5384
**Joseph E. Hoffer**
**Attorney-in-Charge**
State Bar No. 24049462
Federal ID No. 2006011
Email: jhoffer@slh-law.com
**Elizabeth Angelone**
State Bar No. 24077349
Federal ID No. 3042089
Email: eangelone@slh-law.com

**ATTORNEYS FOR THE AGENCY**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been sent to all known counsel pursuant to the Federal Rules of Civil Procedure on this 10th day of June 2024 via the CM/ECF system or via email.

Dinesh H. Singhal
**The Singhal Law Firm**
2700 Post Oak Blvd., Suite 1750
Houston, Texas 77056
Tel: 713.222.8500
dinesh@singhallaw.com
**ATTORNEY FOR CIMBERLI DARROUGH**

Jordan Raschke Elton
Andrew Mytelka
**Greer, Herz & Adams, L.L.P.**
One Moody Plaza, 18th Floor
Galveston, Texas 77550
P: (409) 797-3239
jraschkeelton@greerherz.com
**ATTORNEYS FOR MICHELLE PETERS AND MNA EVALUATIONS AND ASSESSMENTS, LLC**

Amanda Gadison
Randal H. Miller
**Bryan Cave Leighton Paisner**
2200 Ross Ave., Suite 4200 W
Dallas, Texas 75201
P: 214-721-8117
Amanda.gadison@bclplaw.com
**ATTORNEYS FOR KIDS U US, INC. D/B/A FUELING BRAINS**

Fred D. Raschke
**Mills Shirley L.L.P.**
2200 Market Street Ste 300
Galveston, TX. 77550
P: 409-761-4028 (direct line)
fraschke@millsshirley.com
**ATTORNEY FOR ANTONIO CORRALES AND STERLING EVALUATIONS AND ASSESSMENT, LLC**