**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel*. | § | |
| BakerRipley | § | |
| 4450 Harrisburg, Suite 200 | § | |
| Houston, TX 77011 | § | |
| | § | |
| & BakerRipley | § | |
| *Plaintiffs* | § | **Case No. 23-cv-1124** |
| | § | |
| | § | |
| | § | |
| **v.** | § | |
| | § | |
| | § | |
| Kids U US, Inc. d/b/a Fueling Brains, | § | |
| Cimberli Johnson Darrough, an individual, | § | |
| Antonio Corrales, an individual, | § | |
| Sterling Evaluation and Assessment, LLC, | § | **JURY DEMANDED** |
| Michele Peters, an individual, and | § | |
| MNA Evaluation and Assessment, LLC | § | |
| | § | |
| | § | |
| *Defendants* | § | |

**RESPONSE TO DEFENDANTS', MICHELLE PETERS AND
MNA EVALUATION AND ASSESSMENT, LLC, MOTION TO DISMISS**

To the Honorable Judge of Said Court:

BakerRipley, Plaintiff and Relator on behalf of the United States of America ("Agency," or "Relator"), asks the Court to deny Defendants' Michelle Peters ("Peters") and MNA Evaluation and Assessment, LLC ("MNA") (collectively, "Peters/MNA") Motion to Dismiss the Second Amended Complaint.

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................... ii

TABLE OF AUTHORITIES ......................................................................................... iv

I. INTRODUCTION ...................................................................................................1

II. STANDARD OF REVIEW ....................................................................................3

    A.      Federal Rule of Civil Procedure 9(b) .................................................3

    B.      Federal Rule of Civil Procedure 12(b)(6) ..........................................4

III. ARGUMENT ........................................................................................................5

    A.      Defendants' Motion to Dismiss Should be Denied as to the Agency's FCA Claims ...............................................................................5

          1.      The Causes of Action Premised on the Submission of False Claims and Use of False Statements are Sufficiently Pled under Rule 9(b) ........... 6

          2.      The Causes of Action Premised on the Submission of False Claims and False Statements are Sufficiently Pled under Rule 12(b)(6) .............11

          3.      Defendants' Motion to Dismiss Should be Denied as to Defendants' Implied False Certifications ...................................................15

    B.      Defendants Violated the Reverse False Claims Provision by Submitting, or Causing to be Submitted, Claims for HHS Funds Administered by the Agency for Work Not Performed ....................................................... 16

    C.      Defendants' Motion to Dismiss Should be Denied Because the FCA Claims for Conspiracy are Sufficiently Pled ........................................17

    D.      The Agency's Claims are Not Barred by the Public Disclosure Bar .................20

    E.      Peters/MNA's Motion to Dismiss Should be Denied Because the Claims for Unjust Enrichment, Payment by Mistake, and Money Had and Received are Sufficiently Pled ........................................................ 12

    F.      The Breach of Contract and Breach of Good Faith and Fair Dealing Claims Survive Dismissal ............................................................... 23

          1.      Peters/MNA's Motion to Dismiss Should be Denied Because the Breach of Contract Claims are Sufficiently Pled ...................................... 24

2.    Peters/MNA's Motion to Dismiss Should be Denied Because the Good Faith and Fair Dealing Claims are Sufficiently Pled ......................24

G.    The Fraud and Fraud by Nondisclosure Claims Survive Dismissal ...................26

H.    The Texas Theft Liability Act ("TTLA") Claim Survives Dismissal ................28

I.    The Civil Conspiracy Claim Survives Dismissal .................................................31

IV. ALTERNATIVE MOTION FOR LEAVE TO AMEND ........................................................ 31

V. CONCLUSION ................................................................................................................31

CERTIFICATE OF SERVICE ................................................................................................... 34

## INDEX OF AUTHORITIES

UNITED STATES SUPREME COURT CASES:

*Ashcroft v. Iqbal*,
　　556 U.S. 662 (2009) ........................................................... 4

*Bell Atl. v. Twombly*,
　　550 U.S. 544 (2007) ........................................................... 4

*Neder v. United States*,
　　527 U.S. 1 (1999) .............................................................14

*United States v. Neifert–White Co.*,
　　390 U.S. 228, 233 (1968) ....................................................13

*Universal Health Servs. v. U.S. ex rel. Escobar*,
　　579 U.S. 176 (2016) ................................................ 8, 15, 16


CASES FROM THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT:

*Baker v. Putnal*,
　　75 F.3d 190, 196 (5th Cir. 1996) .............................................5

*Benchmark Elec., Inc. v. J.M. Huber Corp.*,
　　343 F.3d 719 (5th Cir. 2003), *modified on other grounds*, 355 F.3d 356 (5th Cir. 2003) ............................................................... 3

*Chavez v. De La Paz*,
　　156 Fed. App'x 694 (5th Cir. 2005) ........................................ 4

*Gonzalez v. Fresenius Med. Care N. Am.*,
　　689 F.3d 470 (5th Cir. 2012) ............................................. 5-6

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*,
　　313 F.3d 305 (5th Cir. 2002) .............................................. 31

*Homoki v. Conversion Services, Inc.*,
　　717 F.3d 388 (5th Cir. 2013) ............................................. 30

*Morin v. Caire*,
　　77 F.3d 116 (5th Cir. 1996) .................................................4

*Pace v. Cirrus Design Corp.*,
　　93 F.4th 879 (5th Cir. 2024) ................................................3

*Riley v. St. Luke's Episcopal Hospital*,
    355 F.3d 370 (5th Cir. 2004) ...........................................................7

*Stennett v. Premier Rehabilitation, LLC*,
    479 Fed. App'x 631 (5th Cir. 2012) .......................................20, 21

*U.S. ex rel. Bain v. Georgia Gulf Corp.*,
    386 F.3d 648 (5th Cir. 2004) .........................................................16

*U.S. ex re. Colquitt v. Abbott Laboratories*,
    858 F.3d 365 (5th Cir. 2017) .......................................................3, 5

*U. S. ex rel. Farmer v. City of Houston*,
    523 F.3d 333 (5th Cir. 2008) .........................................................17

*U.S. ex rel. Grubbs v. Kanneganti*,
    565 F.3d 180 (5th Cir. 2009) ......................................... 5, 7, 10, 17

*U.S. ex rel. Harman v. Trinity Industries, Inc.*,
    872 F.3d 645 (5th Cir. 2017) ...........................................................5

*U.S. ex rel. Jamison v. McKesson Corp.*,
    649 F.3d 322 (5th Cir. 2011) ......................................................... 22

*U.S. ex rel. Longhi v. U.S.*,
    575 F.3d 458 (5th Cir. 2009) .......................................................8, 14

*U.S. ex rel. Miniex v. Houston Housing Authority*,
    No. 21-20435, 2023 WL 6174416 (5th Cir. Sept. 22, 2023) ........... 4

*U.S. ex rel. Sonnier v. Standard Fire Ins. Co.*,
    84 F. Supp. 3d 575 (5th Cir. 2015) .............................................. 21

*U.S. ex rel. Steury v. Cardinal Health, Inc.*,
    625 F.3d 262 (5th Cir. 2010) ................................................... 24-25

*U.S. v. Corporate Mgmt., Inc.*,
    78 F.4th 727 (5th Cir. 2023) ...............................................7, 8, 11

*White v. U.S. Corr., L.L.C.*,
    996 F.3d 302 (5th Cir. 2021) .......................................................4-5

**CASES FROM OUR SISTER CIRCUITS:**

*U.S. ex rel. Harrison v. Westinghouse Savannah River Co.*,
    352 F.3d 908 (4th Cir. 2003) ........................................................11

*U.S. ex rel. Matheny v. Medco Health Solutions, Inc.*,
    671 F.3d 1217 (11th Cir. 2012) .................................................. 17

**DISTRICT COURT CASES:**

*Abbott v. BP Exploration and Production, Inc.*,
    781 F. Supp. 2d 453 (S.D. Tex. 2011) ................................... 13-14

*Amazon Tours, Inc. v. Quest Global Angling Adventures, L.L.C.*,
    No. CIV.A 303CV2551M, 2004 WL 1788078 (N.D. Tex. June 30, 2004) .....................31

*Askanase v. Fatjo*,
    148 F.R.D. 570 (S.D. Tex. 1993)........................................24

*Coleman v. Standard Life Ins. Co.*,
    288 F. Supp. 2d 1116 (E.D. Cal. 2003) ........................... 23

*Eachus v. Steelman*,
    No. 4:20-CV-324, 2021 WL 857988 (E.D. Tex. Mar. 8, 2021) ........................5

*Floey Inst. of Neuroscience  & Mental Health v. Kleiner Perkins Caufield & Byers*,
    2013 WL 5402093 (N.D. Cal. Sept. 26, 2013) ...........................23, 24

*Green v. AmerisourceBergen Corp.*,
    No. 4:15-CV-379, 2017 WL 1209909 (S.D. Tex. Mar. 31, 2017) ........................... 20, 21

*Khan v. Khaishgi*,
    No. 4:21-CV-02602, 2023 WL 5807841 (S.D. Tex. Sep. 6, 2023) .................................28

*Nuncio v. Webb County*,
    No. 5:20-CV-92, 2021 WL 4442518, (S.D. Tex. Sep. 28, 2021) .................................5, 29

*Peters v. Norwegian Cruise Line Ltd.*,
    No. 01-05-00906, 2007 WL 1633555 (Tex. App.—Houston [1st Dist.]
    June 7, 2007) ........................................................ 23-24

*Proske v. Barrett Daffin Frapier Truner &, Engel, LLP*,
    No. H-190831, 2019 WL 5787739 (S.D. Tex. Nov. 6, 2019) ...........................27

*United States v. Americus Mortgage Corp.*,
    No. 4:12–cv–02676, 2014 WL 4274279 (S.D. Tex. Aug. 29, 2014) ...............................13

*U.S. ex rel. Branch Consultants, LLC v. Allstate Ins. Co.*,
    668 F. Supp. 2d 780 (E.D. La. 2009) ............................................................. 23

*U.S. ex rel. Ervin & Assocs. V. Hamilton Secs. Group*,
    370 F. Supp. 2d 18 (D.D.C. 2005) ................................................................. 14

*U.S. ex rel. Hueseman v. Professional Compounding Centers of America, Inc.*,
    664 F. Supp. 3d 722 (W.D. Tex. 2023) .......................................................... 23

*U.S. ex rel. Integra Med Analytics, LLC v. Creative Solutions in Healthcare, Inc.*,
    No. SA-17-CV-1249-XR, 2019 WL 5970283 (W.D. Tex. Nov. 13, 2019) ...................22

*U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*,
    200 F. Supp. 2d 673 (S.D. Tex. 2002) .............................................................7

*U.S. ex rel. Wuestenhoefer v. Jefferson*,
    105 F. Supp. 3d 641 (N.D. Miss. 2015) ........................................................... 8

*U.S. Silica Co. v. Amberger Kaolinwerke Eduard Kick GmbH*,
    No. 2:20-CV-00298-JRG, 2021 WL 5415294 (E.D. Tex. Nov. 19, 2021) ........................7

*U.S. v. Science Applications Intern. Corp.*,
    555 F. Supp. 2d 40 (D.D.C. 2008) ................................................................14

*U.S. v. United Techs. Corp.*,
    No. C-3-99-093, 2000 WL 988238 (S.D. Ohio Mar. 20, 2000) ........................................17

*Waldmann v. Fulp*,
    259 F. Supp. 3d 579 (S.D. Tex. 2016) ............................................................15

*Wellogix, Inc. v. Accenture, LLP*,
    788 F. Supp. 2d 253, 542–43 (S.D. Tex. 2011) .............................................. 29

**STATE LAW CASES:**

*Aquaplex, Inc. v. Rancho La Valencia, Inc.*,
    297 S.W.3d 768, 774 (Tex. 2009) ................................................................. 27

*In re FirstMerit Bank, N.A.*,
    52 S.W.3d 749, 758 (Tex. 2001) ................................................................... 27

*Horizon Shipbuilding, Inc. v. Blyn II Holding, LLC,*
    324 S.W.3d 840, 849–50 (Tex. App.—Houston [14th Dist.] 2010) ...............................27

*Natividad v. Alexsis, Inc.*,
    875 S.W.2d 695 (Tex. 1994) ....................................................... 26

*Southwestern Elec. Power Co. v. Burlington Northern Railroad Co.,*
    966 S.W.2d 467 (1998) ...............................................................23

*Staats v. Miller,*
    243 S.W.2d 686 (1951) ...............................................................23

*Taylor v. State*,
    450 S.W.3d 528 (Tex. Crim. App. 2014).......................................29

## RULES & STATUTES:

31 U.S.C. §§ 3729 et seq. ................................................................3

31 U.S.C. § 3729(a)(1)(A) ........................................................ 5, 6, 7

31 U.S.C. § 3729(a)(1)(B) .......................................................... 5, 7

31 U.S.C. § 3729(a)(1)(C) ......................................................... 5, 17

31 U.S.C. § 3729(a)(1)(G) ...................................................5, 16, 17

31 U.S.C. § 3729(b)(1) .................................................................6

31 U.S.C. § 3729(b)(2) ................................................................ 6

42 U.S.C. § 9837(c)(1)(E)(iv)(X) ..............................................14

FED. R. CIV. P. 9(b)...............................................................*passim*

FED. R. CIV. P. 12(b)(6) .......................................................*passim*

TEX. CIV. PRAC. & REM. CODE § 134.002(2) ...............................28

TEX. CIV. PRAC. & REM. CODE § 134.003(a) ..............................28

TEX. PENAL CODE § 31.01 ..........................................................29

TEX. PENAL CODE § 31.03 ..........................................................28

# I. INTRODUCTION

1. BakerRipley is a Texas nonprofit corporation and public charity designated by the Federal Government to operate Head Start and Early Head Start Federal programs throughout the Houston, Texas region. As an official Grantee, BakerRipley receives funding directly from the Federal Government. To overcome the disadvantages COVID-19 posed to low-income children and their families, BakerRipley contracted with entities, including Defendants, to launch a virtual learning platform through Fueling Brains, which purportedly offered a curriculum and materials uniquely tailored to assess and promote the needs of a classically underserved population of children.

2. Although Defendants made grand promises of providing "individualized curriculum," "independent evaluations," "professional development," and "material kits," none of it materialized as promised. Instead, Defendants' programs resulted in over $800,000.00 in false claims being submitted to the Government for payment for goods and services that were either never provided or were not provided as promised.

3. Defendant Michelle Peters ("Peters") is University of Houston-Clear Lake's Department Chair of Educational Leadership and Policy Analysis and Professor of Research and Statistics. During the relevant time period, Peters was Defendant Cimberli Johnson Darrough's ("Darrough") doctoral methodology advisor—a personal connection unknown and undisclosed to the Agency. Peters also served as the Executive Director of Research and Evaluation for Fueling Brains during the relevant time period—another connection unknown and undisclosed to the Agency.

4.     Defendant MNA Evaluation & Assessment, LLC ("MNA")[1]was created by, and provided financial benefit to, Peters.  Dkt. No. 36, ¶ 2.  MNA may not have contracted directly with the Agency; but MNA was established and utilized to further the false claims, fraud, and movement of monies amongst Peters, Defendants, and other persons involved or for other unlawful purposes, including, but not limited to, concealing such wrongful activity.

5.     Peters contracted with the Agency to provide what was represented to be an "independent evaluation" of the efficacy of Defendant Kids U US, Inc. d/b/a Fueling Brains' ("Fueling Brains") program for the Agency's Head Start students.  Thus, Peters labored under an undisclosed and unresolvable conflict of interest in the procurement and performance of the contract, as she could not possibly be independent when she was simultaneously an undisclosed Officer of Fueling Brains.

6.     Darrough was employed by the Agency as the Senior Director of Early Head Start and Head Start.  In this role, Darrough oversaw the Agency's Head Start program as its principal officer.  Darrough was also the Principal Investigator for the Head Start grant administration.  As such, Darrough knew or should have known of both the Agency's internal policies and procedures for granting contracts under the comparative quote threshold as well as the Federal Government's procurement regulations, requirements and guidelines.

7.     Darrough was also a doctoral student who was directly supervised by Peters and Defendant Antonio Corrales ("Corrales").  Additionally, all three individual defendants, Peters, Darrough, and Corrales, worked for Fueling Brains, which was also unknown and undisclosed.

8.     BakerRipley filed this *qui tam* action alleging violations of the False Claims Act

---

[1] According to Peters/MNA's Request for Judicial Notice, MNA is currently forfeited by the State. The Agency respectfully refers the Court to its Response to the Motion for Judicial Notice as Peters/MNA makes improper assumptions about the import of that forfeiture.

("FCA"), 31 U.S.C. §§ 3729 et seq. BakerRipley also brought common law claims for fraud, fraud by nondisclosure, civil conspiracy, breach of contract and covenant of good faith and fair dealing, unjust enrichment, payment by mistake, and money had and received. Additionally, BakerRipley brought violations of the Texas Theft Liability Act ("TTLA"). This *qui tam* action seeks to rectify the Defendants taking advantage of vulnerable public school systems, head start agencies and other federally funded entities during the COVID-19 pandemic through their scheme of providing sham "learning kits," "independent evaluations," and fraudulent competitive price quotes (through CQS forms), and involving improper payments and kickbacks targeting the Head Start program and other federally funded programs. Dkt. Nos. 1, 8, 22.

9.      Peters/MNA (collectively "Defendants" for purposes of this response) submitted a Motion to Dismiss grounded in Federal Rules of Civil Procedure 9(b) and 12(b)(6). Dkt. No. 36.

## I.      STANDARD OF REVIEW

### A.      FEDERAL RULE OF CIVIL PROCEDURE 9(b)

10.      "As the False Claims Act is about fraud, claims asserted under it must comply with Rule 9(b)'s heightened pleading standard." *U.S. ex rel. Colquitt v. Abbott Laboratories*, 858 F.3d 365, 371 (5th Cir. 2017). Rule 9(b) states: "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b). Rule 9(b) thus requires the "who, what, when, where, and how of the fraud or misrepresentation" be plead with particularity. *Pace v. Cirrus Design Corp.,* 93 F.4th 879, 889–90 (5th Cir. 2024). But the amount of particularity required differs from case to case. *See Benchmark Elec., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003), *modified on other grounds*, 355 F.3d 356 (5th Cir. 2003).

11.     The Fifth Circuit recently found Rule 9(b)'s standard was met where the relator "outline[d] HHA's repeated requests for federal funding and . . . specific details regarding HHA's fraud via their alleged failure to conduct cost-estimates. *U.S. ex rel. Miniex v. Houston Housing Authority*, No. 21-20435, 2023 WL 6174416, at *3 (5th Cir. Sept. 22, 2023) ("Miniex alleged over twenty-five specific transactions that rendered HHA's certification of compliance false. Because she outlined the 'time, place, and contents' of those transactions, who was responsible for them, and what was gained out of it, Miniex has satisfied Rule 9(b).").

## B.     FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

12.     A Rule 12(b)(6) motion seeks to dismiss an action for failure to state a claim for which relief can be granted. FED. R. CIV. P. 12(b)(6). "A Rule 12(b)(6) motion to dismiss fails unless 'it appears . . . no relief could be granted under any set of facts that could be proved consistent with the allegations' in the complaint.'" *Chavez v. De La Paz*, 156 Fed. App'x 694, 696 (5th Cir. 2005) (quoting *Morin v. Caire*, 77 F.3d 116 (5th Cir. 1996)).

13.     Rule 12(b)(6) must be read with Rule 8(a)'s pleading standard, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A plaintiff survives a Rule 12(b)(6) motion by pleading "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

14.     To do so, the plaintiff must plead sufficient facts to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Labels and conclusions, "a formulaic recitation of the elements of a cause of action," and bare assertions are insufficient. *Twombly*, 550 U.S. at 555. But the complaint must be liberally construed, all well-pleaded facts must be taken as true, and the Court "constru[es] all reasonable inferences in the light most favorable to the plaintiff." *White v. U.S. Corr., L.L.C.*,

996 F.3d 302, 306–07 (5th Cir. 2021); *Iqbal*, 556 U.S. at 679; *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

15.     Notably, for the Rule 9(b) and 12(b)(6) standards, a plaintiff "is not required to plead facts 'peculiarly within the knowledge of defendants,' as she has not had the benefit of discovery." *Nuncio v. Webb County*, No. 5:20-CV-92, 2021 WL 4442518, at *5, (S.D. Tex. Sept. 28, 2021) (quoting *Eachus v. Steelman*, No. 4:20-CV-324, 2021 WL 857988, at *18 (E.D. Tex. Mar. 8, 2021). Thus, a plaintiff/relator can survive a motion to dismiss FCA claims even without details of a false claim, so long as they allege "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *U.S. ex rel. Colquitt v. Abbott Laboratories*, 858 F.3d at 372 (quoting *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 191 (5th Cir. 2009)).

## II.     ARGUMENT

### A.     DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED AS TO THE AGENCY'S FCA CLAIMS.

16.     The Agency brings FCA claims on behalf of the Government under the False Claims Provision (§ 3729(a)(1)(A)), False Statement Provision (§ 3729(a)(1)(B)), the Reverse False Claims Provision (§ 3729(a)(1)(G)), and Conspiracy Provision (§ 3729(a)(1)(C)). SAC ¶¶ 170–180.

17.     Four elements are required for a court to find an FCA violation: (1) "a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money or to forfeit moneys due (i.e., that involved a claim)." *U.S. ex rel. Harman v. Trinity Industries, Inc.*, 872 F.3d 645, 654 (5th Cir. 2017) (quoting *Gonzalez v. Fresenius Med. Care N. Am.*, 689 F.3d 470, 475 (5th Cir.

2012)).  "[A] claim may be false or fraudulent under the FCA because it includes a certification of compliance with a federal statute, regulation, or contract that is a prerequisite to obtaining the government benefit."  *U.S. ex rel Bennett v. Medtronic, Inc.*, 747 F.Supp.2d 745, 765 (S.D. Tex. 2010).

18.     Liability under the FCA attaches when the person makes a false claim for money provided by the Government, regardless of whether the person "deals directly with the Federal Government."  S. Rep. 111–10, 10, 10, 2009 U.S.C.C.A.N. 430, 438, 2009 WL 787872 (Mar. 23, 2009) (emphasis added).  Under FCA section 3729(b)(2), the term "claim" includes "any request or demand, whether under a contract or otherwise, for money . . . made to a contractor, ***grantee***, or other recipient, if the money or property [is] to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government—(I) provides or has provided any portion of the money. . . requested or demanded; or (II) will reimburse such contractor, grantee, or other recipient."  31 U.S.C. § 3729(b)(2) (emphasis added).  For purposes of the FCA, "the terms 'knowing' and 'knowingly'. . . mean that a person. . . (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information; and . . . require[s] no proof of specific intent to defraud."  31 U.S.C. § 3729(b)(1).

1.     **THE CAUSES OF ACTION PREMISED ON THE SUBMISSION OF FALSE CLAIMS AND USE OF FALSE STATEMENTS ARE SUFFICIENTLY PLED UNDER RULE 9(b).**

19.     The Agency brings claims for violation of the False Claims and False Statements provisions of the FCA.  SAC ¶¶ 170–80.  A defendant violates the False Claims Provision of the FCA when it "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval."  31 U.S.C. § 3729(a)(1)(A).  Additionally, a defendant violates the FCA's False Statement Provision when it "knowingly makes, uses, or causes to be made or used, a false

record or statement material to a false or fraudulent claim." § 3729(a)(1)(B). Under the False Statement Provision, the recording of a false record, when it is made with the requisite intent, is enough to satisfy the statute: "[courts] need not make the step of inferring that the record actually caused a claim to be presented to the Government." *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d at 192–93.

20.     Peters/MNA's motion to dismiss on these points asserts the Agency did not meet Rule 9(b)'s heightened pleading standard or Rule 12(b)(6)'s pleading standard. Dkt. No. 36, ¶¶ 19, 25–27, 31. Specifically, Peters/MNA contends that the claims are factually vague and confusing, and do not specify Peters/MNA's conduct. Dkt. No. 36, ¶ 19. This is NOT so.

21.     First, under the FCA, a defendant can be held liable when it "causes to be presented, a false or fraudulent claim" or "causes to be made or used, a false record or statement." 31 U.S.C. § 3729(a)(1)(A) & (B). That is, Peters/MNA did not necessarily have to be the individual/entity that submitted the claim themselves, only that they had a material role in the submission of the false claim. *See id.* Moreover, MNA appears to rely upon the allegations that "MNA did not contract directly with Relator," but that is not the standard and the fact is disputed.[2] "'The FCA applies to anyone who knowingly assists in causing the Government to pay claims grounded in fraud, **without regard to whether that person has direct contractual relations with the Government.**'" *U.S. v. Corporate Mgmt., Inc.*, 78 F.4th 727, 741 (5th Cir. 2023) (quoting *Riley v. St. Luke's Episcopal Hospital*, 355 F.3d 370, 378 (5th Cir. 2004) (emphasis added)). "Knowing

---

[2] Defendants do not dispute that Peters contracted with the Agency, so their argument to dismiss on this ground is for MNA only. However, as referenced in the Second Amended Complaint at paragraph 123: "Darrough pushed through and approved the contract for services entered into and effective on August 1, 2021, with Peters *d/b/a MNA*." SAC ¶ 123; *see also* SAC ¶ 126 ("Darrough signed a CQS Sheet for the MNA contract."). At the pleadings stage, a plaintiff does not bear the burden of proving its allegations as true, simply alleging them with sufficient particularity. *See, e.g., U.S. Silica Co. v. Amberger Kaolinwerke Eduard Kick GmbH,* No. 2:20-CV-00298-JRG, 2021 WL 5415294, *5 (E.D. Tex. No. 19, 2021). The allegations contained in the SAC are sufficient to pled the existence of a contract, even though one is not required under the FCA.

assistance" does not require that a person "be the one who actually submitted the claim forms in order to be liable." *Id.* To the contrary, "[t]he causation standard employs traditional notions of proximate causation to determine whether there is a sufficient nexus between the conduct of the party and the ultimate presentation of the false claim." *Id.* (quoting *U.S. ex rel. Wuestenhoefer v. Jefferson*, 105 F. Supp. 3d 641, 681 (N.D. Miss. 2015)); *see also U.S. v. Hodge*, 933 F.3d 468, 474–75 (5th Cir. 2019) (applying proximate causation in FCA housing case). Such nexus "'merely demands more than mere passive acquiescence in the presentation of the claim and some sort of affirmative act that causes or assists in the presentation of a false claim.'" *Corporate Mgmt., Inc.*, 78 F.4th at 741 (citing *U.S. v. Medoc Health Servs., LLC*, 470 F. Supp. 3d 638, 655 (N.D. Tex. 2020)). While "mere negligence'" is not actionable, "constructive knowledge is." *Id.* (internal citations omitted). "[W]hat has become known as the ostrich type situation where an individual has 'buried [its] head in the sand' and failed to make simple inquiries which would alert [them] that false claims are being submitted' is sufficient." *Id.* (quoting *U.S. ex rel. Longhi v. Lithium Power Techs., Inc.*, 513 F. Supp. 2d 866, 876 (S.D. Tex. 2007)); *see also* S. Rep. 99-345, at *21, 1986 U.S.C.C.A.N., 5266, 5286).

22. Second, the Complaint here sufficiently alleges affirmative acts taken by Peters/MNA:

- "Specifically, on June 7, 2021, Peters d/b/a MNA submitted a two-page proposal to provide the Agency's teachers, parents, and instructional coaches with STEM Professional Development in exchange for $149,999.00. Notably, this amount was structured to be just one dollar below the Agency's simplified acquisition procurement threshold. However, on June 16, 2021, Darrough submitted a CQS for Peters in the amount of $164,160.00." SAC ¶ 121;

- "Darrough pushed through and approved the contract for services entered into and effective on August 1, 2021, with Peters d/b/a MNA. On August 9, 2021, Peters submitted a claim to the Agency for $75,000.00. Peters submitted a second claim to the Agency on November 1, 2021, for $74,999.00, which Darrough also approved on November 9, 2021." SAC ¶ 123;

- "In March of 2021, while Peters was still one of Darrough's dissertation advisors, Peters d/b/a MNA submitted a proposal to the Agency to conduct an *independent* and *unbiased* evaluation of the impact of Fueling Brain's programming on the Agency's service population." SAC ¶ 125;

- "Darrough signed a CQS Sheet for the MNA contract. As is the case with the CQS' for Corrales and Fueling Brains, the procurement conducted by Darrough evidences she knowingly engaged in fraudulent competitive price quotes which also involved impermissible conflicts of interest. . . . "Darrough misrepresented material facts regarding competitive quotes in favor of Peters, her methodology advisor, and the director of research and assessment for Fueling Brains." SAC ¶¶ 126–27;

- "The Agency was unaware of Peters' affiliation with Fueling Brains at the time and would not have approved of any contract for Peters to conduct an independent evaluation of one of her employers. . . . Peters failed to disclose her conflict of interest for 'independently' evaluating Fueling Brains programs, namely that Peters was employed by Fueling Brains as their Executive Director for Research & Evaluation—in other words, Peters was creating the same Fueling Brains analyses and reports that the Agency was then paying her to independently evaluate." SAC ¶ 128. "Despite the clear conflicts of interest arising from her employment with Fueling Brains and her position as Darrough's dissertation committee member, Peters also expressly and falsely warranted: Contractor represents that it does not have nor will Contractor knowingly acquire any interest that would conflict in any manner with the performance of his or her obligations under this Contract. If Contractor knows or should have reason to know of a potential conflict of interest, Contractor must divulge this information promptly to Agency for evaluation of whether the potential conflict would adversely affect the performance of Services." SAC ¶ 131;

- "Peters failed to comply with the requirements for the evaluation as agreed to because, simply stated, she misrepresented that she could provide an independent evaluation and she also failed to actually conduct an evaluation. The contract described the various steps to be included as part of the evaluation that was to be completed by March 21, 2022.[3] Consistent with the contract terms, the Agency paid Michelle Peters $75,000.00 on May 18, 2021." SAC ¶ 129;

- "Peters failed to comply with the requirements for the services as agreed to by the Agency—a federal grantee. The only deliverable that Peters shared with the Agency that had any conceivable relationship to the Fueling Brains program was a report prepared by Fueling Brains regarding a survey of Agency staff following the 'professional development' training, which only showed increased understanding of the Fueling Brains program by staff after receiving the training." SAC ¶ 130;

---

[3] The evaluation was to be conducted using the Extended-Term Mixed Method Evaluation Design to assess the impact of the Fueling Brains education program and its effectiveness on the Agency's students. To this end, the evaluation was to include a long-term timeline that incorporated short-term, formative, and summative data collection and rigorous analysis of the efficacy and impact of the Fueling Brains' program objectives.

- "Ignoring this but acknowledging her material failure to perform under the contract, in December of 2021 Peters stated, '*I would like to have a report to Dr. Darrough by the end of January with data for the program evaluation of Fueling Brains*.' In a follow-up email Peters stated, '*I am wanting to put a report together that is somewhat close to the original proposal/contract*.' Peters again conceded via email dated December 27, 2022, that she had not delivered any evaluation of the efficacy of Fueling Brains' programming with respect to the Agency's students." SAC ¶ 133;

- "Although Darrough knew of this material failure to perform, Darrough never informed the Agency that Peters had failed to perform the contracted services or suggested the Agency seek recoupment of the payment to Peters. Consequently, the Agency certified its compliance with federal grant guidelines." SAC ¶ 134;

- "Peters has individually or in concert with others knowingly submitted a legally and factually false claim and made a false statement or record material to her false or fraudulent claim to a Federal Government grantee. Further, Peters has refused to return to the government its $75,000.00." SAC ¶ 136;

- "Defendant MNA Evaluation & Assessment, LLC ("MNA") was a Texas Limited Liability Company. Peters is the registered agent of MNA and the founder, principal, member, or manager, who receives financial benefits of MNA. MNA did not contract directly with Relator. On information and belief, MNA was established and utilized to further the false claims, fraud, and movement of monies amongst Peters, Defendants, and other persons involved or for other unlawful purposes, including but not limited to offering fraudulent "independent" assessments of the Fueling Brains program." SAC ¶ 15.

23.    The Agency has pled its claims grounded in the False Claims and False Statements provisions with sufficient particularity. Notably, all the essential factors exist to deny Peters/MNA's motion:

- **Who**: Peters and MNA—either directly or in a joint effort to conceal Peters' fraud.

- **What**: submitting false claims, false statements, and false records.

- **When**: from March 2021–December 2022. A plaintiff need not plead the exact dates, just dates sufficient to give a defendant fair notice; otherwise, such evidence would require "significantly more than any federal pleading rule contemplates." *Grubbs v. Kanneganti*, 565 F.3d at 189–90.

- **Where**: Houston, Texas area, or any other location Peters was located when she made her misrepresentations and submitted the false claims and statements.

- **How**: in procuring both the March 2021 and June 2021 contracts; in submitting bids for the two contracts; in working with Darrough to submit fraudulent CQS forms; in signing the March 2021 contract; in using MNA to conceal Peters' conflict of interest and facilitate the fraudulent claims; in signing the March 2021 contract while knowing Peters would be unable to materially perform; and in failing to perform under the March 2021 contract, yet submitting claims for payment thereunder.

24. Accordingly, the Agency pled its first and second claims with sufficient particularity to survive dismissal under Rule 9(b).

**2. THE CAUSES OF ACTION PREMISED ON THE SUBMISSION OF FALSE CLAIMS AND USE OF FALSE STATEMENTS ARE SUFFICIENTLY PLED UNDER RULE 12(b)(6).**

25. Satisfying the Rule 9(b) pleading standard will also suffice under Rule 12(b)(6).[4] Peters/MNA makes two points in its motion to dismiss under 12(b)(6). First, they contend that the Agency has not pled the existence of a contract between the Agency and MNA—again they do not dispute the existence of a contract between Peters and the Agency. As detailed above, the allegations are sufficient to plead a contract existed between the Agency and MNA, and, in any event, a direct contract need not exist for there to be a violation of the FCA. *See supra* ¶ 21; *U.S. v. Corporate Mgmt., Inc.*, 78 F.4th 727 at 741. Furthermore, liability under the FCA is not "contingent upon the defendant's status as a recipient and beneficiary of the contract. More importantly, the language of the False Claims Act statute does not anywhere state that False Claims Act liability depends upon a defendant's status as the recipient or beneficiary of the fraudulently

---

[4] The Agency adopts all arguments set forth above.

induced contract. All that is required is the submission of a false claim." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 792 (4th Cir. 1999).

26.     Second, Peters/MNA argues that Peters is not subject to the Agency's conflict of interest provisions, but completely disregards her own contractual guarantees. As iterated in the SAC, Peters expressly and falsely warranted:

> "Contractor represents that it does not have nor will Contractor knowingly acquire any interest that would conflict in any manner with the performance of his or her obligations under this Contract. If Contractor knows or should have reason to know of a potential conflict of interest, Contractor must divulge this information promptly to Agency for evaluation of whether the potential conflict would adversely affect the performance of Services."

SAC ¶ 131.

27.     In addition to that express warranty, the very nature of the services Peters/MNA contracted to provide the Agency required impartiality. "Peters d/b/a MNA submitted a proposal to the Agency to conduct an *independent* and *unbiased* evaluation of the impact of Fueling Brain's programming on the Agency's service population. The evaluation would cost $75,000.00 and was to be paid prior to the start of the evaluation." SAC ¶ 125. Peters failed to comply with the requirements for the evaluation as agreed because she misrepresented that she could provide an independent evaluation (and remarkably she also failed to actually conduct this evaluation). SAC ¶ 129. The contract described the various steps to be included as part of the evaluation that was to be completed by March 21, 2022.[5] Consistent with the contract terms, the Agency paid Michelle Peters $75,000.00 on May 18, 2021, based on these false and fraudulent misrepresentations she made. SAC ¶ 129.

---

[5] The evaluation was to be conducted using the Extended-Term Mixed Method Evaluation Design to assess the impact of the Fueling Brains education program and its effectiveness on the Agency's students. To this end, the evaluation was to include a long-term timeline that incorporated short-term, formative, and summative data collection and rigorous analysis of the efficacy and impact of the Fueling Brains' program objectives.

28.     Despite guarantees of impartiality, independence, and an unbiased eye, the documentation shows that in March of 2021, prior to Peters' submission of her evaluation proposal to the Agency, Corrales was already introducing Peters to other school systems and entities as "Fueling Brains Executive Director of Research and Development."  SAC ¶ 139.  In an email Peters was copied on to Mission CISD, Corrales identified Peters in that role and stated that Peters and others would "coordinate this effort with the Fueling Brains team and the district as we start serving your kiddos."  Additionally, by August of 2021 at the latest, Peters was using a Fueling Brains email address, and her emails had a signature block that identified her as Fueling Brains' "Executive Director Research & Evaluation."  SAC ¶ 139.  Moreover, in the Fall of 2021 Peters was directing the work performed by Fueling Brains—the very same work that she was contracted by the Agency to evaluate "independently and objectively."  SAC ¶ 139.

29.     Any claims for payment or approval submitted pursuant to these contracts thus violate the FCA as they were false claims.  *See United States v. Neifert–White Co.*, 390 U.S. 228, 233 (1968) (saying the FCA applies "to all fraudulent attempts to cause the Government to pay out sums of money").  Independence of the evaluator was a critical prerequisite to the March 2021 contract to evaluate the Fueling Brains program.  By signing the March 2021 contract containing the conflict of interest provision without disclosing her conflict, Peters submitted a false statement and false claim to the Agency.  *See Medtronic, Inc.*, 747 F.Supp.2d at 765; *see also* SAC ¶ 125. The contracts themselves are claims for approval—approval to work for the Agency, conduct the independent evaluation or professional development, and in return receive HHS funds.  *See United States v. Neifert–White Co.*, 390 U.S. at 233 (applying the FCA to a loan application); *United States v. Americus Mortgage Corp.*, No. 4:12–cv–02676, 2014 WL 4274279, at *4–5, 8–9 (S.D. Tex. Aug. 29, 2014) (applying the FCA to requests for HUD approval); *Abbott v. BP Exploration*

*and Production, Inc.*, 781 F.Supp.2d 453, 464–65 (S.D. Tex. 2011) (applying the FCA to a permit application); *U.S. ex rel. Longhi v. Lithium Power Tech., Inc.*, 513 F.Supp.2d at 882–84, 889 (applying the FCA to proposals for contracts).

30.　The services were premised on their independent, unbiased, and impartial nature (by their very title), and independence, unbiased nature, and impartiality were material to the services themselves. *Neder v. United States*, 527 U.S. 1, 16 (1999) ("[A] false statement is material if it has a natural tendency to influence, or is capable of influencing, the decision of the decision making body to which it was addressed."). As the SAC makes clear:

> The Agency was unaware of Peters' affiliation with Fueling Brains at the time and would not have approved of any contract for Peters to conduct an independent evaluation of one of her employers. Unaware of Peters' conflict of interest, the Agency contracted with Peters to conduct the supposedly 'independent evaluation' of the Agency's use of Fueling Brains and progress toward meeting its program goals. Peters failed to disclose her conflict of interest for "independently" evaluating Fueling Brains programs, namely that Peters was employed by Fueling Brains as their Executive Director for Research & Evaluation—in other words, Peters was creating the same Fueling Brains analyses and reports that the Agency was then paying her to independently evaluate.

SAC ¶ 128. It is clear that "[i]f the Agency knew Peters had made false statements in obtaining the agreement with the Agency, or of her status as Darrough's dissertation committee advisor, or her affiliation with Fueling Brains, it would have refused to enter into a contract with her or make any payment on her false claim." SAC ¶ 131; *see also* 42 U.S.C. § 9837(c)(1)(E)(iv)(X) (Head Start Act prohibiting "any conflict of interest, and any appearance of a conflict of interest. . . by officers and employees of the Head Start agency, and consultants and agents who provide services or furnish goods to the Head Start agency."); *U.S. v. Science Applications Intern. Corp.*, 555 F. Supp. 2d 40, 51 (D.D.C. 2008) (citing *U.S. ex rel. Ervin & Assocs. v. Hamilton Secs. Group*, 370 F. Supp. 2d 18, 51–52 (D.D.C. 2005)) ("[T]here can be little doubt that 'a government contractor's failure to disclose an organizational conflict of interest constitutes a false claim under the False

Claims Act.'"). Had the Agency known of Peters' conflicts of interest, financial ties to Fueling Brains, and her lack of independence, it would not have contracted with her or paid the claims. Therefore, these contracts were, from their inception, obtained by Peters fraudulently. *See U.S. ex rel. Guzder v. MKM Engineers, Inc.*, No. H–05–895, 2010 WL 11595351, at *5 (S.D. Tex. Jan. 14, 2010) ("[L]iability under the FCA may be imposed in the context of 'fraudulent inducement.'").

### 3. DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED AS TO DEFENDANTS' IMPLIED FALSE CERTIFICATIONS.

31.    In 2016, the Supreme Court held that a defendant can be liable for implied false certifications. *Universal Health Services, Inc. v. U.S.*, 579 U.S. 176, 187 (2016). "When, as here, a defendant makes representations in submitting a claim but *omits its violations of* statutory, regulatory, or *contractual requirements*, those omissions can be a basis for liability if they render the defendant's representations misleading with respect to the goods or services provided." *Universal Health Services, Inc. v. U.S.*, 579 U.S. at 187 (Emphasis added). Thus, when a defendant submits a claim for payment, it implicitly certifies its compliance with all conditions of payment, including adherence to applicable statutes, regulations, and contractual requirements. *Waldmann v. Fulp*, 259 F. Supp. 3d 579, 599 (S.D. Tex. 2016).

32.    Peters represented she could provide an independent evaluation of, and did not have a conflict of interest with, Fueling Brains. SAC ¶ 131. The failure to disclose Peters/MNA's inability to be independent and Peters' conflict of interest with Fueling Brains was misleading and materially noncompliant with her contractual requirements. *See Universal Health Services, Inc. v. U.S.*, 579 U.S. at 187; *see also* SAC ¶ 131. Thus, when Peters signed her contract promising to provide an independent evaluation of the Fueling Brains program, representing she had no conflict of interest while employed by Fueling Brains, she made a false claim and false statement that

mislead the Agency with respect to the services Peters would provide. *See Universal Health Services, Inc. v. U.S.*, 579 U.S. at 187; *see also* SAC ¶ 131. She did the same when she submitted bids to Darrough in March 2021 and June 2021 to push through for approval within the Agency. SAC ¶¶ 121, 122, 123, 131. And she did it again when she filed claims for payment under these contracts obtained by fraudulent claims and statements, and when she knew (as she said in a December 27, 2022, email) she failed to materially perform under those contracts. SAC ¶¶ 121, 122, 123, 131, 133, 134, 135.

**B. DEFENDANTS VIOLATED THE REVERSE FALSE CLAIMS PROVISION BY SUBMITTING, OR CAUSING TO BE SUBMITTED, CLAIMS FOR HHS FUNDS ADMINISTERED BY THE AGENCY FOR WORK NOT PERFORMED.**

33. The Agency brings claims for violation of the Reverse False Claims provision of the FCA. SAC ¶¶ 181–84. Peters/MNA's motion to dismiss on these points asserts Plaintiff/Relator did not meet Rule 9(b)'s heightened pleading standard or Rule 12(b)(6)'s pleading standard. Dkt. No. 36, ¶¶ 19, 25–27, 31. Peters/MNA also contends that "Plaintiff/Relator makes no effort to differentiate its 'reverse' claim from its 'affirmative' claims." Dkt. No. 26, ¶ 37.

34. Section 3729(a)(1)(G) imposes liability on one who "knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(G). In a reverse-false claims suit, the defendant's action "does not result in improper payment by the government to the defendants, but instead results in no payment to the government when a payment is obligated." *U.S. ex rel. Bain v. Georgia Gulf Corp.*, 386 F.3d 648, 653 (5th Cir. 2004). "Reverse false claim liability" for failing to disclose and return an overpayment from the government requires proof of the following elements: (1) a false record is created; (2) the provider knows the record is false; (3) the false record or statement is made, used, or caused to be made or used; (4)

to conceal, decrease, or avoid an obligation to pay the government; and (5) the misrepresentation is material. *See* 31 U.S.C. § 3729(a)(1)(G); *accord U.S. ex rel. Matheny v. Medco Health Solutions, Inc.*, 671 F.3d 1217, 1224 (11th Cir. 2012).

35.     It is well settled that claims may be pled in the alternative. *See, e.g., U.S. v. United Techs. Corp.*, No. C-3-99-093, 2000 WL 988238, at *3 (S.D. Ohio Mar. 20, 2000). In the unlikely event that the Court were to determine the original overpayment was not based upon a false claim, the failure to remit payment upon demand under the circumstances alleged in the Complaint would trigger liability under § 3729(a)(1)(G) for all the same reasons identified *supra* Part A & B.

**C.     DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED BECAUSE THE FCA CLAIMS FOR CONSPIRACY ARE SUFFICIENTLY PLED.**

36.     Peters/MNA is liable not only for violating the FCA, but also for conspiring to violate the FCA. § 3729(a)(1)(C). "[T]o prove a False Claims Act conspiracy, a relator must show '(1) the existence of an unlawful agreement between defendants to get a false or fraudulent claim allowed or paid by [the Government] and (2) at least one act performed in furtherance of that agreement.'" *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d at 193 (quoting *U.S. ex rel. Farmer v. City of Houston*, 523 F.3d 333, 343 (5th Cir.2008)). An intent to defraud is also an essential element under the Conspiracy Provision. However, at this stage, intent is not required to be plead with particularity. FED. R. CIV. P. 9(b); *U. S. ex rel. Farmer*, 523 F.3d at 343.

37.     Here, the Complaint specifies, as reprinted in ¶ 21 *supra*, that Peters conspired with Darrough to submit false claims, statements, and records to the Agency in hopes of procuring contracts and receiving payment via government funds. The Complaint further states:

- "Darrough acted in concert with Co-Defendants—conspiring to circumvent federal and Agency contract procurement requirements in order to award HHS vendor contracts to the Defendants. Darrough's undisclosed relationships with the Agency vendors named as Defendants, both financial, professional, and personal constituted impermissible conflicts of interest. The Defendant vendors failed to

perform under the contracts with the Agency, which failures Darrough helped obfuscate while she facilitated their false and fraudulent claims pushing payments through the Agency's system." SAC ¶ 16;

- "On information and belief, the Defendants further benefitted from the conspiracy by paying each other commissions or "kickbacks" on the contracts fraudulently obtained with other school systems and federal grantees, and Defendants knowingly structured payments in such a way as to avoid contractual, state, and federal conflicts of interest disclosures and detection." SAC ¶ 17;

- "Defendants, among other fraudulent activities, knowingly and recklessly conspired to submit, caused to be submitted, or facilitated the submission of false and fraudulent documents and claims and made false and fraudulent representations to the Agency, a Federal Government grantee, over a period of several years, thereby plundering the Agency's federal funds and resources for the Defendants' illegitimate and unlawful purposes." SAC ¶ 21;

- "As described below with respect to each vendor contract, from 2020 through 2021 Darrough, among other things, authorized fraudulent contracts with, and made and authorized federal fund payments to, among others: . . . (3) Michelle Peters, individually and/or Peters d/b/a MNA Evaluation & Assessment LLC. Despite knowing these vendors materially failed to perform under the contracts, Darrough authorized payments to them using HHS funds. In some instances, Darrough colluded with the vendors and authorized fraudulent contract payments (and double payments) for services that were not contracted for and not provided to the Agency. Had BakerRipley known of this wrongful conduct, it would not have paid the invoices presented by these vendors." SAC ¶ 46;

- "Once Darrough negotiated services or executed a contract with a vendor to provide services under the HHS/ACF/OHS program, in compliance with the terms of the agreement or contract, Darrough was to submit a purchase order request for payment. Darrough knew that the invoiced services were not contracted for, not provided, and/or double billed, and deliberately and recklessly withheld this information from BakerRipley. Based upon Darrough's material representations regarding vendor payment requests, and her failure to disclose critical information about the legitimacy of the invoiced services, Agency employees would "draw down" the HHS/ACF/OHS grant funds and pay the vendors." SAC ¶ 47;

- "The arrangement included: a) Darrough procuring and approving contracts with Defendants outside of the proscribed contract procurement requirements of both the Federal Government and the Agency; b) Darrough directing Defendants to "re-structure" submittals, quotes, contracts, and invoices to circumvent Federal Government and Agency policies and controls; c) Darrough authorizing, approving, and directing payments to the other Defendants for services that she knew were not rendered or knew were of no value and did not meet the needs of the Agency or the Head Start Program; d) Darrough authorizing fraudulent and/or duplicative payments to the Defendants in order to meet the financial terms and

objectives of the Defendants and likely "off the books" arrangements between Defendants; and e) doing all of the above and other wrongful acts knowing of prohibited conflicts of interest amongst the Defendants and in conspiracy with same." SAC ¶ 53; and

- "The Defendants share joint financial and career arrangements which are clear conflicts of interest. Not only did Darrough benefit with respect to her career goals and doctoral candidacy by assisting Corrales d/b/a Sterling and Peters d/b/a MNA to submit false claims to the Agency, but on information and belief Darrough, along with Corrales and Peters, received financial and career benefit from Fueling Brains for the leads and referrals she directed to Fueling Brains, including contracts obtained through the Agency." SAC ¶ 142.

38. Thus, Plaintiff/Relator's Complaint clearly pleads a claim for conspiracy by specifically referencing the Defendants' agreement—working in concert to submit, conceal, push through, and approve false and fraudulent claims to the Agency to procure contracts and government funds[6]—and the actions taken by Peters/MNA in furtherance of that agreement—submitting false and fraudulent claims within proposals, bids, CQS forms, and invoices to receive government funds.[7] As the Exhibits submitted along with the Agency's Complaint demonstrate, Peters/MNA was in an agreement with Co-Defendants to defraud BakerRipley and the Federal Government. Dkt. No. 1-1, Dkt. No. 1-2.

39. Rule 8(a) and 9(b) only require the Agency to plead a plausible claim for relief with particular facts required for fraud claims except for facts relevant to Peters/MNA's mental impressions and conditions, which may be plead generally. As demonstrated above, Plaintiff/Relator has met that burden.

---

[6] In part found at SAC ¶ 46, 53.
[7] *Supra*, ¶ 22; SAC ¶ 16–17, 21, 47.

**D.   THE AGENCY'S FCA CLAIMS ARE NOT BARRED BY THE PUBLIC DISCLOSURE BAR.**

40.   Peters/MNA asserts Plaintiff/Relator's suit is barred by the Public Disclosure Bar.

Dkt. No. 36, ¶¶ 42–48.  However, Peters/MNA offers no supporting evidence that Peters/MNA's

fraudulent acts were publicly disclosed. They were not.

41.   The FCA includes a Public Disclosure Bar Provision which states:

(4)(A) The court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed—

(i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party

(ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or

(iii) from the news media,

unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

(B) For purposes of this paragraph, "original source" means an individual who either (1) prior to a public disclosure under subsection (e)(4)(a), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (2) who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section.

31 U.S.C. § 3730(e)(4).

42.   The third form of public disclosure—news media—has a broad understanding in

this context and includes websites, blogs, and online articles.  *Green v. AmerisourceBergen Corp.*,

No. 4:15-CV-379, 2017 WL 1209909, at *6 (S.D. Tex. Mar. 31, 2017).  The Fifth Circuit has "held

that if a *qui tam* action is 'even partly based upon public allegations or transactions' then the

jurisdictional bar applies."  *Stennett v. Premier Rehabilitation, LLC*, 479 Fed. App'x 631, 634

(5th Cir. 2012).  "Based upon" means "both sets of allegations are substantially similar."  *Id.*

at 634–35.  A relator is an original source if he "had direct and independent knowledge of the

transactions upon which he bases his allegations." *Id.* at 635. "[D]irect requires 'knowledge derived from the source without interruption or gained by the relator's own efforts rather than learned second-hand through the efforts of others.'" *Id.*

43.     Thus, the Public Disclosure Bar only applies if (1) the *qui tam* action is based upon publicly disclosed (as defined in the statute) allegations or transactions and (2) the person bringing the action is not the original source of the publicly disclosed information. *See U.S. ex rel. Sonnier v. Standard Fire Ins. Co.*, 84 F.Supp.3d 575, 586 (5th Cir. 2015).

44.     Peters/MNA first asserts "Peters' position on Darrough's committee was publicly available information." Dkt. No. 36, ¶ 46. However, Relator's attorneys attempted to search the ProQuest database as Peters/MNA instructs, but access to dissertations are only available if a user is affiliated with an institution or library that has created an account with ProQuest. Moreover, the dissertation itself was not posted to UHCL library's website until December 2021, well after the false claims were submitted and conspiracy had begun. Therefore, these sources are very different from the free and unobstructed blogs, magazine articles, and other sources courts have previously recognized as widely distributed to the public." *See Stennett v. Premier Rehabilitation, LLC*, 479 Fed. App'x at 634; *Green v. AmerisourceBergen Corp.*, No. 4:15-CV-379, 2017 WL 1209909, at *6 (S.D. Tex. Mar. 31, 2017).

45.     Peters/MNA also states that the Agency's conspiracy claim "is a far reach" because Darrough was not a signatory to the March 2021 contract. Dkt. No. 36, ¶ 47. However, Peters/MNA forgets Darrough was the Agency's Senior Director of Early Head Start and Head Start and Principal Investigator for the Head Start grant administration. As such, Darrough was the sole individual to oversee administration of funds for the Head Start programs. Darrough was the one who created and solicited bids for the CQS forms which Peters/MNA submitted bids under

knowing Darrough would push the proposal through.  Peters/MNA and Darrough knew each other from their academic dealings and from their joint relationship with Fueling Brains, and took advantage of each other's positions to defraud the government into paying false and fraudulent claims.

46.     Even if there was a public disclosure, Peters/MNA does not point to the disclosure being substantially similar to the Agency's allegations in this *qui tam* suit.  "A complaint is 'substantially the same as' or 'based upon' public disclosures if 'one could have produced the substance of the complaint merely by synthesizing the public disclosures' description of the . . . scheme.'"  *U.S. ex rel. Integra Med Analytics, LLC v. Creative Solutions in Healthcare, Inc.*, No. SA-17-CV-1249-XR, 2019 WL 5970283, at *10 (W.D. Tex. Nov. 13, 2019) (quoting *U.S. ex rel. Jamison v. McKesson Corp.*, 649 F.3d 322, 331 (5th Cir. 2011)).

47.     All that was disclosed was Peters/MNA's relationship with Darrough.  There was no public disclosure of Peters/MNA's employment or relationship with Fueling Brains, or that Peters/MNA submitted false claims for approval when she failed to disclose her conflict of interest or false claims for payment when she submitted invoices despite her failure to perform an independent evaluation of her other employer Fueling Brains' program with the Agency.  No scheme was publicly disclosed or any information relevant to the false claims or conspiracy to submit false claims and the claims at bar are not based on the information allegedly public.

48.     And even if the Court wished to lend more grace to Peters/MNA, the Agency is the original source of such allegations because it was the entity Peters/MNA and Co-Defendants use to defraud the Government.  The fraud was not learned second-hand from others, but from first-hand observation of source documents and its own dealings with the Defendants and their

fraudulent activity. *See U.S. ex rel. Branch Consultants, LLC v. Allstate Ins. Co.*, 668 F.Supp.2d 780, 797–98 (E.D. La. 2009).

49. Therefore, the Agency's claims are not barred by the Public Disclosure Bar and Peters/MNA's Motion to Dismiss on this ground should be denied.

**E.  PETERS/MNA'S MOTION TO DISMISS SHOULD BE DENIED BECAUSE THE CLAIMS FOR UNJUST ENRICHMENT, PAYMENT BY MISTAKE, AND MONEY HAD AND RECEIVED ARE SUFFICIENTLY PLED.**

50. BakerRipley brings claims for unjust enrichment, payment by mistake, and money had and received against Peters/MNA. SAC ¶¶ 188–194, 205–207. Peters/MNA's motion to dismiss on these points relies on these equitable claims being subject to Texas common law's understanding that "quasi-contract theories cannot supersede or exist in conjunction with a valid agreement addressing the matter." Dkt. No. 36, ¶ 50. However, the Supreme Court of Texas has recognized that "overpayments under a valid contract may give rise to a claim for restitution or unjust enrichment." *See Southwestern Elec. Power Co. v. Burlington Northern Railroad Co.,* 966 S.W.2d 467, 470 (1998); *see also Staats v. Miller,* 243 S.W.2d 686, 687-88 (1951) (allowing restitution for freight charges paid in excess of rates specified in shipping contract); *Gulf Oil Corp. v. Lone Star Producing Co.,* 322 F.2d 28, 31-33 (5th Cir. 1963) (holding that plaintiff could recover money mistakenly paid in excess of contract price). Thus, the Agency is entitled to recover under equitable theories for the overcharged amounts.

51. Peters/MNA also complaints that the equitable claims are not explicitly plead in the alternative. *Id.*, ¶ 54. However, "[t]his argument is meritless. 'No technical form is required in pleadings.'" *U.S. ex rel. Hueseman v. Professional Compounding Centers of America, Inc.*, 664 F.Supp.3d 722 (W.D. Tex. 2023); *see also Floey Inst. of Neuroscience & Mental Health v. Kleiner Perkins Caufield & Byers,* 2013 WL 5402093, at *8 (N.D. Cal. Sept. 26, 2013) ("Plaintiff need not use the magic word 'alternatively' to indicate that its claim was made in the alternative. 'Under

Rule 8, plaintiff need not use particular words to plead in the alternative as long as it can be reasonably inferred that this is what [he was] doing.'") (*quoting Coleman v. Standard Life Ins. Co.*, 288 F. Supp. 2d 1116, 1120 (E.D. Cal. 2003)).

52.     With respect to BakerRipley's individual quasi-contractual claims, these are pled in the alternative where required. It is well settled that under Texas law, an unjust enrichment claim may proceed when pleaded in the alternative to a breach of contract claim. *See, e.g., Peters v. Norwegian Cruise Line Ltd.*, No. 01-05-00906, 2007 WL 1633555, at *10 (Tex. App.—Houston [1st Dist.] June 7, 2007). If Defendants concede on the record that a valid contract exists between the parties (which they have not yet done), then the case will proceed on the contractual claims with the addition of the permissible claim for overpayment.  Defendants do not challenge the merits of these claims beyond asserting that they "fail, and should be dismissed, because Plaintiff/Realtor has pled that there were valid, enforceable contracts between Plaintiff/Relator and Peters." Mtn. at 16. Because it is clear that quasi-contractual claims can exist in the alternative, these claims survive dismissal.

**F.**     **THE BREACH OF CONTRACT AND BREACH OF GOOD FAITH AND FAIR DEALING CLAIMS SURVIVE DISMISSAL.**

**1.**     **PETERS/MNA'S MOTION TO DISMISS SHOULD BE DENIED BECAUSE THE BREACH OF CONTRACT CLAIMS ARE SUFFICIENTLY PLED.**

53.     The Agency brings claims for breach of contract and the obligation of good faith and fair dealing against Peters.  SAC ¶¶ 188–94, 205–07.  Peters avers these claims should be dismissed because: (1) the Agency "pleads both breach of contract and FCA violations on the same set of underlying assertion, and not in the alternative;" and (2) the Agency "does not give Peters sufficient notice of her allegedly wrongful conduct."  Dkt. No. 36, ¶ 54, 57.

54.     For these claims to survive Peters' motion to dismiss, they must comply with Rules 8(a) and 12(b), i.e., they must give fair notice of the claim.  FED. R. CIV. P. 8(a), 12(b)(6); *Askanase v. Fatjo*, 148 F.R.D. 570, 573 (S.D. Tex. 1993) ("Rule 8 requires only that the pleadings in a federal action indicate that if the allegations in the pleading are established, the pleader is entitled to relief under the substantive law of the applicable jurisdiction."); *see also Floey Inst. of Neuroscience  & Mental Health v. Kleiner Perkins Caufield & Byers,* 2013 WL 5402093 at *8. There is no prohibition on pleading both FCA and breach of contract claims.  FED. R. CIV. P. 8(d)(2)–(3).  The distinction is only relevant when the FCA claims hinge on a "contractor's compliance with federal statues, regulations, or contract provisions was not a condition or prerequisite for payment under a contract."  *See U.S. ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 268 (5th Cir. 2010).

55.     Peters next complains that the Agency "does not clearly identify which contract its Seventh Claim refers to, identify the alleged breach, or specify the damages of such breach specific to Peters."  Dkt. No. 36, ¶ 57.  Notwithstanding that Complaint incorporated all preceding paragraphs with the allegation,[8] thereby pointing Peters to the facts laid out in other sections,[9] the Agency further discussed the contracts the Agency had with all Defendants, identified the material breaches, including failure to perform and double invoicing, and estimated a minimum damages amount.  SAC ¶ 196.

56.     The elements of a breach of contract claim in Texas are: "(1) existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) beach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach."  *Smith Intern., Inc. v. Egle Group, LLC,* 490 F.3d 380, 387 (5th Cir. 2007).

---

[8] SAC ¶ 195.
[9] Peters identified the two contracts at issue here in her Motion to Dismiss at paragraph 57.  SAC ¶ 57 ("In fact, the only reference to either the First or Second Contract was pled under the Plaintiff/Relator's SAC section").  Therefore, Plaintiff/Relator's complaint sufficiently points Peters to the March and June 2021 contracts.

57.     Here, as stated within the Agency's complaint, two contracts from March and June 2021, respectively, are at issue, each with obligations arriving thereunder.  SAC ¶¶ 121–23, 125–36.  Plaintiff/Relator performed its obligations under the contracts by tendering the agreed payment, and Peters breached both contracts by: (1) violating the conflict of interest provision when she failed to disclose her employment with Fueling Brains; (2) fraudulently obtaining the contract by conspiring with Darrough to avoid Federal and Agency requirements for procuring such a contract; and (3) not materially performing the independent evaluation required by the March 2021 contract or the professional development training required by the June 2021 contract.  SAC ¶¶ 121–23; 125–36.  The Agency sustained real damages for such breaches by paying for services left materially unperformed.  All of these facts are found within the Second Amended Complaint sufficient to give Peters' fair notice of the claims, as evidenced by Peters' substantive contentions regarding these facts.

### 2.     PETERS/MNA'S MOTION TO DISMISS SHOULD BE DENIED BECAUSE THE GOOD FAITH AND FAIR DEALING CLAIMS ARE SUFFICIENTLY PLED.

58.     Peters next asserts Texas does not have a duty of good faith and fair dealing.  SAC ¶ 59.  However, the Texas Supreme Court has stated: "The duty of good faith and fair dealing emanates from the special relationship between the parties and not from the terms of the contract, therefore its breach gives rise to tort damages and not simply to contractual liability."  *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 697–98 (Tex. 1994).  Therefore, the duty of good faith and fair dealing exists where the parties have a special relationship, which has often been recognized in circumstances where the defendant is a fiduciary or operates from an unbalanced bargaining position.

59.     The Agency is not required to prove the special relationship at this stage.  All that is required to survive the Rule 12(b)(6) motion to dismiss is that the Agency plead sufficient facts

and claims to put the opposing party on notice. The Agency has plead such a special relationship existed and pointed to the contract, facts, and circumstances that existed to support that special relationship, SAC ¶¶ 121, 124–25, 128, 131–32, Peters' breach of that special relationship and contract, and accompanying duty of good faith and fair dealing. SAC ¶ 123, 126–32, 134. Thus, Peters' motion to dismiss the Agency's duty of good faith claim ought to be denied and Plaintiff/Relator's claim ought to proceed past this procedural stage.

### G. THE FRAUD AND FRAUD BY NONDISCLOSURE CLAIMS SURVIVE DISMISSAL.

60. The Agency brings claims for fraud and fraud by nondisclosure against Peters/MNA. SAC ¶¶ 197–200. Peters/MNA believes the Agency failed to meet Rule 9(b)'s heightened pleading standard required for fraud claims. Dkt. No. 36, ¶¶ 62–65. However, as discussed in detail in the FCA Claims section, *supra* Part A–C, the Agency met this burden by pleading with particularity the who, what, when, where, and how of Peters/MNA's fraud.

61. The elements of fraud are:

> (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.

*Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009) (quoting *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001)). Breach of contract "combined with 'slight circumstantial evidence' of fraud is enough to support a verdict for fraudulent inducement."; *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 305 (Tex. 2006). At this stage, sufficient evidence to support a verdict is not necessary, all that is required are sufficient facts to state a claim for which relief may be granted.

62. The elements for fraud by nondisclosure are:

(1) the defendant failed to disclose facts to the plaintiff; (2) the defendant had a duty to disclose those facts; (3) the facts were material; (4) the defendant knew the plaintiff was ignorant of the facts and the plaintiffs did not have an equal opportunity to discover the facts; (5) the defendant was deliberately silent when it had a duty to speak; (6) by failing to disclose the facts, the defendant intended to induce the plaintiff to take some action or [restrain] from acting; (7) the plaintiff relied on the defendant's nondisclosure; and (8) the plaintiff was injured as a result of acting without that knowledge.

*Proske v. Barrett Daffin Frapier Truner &, Engel, LLP*, No. H-190831, 2019 WL 5787739, at *4 (S.D. Tex. Nov. 6, 2019) (quoting *Horizon Shipbuilding, Inc. v. Blyn II Holding, LLC*, 324 S.W.3d 840, 849–50 (Tex. App.—Houston [14th Dist.] 2010)).

63.    Here, the Agency met Rule 9(b)'s heightened pleading standard by identifying the who, what, when, where, and how of Peters/MNA's fraud.  *Supra*, ¶¶ 21–22, 24, 26–27.

64.    Such facts are certainly sufficient to give Peters/MNA fair notice of the Agency's fraud claims.  Therefore, Peters/MNA's motion to dismiss the fraud and fraud by nondisclosure claims should be denied.

**H.    THE TEXAS THEFT LIABILITY ACT ("TTLA") CLAIM SURVIVES DISMISSAL.**

65.    The Agency brings a claim for violations of the Texas Theft Liability Act against Peters.  SAC ¶¶ 201–02.  Peters believes Plaintiff/Relator has failed to plead Peters "intended not to perform 'at the time [it] entered into contracts.'".  Dkt. No. 36, ¶ 69.

66.    To support this purported prerequisite, Peters relies on two Texas appeals court opinions concerning the conviction of defendants for theft in violation of state criminal law.  *Id.*, ¶¶ 68–69; *see generally Ehrhardt v. State*, 334 S.W.3d 849 (Tex. App.—Texarkana 2011); *Holcomb v. State*, 445 S.W.3d 767, 782 (Tex. App.—Houston [1st Dist.] 2014).  These criminal requirements are very different from TTLA's civil liability, and the TTLA is not considered in either opinion.

67.     Under the TTLA, "[a] person who commits theft is liable for the damages resulting from the theft." TEX. CIV. PRAC. & REM. CODE § 134.003(a). Theft is defined as "unlawfully appropriating property or unlawfully obtaining services as described in [certain sections of the] Penal Code." TEX. CIV. PRAC. & REM. CODE § 134.002(2).

68.     "To recover for a civil theft under the TTLA, a plaintiff must establish: (1) the plaintiff had a possessory right to property; (2) the defendant unlawfully appropriated property in violation of the theft provisions of the Texas Penal Code; and (3) the plaintiff sustained damages as a result of the theft." *Khan v. Khaishgi*, No. 4:21-CV-02602, 2023 WL 5807841, at *6 (S.D. Tex. Sep. 6, 2023). "A person commits an offense if he unlawfully appropriates property with intent to deprive the owner of property." TEX. PENAL CODE § 31.03.

69.     Here, Peters appropriated money from the Agency when she submitted a false claim for payment to the Agency, the Agency mistakenly tendered payment, and when the Agency requested the funds back, Peters refused that request and withheld the money. *See Wellogix, Inc. v. Accenture, LLP*, 788 F.Supp.2d 253, 542–43 (S.D. Tex. 2011) ("Deprive means, among other things, 'to withhold property from the owner permanently or for so extended a period of time that a major portion of the value or enjoyment of the property is lost to owner." (quoting TEX. PENAL CODE § 31.01)). Therefore, the Agency has asserted facts sufficiently stating Peters committed theft in violation of the TTLA.

70.     Even if the Court applied *Ehrhardt* and *Holcomb*'s "intent not to perform" requirement, the Agency pleaded facts related to that requirement. This requirement has been established by use of evidence denoting similar transactions reflecting a pattern wherein the defendant "[did] a little bit of work, [took] a lot of money, and then [did] not complet[e] the task."

*Taylor v. State*, 450 S.W.3d 528, 534 (Tex. Crim. App. 2014). Such facts are alleged within the Second Amended Complaint. As such, its TTLA claims should survive Peters' Motion to Dismiss.

71. Moreover, Peters' mistakenly asserts "Plaintiff/Relator must prove the defendant did not perform the contract and knew he was not entitled to the money, not merely that there is a dispute about the amount rightfully owned." Dkt. No. 36, ¶ 68 (internal quotations omitted). At this stage, the Agency need not *prove* the evidence, but need only state the facts related to the evidence sufficient to place Peters on notice of its claim. That is exactly what the Agency has done here. At this stage, matters within the defendants' mind may be plead generally. *See Nuncio*, 2021 WL 4442518, at *5.

72. Furthermore, Peters did know she was not entitled to the money when she submitted the claim and withheld repayment after requested by the Agency, because she knew she had a conflict of interest that she failed to disclose and that she had not performed the independent evaluation as required, she admitted as much in a December 2022 email. Dkt. No. 22, ¶ 133. Because of her lack of independence, she never intended on performing the independent evaluation of her other employer's (Fueling Brains') program. *See Erhardt*, 334 S.W.3d at 853. Within the totality of the Second Amended Complaint, it is clear Peters and her Co-Defendants concocted a scheme to defraud the Agency and the government. They never intended to perform their contractual obligations and routinely submitted false claims for payment and approval all to accomplish their task of taking advantage of the COVID-19 pandemic and receive federal funds for work never performed, and for which they had no intent of ever materially performing.

73. Therefore, the Agency met its burden under Rules 8(a) and 12(b)(6) and Peters' Motion to Dismiss on this ground should be denied.

## I.     THE CIVIL CONSPIRACY CLAIM SURVIVES DISMISSAL.

74.     The Agency brings a civil conspiracy claim against Peters/MNA.  SAC ¶¶ 203–04.
Peters/MNA asserts Plaintiff/Relator has failed to plead the underlying tort(s) required to sustain
a civil conspiracy cause of action.  Dkt. No. 36, ¶ 71.

75.     "Civil conspiracy is a derivative tort; therefore, liability for a civil conspiracy
depends on participation in an underlying tort."  *Homoki v. Conversion Services, Inc.*, 717 F.3d
388, 402 (5th Cir. 2013).  Thus, "to adequately plead a claim for civil conspiracy, a plaintiff must
adequately plead the underlying tort."  *Id.*

76.     Here, the Agency pleads, in detail, the facts concerning Peters/MNA's fraud, fraud
by non-disclosure, and breach of contract and all related equitable claims within the entirety of its
Second Amended Complaint.  *Supra* ¶¶ 21–22, 24, 26–27, 31–33.  It referenced such not only with
the "incorporation by reference" paragraph Peters/MNA takes issue with, but also with the
succeeding paragraph wherein it directly cited Defendants' conduct which constituted fraud,
breaches of contractual obligations and equitable duties, and violations of state and federal statutes.
SAC ¶ 204; *see Amazon Tours, Inc. v. Quest Global Angling Adventures, L.L.C.*, No. CIV.A
303CV2551M 2004 WL 1788078, at *4 (N.D. Tex. June 30, 2004) (finding sufficiency of facts
within a conspiracy section to put the defendant on notice of an underlying tort because "the
complaint alleges facts concerning conspiracy to [commit that underlying tort]," even though the
underlying tort was not explicitly stated within that section).  Therefore, Peters/MNA's Motion to
Dismiss should be denied because the Agency pled its conspiracy claim with particularity.

## III.     ALTERNATIVE MOTION FOR LEAVE TO AMEND

77.     When a plaintiff's complaint fails to state a claim, a court should generally give the
plaintiff a chance to amend the complaint under Rule 15(a) before dismissing the action with

prejudice, unless it is clear that to do so would be futile. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 309 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."). In the unlikely event the Court determines the Complaint's allegations are insufficient to survive dismissal, the Agency respectfully requests leave to amend the complaint to plead with more particularity.

## IV. CONCLUSION

78. For these reasons, the Agency respectfully prays that this Court DENY Defendants' Motion to Dismiss in its entirety and for all other relief to which it is justly entitled.

Dated: June 10, 2024.

Respectfully submitted,

**MARTINEZ REILLY, LLP**

/s/ Marion M. Reilly
**Marion M. Reilly**
State Bar No. 24079195
Federal ID. 1357491
Email: Marion@mrtrial.com
**John B. Martinez**
State Bar No. 24010212
Federal ID. No. 23612
Email: John@mrtrial.com
3636 S. Alameda, Ste. B119
Corpus Christi, Texas 78412
Dir: (361) 273-6771
Fax: (361) 704-8355
**Service Email address
Service@mrtrial.com

**SCHULMAN, LOPEZ, HOFFER & ADELSTEIN, LLP**
845 Proton Road
San Antonio, Texas 78258
Telephone:      210-538-5385

Facsimile:      210-538-5384

**Joseph E. Hoffer**
**Attorney-in-Charge**
State Bar No. 24049462
Federal ID No. 2006011
Email: jhoffer@slh-law.com
**Elizabeth Angelone**
State Bar No. 24077349
Federal ID No. 3042089
Email: eangelone@slh-law.com

**ATTORNEYS FOR THE AGENCY**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been sent to all known counsel pursuant to the Federal Rules of Civil Procedure on this 10th day of June 2024 via the CM/ECF system or via email.

Dinesh H. Singhal
**The Singhal Law Firm**
2700 Post Oak Blvd., Suite 1750
Houston, Texas 77056
Tel: 713.222.8500
dinesh@singhallaw.com
**ATTORNEY FOR CIMBERLI DARROUGH**

Jordan Raschke Elton
Andrew Mytelka
**Greer, Herz & Adams, L.L.P.**
One Moody Plaza, 18th Floor
Galveston, Texas 77550
P: (409) 797-3239
jraschkeelton@greerherz.com
**ATTORNEYS FOR MICHELLE PETERS AND MNA EVALUATIONS AND ASSESSMENTS, LLC**

Amanda Gadison
Randal H. Miller
**Bryan Cave Leighton Paisner**
2200 Ross Ave., Suite 4200 W
Dallas, Texas 75201
P: 214-721-8117
Amanda.gadison@bclplaw.com
**ATTORNEYS FOR KIDS U US, INC. D/B/A FUELING BRAINS**

Fred D. Raschke
**Mills Shirley L.L.P.**
2200 Market Street Ste 300
Galveston, TX. 77550
P: 409-761-4028 (direct line)
fraschke@millsshirley.com
**ATTORNEY FOR ANTONIO CORRALES AND STERLING EVALUATIONS AND ASSESSMENT, LLC**