# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* BakerRipley, § § § § *Plaintiffs/Relator*, § § v. § Case No. 23-cv-1124 § Kids U US, Inc. d/b/a Fueling Brains; § Cimberli Johnson Darrough; § Antonio Corrales; § Sterling Evaluation and Assessment, LLC; § Michele Peters; and § MNA Evaluation and Assessment, LLC § § *Defendants*. | |

## REPLY TO RESPONSE TO DEFENDANTS MICHELLE PETERS AND MNA EVALUATION AND ASSESSMENT, LLC'S MOTION TO DISMISS

# TABLE OF AUTHORITIES

**Cases**

*Arnold v. Nat'l Cnty. Mut. Fire Ins. Co.*, 725 S.W.2d 165 (Tex. 1987) ....................8

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*,
  637 F.3d 1047 (9th Cir. 2011) .................................................................3

*City of Midland v. O'Bryant*, 18 S.W.3d 209 (Tex. 2000)..........................................8

*Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671 (Tex. 2000) ..............................7

*Godfrey v. Sec. Serv. Fed. Credit Union*,
  356 S.W.3d 720 (Tex. App.—El Paso 2011) ...............................................8

*Gulf Oil Corp. v. Lone Star Producing Co.*, 322 F.2d 28 (5th Cir. 1963)................6

*Natividad v. Alexsis, Inc.*, 875 S.W.2d 695 (Tex. 1994) ...........................................8

*Porter–Garcia v. Travis Law Firm, P.C.*, 564 S.W3d 75
  (Tex. App.—Houston [1st Dist.] 2018, pet. denied) ..............................10

*Prime Prod., Inc. v. S.S.I. Plastics, Inc.*, 97 S.W.3d 631
  (Tex. App.—Houston [1st Dist.] 2002)...................................................9

*Smith Int'l, Inc. v. Egle Grp.*, LLC, 490 F.3d 380 (5th Cir. 2007) ...........................7

*Southwestern Elec. Power Co. v. Burlington Norther Railroad Co.*,
  966 S.W.2d 467 (1998)..............................................................................6

*Staats v. Miller*, 243 S.W.2d 686 (1951) ..................................................................6

*U.S. ex rel. Behnke v. CVS Caremark Corp.*, 2020 WL 1953626
  (E.D. Pa. Apr. 23, 2020) ............................................................................4

*U.S. ex rel. Farmer v. City of Houston*, 523 F.3d 333 (5th Cir. 2008)......................4

*U.S. ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262 (5th Cir. 2010)...............1

*United States ex rel. Integra Med Analytics, LLC v. Creative Sols. in Healthcare, Inc.*, No. SA-17-CV-1249-XR, 2019 WL 5970283
(W.D. Tex. Nov. 13, 2019) ............................................................................. 4, 5

*United States ex rel. McLain v. Fluor Enterprises*, No. 6-11229,
2013 WL 3899889 (E.D. La. July 29, 2013) ....................................................... 5

*United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*,
125 F.3d 899 (5th Cir.1997) ................................................................................ 1

*Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 579 U.S. 176 (2016) ............. 3

**Statutes**

31 U.S.C. §3729(a)(1)(G) ............................................................................................ 4

## II. REPLY POINTS

**A. Relator's misuse of the FCA overlooks strict interpretation and purpose of the punitive statute—those claims should be dismissed.**

1. "The FCA is not a general 'enforcement device' for federal statutes, regulations, and contracts." *U.S. ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 268 (5th Cir. 2010) (citing *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.,* 125 F.3d 899, 902 (5th Cir.1997)). The FCA is a punitive statute meant to reach claims beyond a standard breach of contract claim. *See U.S. ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 269 (5th Cir. 2010) ("[T]he underlying claim for payment is not 'false' within the meaning of the FCA if the contractor is not required to certify compliance in order to receive payment.").

2. The allegations in the SAC, merely rehearsed repeatedly in the Response, still blur the lines between FCA violations and standard breach of contract claims, fail to connect the allegations to the requisite pleading obligations under 12(b)(6) and fail to meet the heightened pleading requirement under Rule 9(b). When called upon to identify the fraud committed by Peters/MNA amongst the superfluous and non-descript allegations contained in the SAC, Relator responded as follows:

> **How**: in procuring both the March 2021 and June 2021 contracts; in submitting bids for the two contracts; in working with Darrough to submit fraudulent CQS forms; in signing the March 2021 contract; in using MNA to conceal Peters' conflict of interest and facilitate the fraudulent claims; in signing the March 2021 contract while knowing Peters would be unable to materially perform; and in failing to perform under the March 2021 contract, yet submitting claims for payment thereunder. Dkt. 46 at ¶23.

3. Relator's recitation of the "what"—the alleged actions Defendants committed—are not contained in the SAC and neglects still to point the Court to sufficient allegations to satisfy the heightened pleading requirements. Despite labeling the regurgitation of SAC allegations "affirmative acts taken by Peters/MNA" everything Relator points the Court to focuses on a failure to disclose as opposed to an affirmative certification based on intentional falsity justifying punitive action against Defendants. Dkt. 46 at ¶22. Further, the allegations cite accusations centered on *Darrough's* conduct, rather than Peters' or MNA's, just as Defendants noted in their Motion. Dkt. 36 at ¶21.

4. The alleged intentional actions committed by Peters/MNA are contained in paragraphs 124–136 of the SAC. In summary, Plaintiff alleges Peters could not be independent in her evaluation despite the conflict of interest clause in her contract with Relator and failed to deliver the report she received payment to provide. These allegations do not rise to the level of fraud required to hold Defendants liable under the FCA. Again, MNA is not a party to any contract with Relator ("MNA did not contract directly with Relator." SAC at ¶15) and thus never made any certifications of compliance with respect to a request for payment. Any claims relying on certifications, misrepresentations, or breaches of either contract should be dismissed as to MNA.

**B. Relator cannot direct the Court to sufficient allegations justifying its claim under the Theory of Implied False Certification.**

5. Relator masks its failure to sufficiently plead the requisite elements of a claim under the Theory of Implied False Certification with marathon citations to repetitive, non-specific allegations in its SAC. Relator cannot identify allegations to satisfy the two

2

requisite conditions under this theory, that is: 1) "the claim does not merely request payment, but also makes specific representations about the goods or services provided," and 2) "the defendant's failure to disclose noncompliance with material statutory, regulatory, or contractual requirements makes those representations misleading half-truths." *Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 579 U.S. 176, 190 (2016). Relator fails to identify allegations in the SAC to satisfy either element, relying upon an alleged conflict of interest in Peters' contract without connecting it to any representations made in any request for payment. Without satisfying the requisite elements, Relator's claim based upon implied false certification must be dismissed.

## C. Relator misconstrues Reverse False Claims liability under the FCA.

6. In its Response, Relator concedes its allegations of affirmative FCA claims are transposable to its reverse FCA claims, yet fails entirely to direct the Court to allegations contained in the SAC supporting the "alternative" cause of action. Dkt. 46 at ¶¶33-35. Relator claims, for the first time in the Response, that its third cause of action for liability under the FCA for a reverse false claim is a pleading in the alternative. *Id*. at ¶35. Either way, Relator fails to allege any separate or distinct actions justifying imposition of liability under the FCA for a reverse false claim.

7. The FCA "makes actionable the knowing use of a 'false record or statement to conceal, avoid, or decrease an obligation…to transmit money or property to the Government.'" *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1056 (9th Cir. 2011). In essence, a reverse false claim under the FCA targets an attempt to fraudulently reduce or decrease the amount owed to the government. *Id.* In its Response,

Relator does not hedge liability upon any unique or independent "false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government." 31 U.S.C. §3729(a)(1)(G). Rather, Relator's claims against Defendants arise not from any alleged misrepresentation as to a separate or distinct amount of money Defendants allegedly withheld or concealed owed **_to_** the government, but rather alleged misrepresentations Defendants made in the procurement of funds **_from_** the government. Dkt. 22 at ¶141.

8. In essence, the *only* government money at issue, as per the SAC, are the payments made to Defendants (Dkt. 22 at ¶123) that Defendants are alleged to have failed and refused to return. This is precisely the scenario courts have found fails to plausibly establish a reverse false claim under § 3729(a)(1)(G). *U.S. ex rel. Behnke v. CVS Caremark Corp.*, 2020 WL 1953626, at *10 (E.D. Pa. Apr. 23, 2020). A reverse false claim allegation is not an alternative theory of liability but rather, a separate and distinct cause of action for which the SAC in entirely devoid of any factual allegations or support.

**D. Relator cannot establish Conspiracy to Violate the FCA.**

9. In the context of FCA conspiracy claims, the Fifth Circuit has held that specific evidence of intent to defraud the government is required. *See U.S. ex rel. Farmer v. City of Houston*, 523 F.3d 333, 343 (5th Cir. 2008). In the context of a motion to dismiss, Relator must plead facts showing specific intent to defraud the Government. *United States ex rel. Integra Med Analytics, LLC v. Creative Sols. in Healthcare, Inc.*, No. SA-17-CV-1249-XR, 2019 WL 5970283, at *12 (W.D. Tex. Nov. 13, 2019). In *Integra Med*, the Court found that, despite pleading facts as to one alleged conspirator's actions in furtherance of

submission of false claims, Relator failed to "plead that an unlawful agreement arose among [the] parties." *Id*. (citing *United States ex rel. McLain v. Fluor Enterprises*, No. 6-11229, 2013 WL 3899889 (E.D. La. July 29, 2013) (finding plaintiff inadequately pleaded conspiracy where plaintiff did not provide "any indication that any of the parties actually agreed to enter into the alleged conspiracy")). A Relator must plead facts evidencing more than the mere possibility of an agreement among the parties. *Id.*

10. In its Response, Relator directs the Court to seven bullet points reciting allegations from the SAC, of which the majority focus only on the alleged actions of Darrough alone. Dkt. 46 at ¶37. The remaining citations are founded upon baseless assumptions hedged carefully and without evidence:

    a. "Darrough acted in concert with Co-Defendants…"

    b. "On information and belief, the Defendants further benefitted…"

    c. "…but on information and belief Darrough, along with Corrales and Peters, received financial and career benefit…"

11. Notably, Plaintiff cannot identify any allegations contained in the SAC of a specific intent or agreement amongst Defendants to defraud the Government. Relator was called upon to cite to the evidence in its SAC in support of a shared specific intent to defraud the Government and failed to identify, as Defendants' Motion pointed out, sufficient evidence of its claim for conspiracy under the FCA. Relator's fourth cause of action should be dismissed.

### E. The Public Disclosure Bar Precludes Relator's FCA Claims.

12. Plaintiffs' FCA claims center on an alleged undisclosed relationship with Darrough. Dkt. 46 at ¶45. Defendants' Motion directs the Court to the public disclosure of Defendants' relationship, which, as Plaintiffs claim, culminated in the allegedly fraudulent acts it pursues in this litigation. Dkt. 36 at ¶11. At the very least, the relationship between Darrough and Peters was publicly disclosed, and any claims based upon Relators' reliance on such alleged "non-disclosure" should be dismissed.

### F. Plaintiffs Fifth, Sixth, and Twelfth Claims for Relief cannot be maintained aside Relator's Statutory and Contractual claims.

13. Relator's overreach in the twelve causes of action pled against Defendants in this suit is evident in its claims for Unjust Enrichment, Payment by Mistake, and Money Had and Received. These claims are based upon the same damages Relator claims under its FCA and breach of contract claims. Dkt. 22 at ¶¶192, 196, 206.

14. Relator's claims center on the theory that everything paid pursuant to the contracts or agreements should be remitted because of an alleged undisclosed conflict of interest and/or failure to perform. These allegations are not akin to the overpayment claims which survived dismissal in the Texas cases relied upon by Realtor in its Response. In *Southwest Electric, Staats*, and *Gulf Oil*, all relied upon in the Response, Plaintiffs sought, under equitable theories like those raised here by Relator, refunds for overpayment under otherwise valid contracts. *See Southwestern Elec. Power Co. v. Burlington Norther Railroad Co.*, 966 S.W.2d 467, 470 (1998); *Staats v. Miller*, 243 S.W.2d 686, 687-88 (1951); *Gulf Oil Corp. v. Lone Star Producing Co.*, 322 F.2d 28, 31-33 (5th Cir. 1963).

15. Relator's quasi-contractual claims cannot coexist with Relator's allegations that a contract between the parties governed payments exchanged. *See Fortune Prod. Co. v. Conoco, Inc*. 52 S.W.3d 671, 684 (Tex. 2000). The existence of two written contracts is an undisputed fact. Dkt. 22 at ¶¶120-23. Thus, when Relator claims it requires Defendants "concede on the record that a valid contract exists between the parties," (Dkt. 46 at ¶52), Relator attempted to impose non-existent requirements on Defendants' right to dismissal of the superfluous quasi-contractual claims. Those claims should be dismissed.

G. **Breach of Contract and Covenant of Good Faith and Fair Dealing**

1. **Breach of Contract Claims are Unclear and Muddled Amongst a Dozen Other Allegations and Fail to Provide Fair Notice to Defendants.**

16. Relator still fails in its Response to identify the requisite elements of breach of contract contained within the SAC giving fair notice to Defendants of its claim. In order to maintain a breach of contract claim against Defendants, Relator must identify the contract and the alleged breach—it did neither. *See Smith Int'l, Inc. v. Egle Grp.*, LLC, 490 F.3d 380, 387 (5th Cir. 2007). Relator fails to identify which contract the Defendants allegedly breached and how, nor does Relator specify the damages arising from the alleged breach. Dkt. 22 at ¶¶195-196. While Relator asserts in its Response that Defendants can merely meander through the one-hundred and ninety-four (194) paragraphs preceding is breach of contract claim in the SAC to locate facts sufficient to maintain the breach of contract claim (Dkt. 46 at ¶55), the preceding 194 paragraphs do not contain a short and plain statement of the claim required under Rule 12(b)(6). This is apparent, as Relator attempts in its Response to gather and stretch vague allegations into a succinctly pled cause

of action because the SAC is devoid of just that. Relator fails to incorporate allegations or references to any contract beyond that contained in its allegations related to FCA claims against Defendants. Dkt. 22 at ¶¶121, 123, 125-126, 128-134. Further, Relator all but acknowledges it has failed to plead any breach of contract claim against MNA: "MNA did not contract directly with Relator." Dkt. 22 at ¶15.

> 2. **No Allegation of a Special Relationship Giving Rise to any Extra-Contractual Duty Sounding in Tort—Good Faith and Fair Dealings Claim Should be Dismissed.**

17. Relator further fails to point the Court to sufficient allegations of a special relationship to justify its cause of action for Breach of the Covenant of Good Faith and Fair Dealing. Relator cites to SAC paragraphs that fail to establish any duty or special relationship existed between the parties. As explained in the Motion, Texas does not recognize or impose an "implied covenant of good faith and fair dealing in every contract" but instead requires "a special relationship between the parties." *See Godfrey v. Sec. Serv. Fed. Credit Union*, 356 S.W.3d 720, 726 (Tex. App.—El Paso 2011) (citing *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 697 (Tex. 1994); *City of Midland v. O'Bryant*, 18 S.W.3d 209, 215 (Tex. 2000)); *see also Arnold v. Nat'l Cnty. Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987). While the Response directs the Court to allegations relating to Defendants' contractual obligations, it fails to identify, because none exist, any allegations related to a special relationship or duty Defendants owed to Relator beyond contractual obligations.

18. Texas Courts recognize two types of special relationships arising from contract: "(1) a fiduciary relationship arising from an element of trust necessary to

accomplish the goals of the contract; and (2) a special relationship based on extra-contractual duties arising from an imbalance of bargaining power." *Prime Prod., Inc. v. S.S.I. Plastics, Inc.*, 97 S.W.3d 631, 638 (Tex. App.—Houston [1st Dist.] 2002). The SAC is devoid of allegation or evidence of either, because neither such relationship exists. This cause of action should be dismissed.

## H. Fraud and Fraud by Nondisclosure do not Survive Dismissal.

19. Relator's fraud claims are devoid of the requisite particularity required under Rule 9(b)'s heightened pleading standards, as addressed herein above. Supra, ¶¶5–9. Further, Relator failed to plead, and cannot direct the Court in its Response, to sufficient facts establishing facial plausibility required under Rule 12(b)(6). Relator fails to identify how the SAC and allegations therein satisfy the requisite elements, as addressed herein above. Supra, ¶¶5–9. For the same reason Relator's FCA claims should be dismissed, so too should Relator's common claims of Fraud and Fraud by Non-Disclosure.

## I. Intent Absolutely Required for Violation of TTLA.

20. Relator's Response discredits legal authority cited by Defendants, boldly pronouncing the criminal cases cited by Defendants offered no insight into TTLA civil liability: "These criminal requirements are very different from TTLA's civil liability, and the TTLA is not considered in either opinion." Dkt. 46 at ¶66. Relator then confidently relies upon the definition of intent from the Texas Penal Code. *Id*. at ¶68.

21. Intent is absolutely required, otherwise the TTLA creates automatic, strict liability for breach of contract, without regard to intent to deprive. To sustain a claim against Defendants under the TTLA, Plaintiff must allege sufficient facts evidencing

Defendants' intent not to perform or deliver at the time the parties contracted. *See Holcomb v. State*, 445 S.W.3d767, 782 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd). This is true, whether in the context of criminal or civil liability for theft. *See Porter–Garcia v. Travis Law Firm, P.C.*, 564 S.W3d 75, 91 (Tex. App.—Houston [1st Dist.] 2018, pet. denied). Here, Relator has failed to plead that Peters or MNA possessed such intent at the time the parties contracted and thus, this claim should be dismissed under Rule 12(b)(6).

### J. Plaintiff's Civil Conspiracy does not Survive Dismissal.

22. Relator's Civil Conspiracy claim for the underlying torts of fraud, fraud by non-disclosure and breach of contract claims should be dismissed for the same reasons Relator's FCA conspiracy claim should be dismissed as discussed herein above: (1) Relator failed to plead facts evidencing an agreement amongst Defendants (Supra, ¶¶15–17) and (2) Relator failed to plead the underlying tort claims under Rules 12(b)(6) or with sufficient particularity (Supra ¶¶24–28). The SAC is devoid of any allegations of an agreement or meeting of the minds amongst Defendant, as evidenced by Relator's failure to identify any in its Response. *See* Dkt. 46 at ¶37.

### III. CONCLUSION AND PRAYER

Plaintiff has failed to sufficiently plead a claim upon which relief may be granted under the Federal Rules of Civil Procedure. Defendants ask that all claims and parties be dismissed from this case, Relator be denied another opportunity to amend its Second Amended Complaint, and for all other relief to which they show themselves entitled at equity or law.

Respectfully submitted,

**GREER, HERZ & ADAMS, L.L.P.**

By: */s/ Andrew J. Mytelka*
    **Andrew J. Mytelka**
    Attorney-in-Charge
    State Bar No. 14767700
    Fed. ID No. 11084
    amytelka@greerherz.com
    **Jordan Raschke Elton**
    State Bar No. 24108764
    Fed. ID No. 3712672
    jraschke@greerherz.com
    One Moody Plaza, 18th Floor
    Galveston, Texas 77550
    (409) 797-3200 (Telephone)
    (866) 422-4270 (Facsimile)

    **COUNSEL FOR DEFENDANTS MICHELLE PETERS, AND MNA EVALUATION & ASSESSMENT, LLC**

## **CERTIFICATE OF SERVICE**

I certify that on the 1st day of July, 2024, a copy of this document was served on all counsel of record via the court's ECF system.

                                            */s/ Andrew J. Mytelka*