# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* BakerRipley, | )<br>)<br>) |
| Plaintiffs/Relator, | )<br>) |
| v. | ) Case No. 23-cv-1124<br>) |
| Kids U US, Inc. d/b/a Fueling Brains;<br>Cimberli Johnson Darrough;<br>Antonio Corrales;<br>Sterling Evaluation and Assessment, LLC;<br>Michele Peters; and<br>MNA Evaluation and Assessment, LLC, | ) ORAL ARGUMENT<br>) REQUESTED<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

## REPLY IN SUPPORT OF
## DEFENDANT KIDS U US, INC. d/b/a FUELING BRAINS'
## MOTION TO DISMISS SECOND AMENDED COMPLAINT

**INTRODUCTION**

Relator's Opposition to Fueling Brains' Motion to Dismiss (ECF 45) is heavy on hyperbole but light on substance. Rather than meaningfully grapple with the arguments in Fueling Brains' motion, Relator opts to regurgitate large portions of the SAC, without explaining why those cut-and-pasted allegations satisfy the pleading requirements. And where Relator does attempt to respond to Fueling Brains' arguments, it relies on misguided legal theories and inapposite case law.

Relator's opposition confirms its affirmative False Claims Act ("FCA") claims are deficiently pled. *First*, Relator concedes that to prevail on its FCA claim related to Fueling Brains' alleged partial contract performance, it must show that Fueling Brains never intended to perform when it submitted its proposal, but the SAC is utterly devoid of any such allegations. *Second*, Relator's defense of its kickback theory relies entirely on case law involving the Anti-Kickback Statute, a law that applies exclusively to healthcare providers and has no applicability to the procurement of educational services under a federal grant. *Third*, Relator still has not identified any conflict-of-interest requirements to which Fueling Brains was subject, relying instead on provisions applicable only to Relator itself as the Head Start grantee.

Relator's additional claims also fail. Relator argues that it can plead its reverse FCA claims in the alternative, but courts have consistently rejected that argument when reverse FCA claims are based on the failure to refund the same monies obtained through the initial allegedly fraudulent claims. Courts have also rejected Relator's argument that it can plead quasi-contract claims in the alternative; as Relator's cases make clear, quasi-contract claims may be pled only when a plaintiff alleges no enforceable contract existed.

For the reasons discussed below and in Fueling Brains' motion, the Court should dismiss all of Relator's claims, except for its breach of contract claim (Count Seven), with prejudice.

**ARGUMENT**

I. **Relator's Affirmative FCA Claims Related to Services Fueling Brains Provided Should be Dismissed**

   A. **Relator Has Not Alleged That Fueling Brains Never Intended to Perform**

Relator does not dispute that to maintain an FCA claim related to Fueling Brains' provision of services, Relator must show that the promises in Fueling Brains' proposal were false when made. *See* ECF 45 at 14. To do so, Relator must allege facts to support that Fueling Brains never intended to perform *at the time of its proposal*. Mot. to Dismiss at 9-10 (ECF 34).[1] Relator does not (and cannot) point to any such allegations in the SAC. Although Relator's opposition contains conclusory assertions that Fueling Brains "never intended" to perform, that its "program was a sham," and that it "had every intention of falling short of its obligations from the beginning," ECF 45 at 16, the SAC lacks facts to support this rhetoric. Indeed, the SAC admits Fueling Brains partially performed, *see* SAC ¶¶ 73, 80, which is plainly inconsistent with an assertion that it never intended to perform. Accordingly, Relator's FCA claims related to Fueling Brains' alleged failure to provide promised services must be dismissed as they fail to meet Rule 8(a)'s plausibility standard—much less Rule 9(b)'s heightened standard. *See MacDermid Offshore Sols., LLC v. Niche Prod., LLC*, No. 4:12-CV-02483, 2013 WL 12140408, at *2 (S.D. Tex. Jan. 16, 2013)).

The closest Relator comes to addressing this fundamental pleading deficiency is a series of convoluted and unpled statements about Fueling Brains supposedly charging more than the proposed cost of its services. Relator's opposition asserts that "after learning the [Relator's] and Federal government's internal policies from Darrough, Fueling Brains amended its proposal and

---

[1] Contrary to Relator's assertion, *see* ECF 45 at 5, while Fueling Brains recognizes that Relator has plausibly *pled* a breach of contract claim, Fueling Brains disputes that it breached any contract. Fueling Brains is confident the evidence will show that it substantially performed all contracts with Relator, and it was Relator that breached those agreements.

represented to [Relator] its program would cost only $100,000. . . . But Fueling Brains submitted invoices totaling $300,000." ECF 45 at 14.  It further states that "[t]herefore, from the beginning, Fueling Brains intended on being paid $200,000 more than it originally contracted for without providing more services, or even the original services it was obligated to provide." *Id*.; *see id.* at 16 ("Fueling Brains never intended on performing its services for $100,000 as contracted.").[2]

Even if these new assertions regarding Fueling Brains' price were relevant to its intent to provide the underlying services (which they are not), they are inconsistent with the SAC.  The SAC alleges that Fueling Brains proposed to provide services for 3,000 students for a cost of $300,000, SAC ¶ 60, and Fueling Brains subsequently billed $300,000, *id.* ¶ 68.  It alleges that *Darrough* violated Relator's internal procurement procedures by submitting an internal request, which Relator refers to as a "CQS form," for $100,000, and then issuing a purchase order to Fueling Brains for that amount.  *Id.* ¶¶ 63-64.  In response to the purchase order issued by Relator, Fueling Brains submitted an invoice for $100,000.  *Id.* ¶ 67.  Nowhere in the SAC does Relator allege that Fueling Brains represented that its program would cost only $100,000, let alone that it modified its proposal after learning about Relator's internal policies from Darrough.  "[A] complaint cannot be amended by briefs in opposition to a motion to dismiss[,]" *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 761 F. Supp. 2d 504, 566 (S.D. Tex. 2011), and the SAC lacks any allegations that suggest Fueling Brains intended to fraudulently increase its price.

## B. The Cases Relator Cites Do Not Apply Here

In an effort to fit the square peg of its breach of contract case into the round hole of an FCA claim, Relator relies on inapposite case law.  Relator cites *U.S. ex rel. Parikh v. Citizens Medical*

---

[2] Relator's opposition also makes a passing reference to an intent not to provide "even the original services," *id.* at 14, but it points to no facts in the SAC that support that assertion.

*Center*, 977 F. Supp. 2d 654, 664 (S.D. Tex. 2013), for the proposition that billing for a service not provided can violate the FCA. ECF 45 at 6. Although *Parikh* itself did not involve allegations that the defendant failed to provide goods or services, the case it cites underscores why Relator's allegations are deficient. There, the court noted that a "physician will be liable if he submits claims to the Government for surgeries or procedures that the physician did not perform." *U.S. ex rel. El-Amin v. George Washington Univ.*, 522 F. Supp. 2d 135, 141 (D.D.C. 2007). In that situation, each surgery corresponded to a specific claim for payment, and if the physician did not perform the surgery, billing for it could give rise to an FCA action. But that is not what Relator alleges here. Relator alleges that Fueling Brains proposed to provide an extensive array of educational services and billed for the cost of the program in installments. Relator does not allege that the parties agreed to milestones that had to be achieved or specific services that had to be provided before each invoice was submitted. Nor does Relator allege that any invoice represented with specificity which services had been provided and which were still outstanding. Without such an allegedly fraudulent representation on the invoices, Relator cannot sustain an FCA claim by alleging that Fueling Brains ultimately did not fully and satisfactorily perform. For Fueling Brains' alleged partial performance to constitute fraud, Relator must show Fueling Brains did not intend to perform at the time it submitted its proposal. The SAC lacks such allegations.

Relator next cites cases to support the proposition that withholding information about noncompliance with a contract requirement can serve as the basis for an "implied false certification" FCA claim. The Supreme Court has made clear, however, that two conditions must be met for liability to attach under that theory: "first, the claim does not merely request payment, but also makes specific representations about the goods or services provided; and second, the defendant's failure to disclose noncompliance with material statutory, regulatory, or contractual

requirements makes those representations misleading half-truths." *Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 579 U.S. 176, 190 (2016). The mere act of submitting a claim does not constitute a representation of compliance with all potentially applicable statutes, regulations, and contract terms. *See, e.g.*, *U.S. ex rel. Barko v. Halliburton Co.*, 241 F. Supp. 3d 37, 58-59 (D.D.C. 2017). Here, the SAC does not satisfy either *Escobar* condition. Nowhere does it identify any specific representations on Fueling Brains' invoices. Nor does it allege Fueling Brains failed to comply with any statute, regulation, or contract term that rendered its specific representations misleading half-truths. Without these essential elements, Relator cannot sustain an FCA claim based on the implied false certification theory of liability.

## II. Relator's Kickback Theory Fails

The thrust of Relator's argument with respect to its kickback theory is that Fueling Brains made "referral payments" that are unlawful under the Anti-Kickback Statute ("AKS"), 42 U.S.C. § 1320a-7b. *See* ECF 45 at 17 ("When an FCA claim alleges a kickback scheme, courts look to the Anti-Kickback Statute."). Relator's argument fails for a simple reason: the AKS does not apply to the procurement of educational services under a federal grant. The AKS applies only to healthcare providers, *see* 42 U.S.C. § 1320a-7b(f) (AKS applies only to "Federal health care program[s]"), and its purpose is to "protect federal health care programs from 'increased costs and abusive practices resulting from provider decisions that are based on self-interest rather than cost, quality of care or necessity of services.'" *U.S. ex rel. Suarez v. AbbVie, Inc.*, 503 F. Supp. 3d 711, 723 (N.D. Ill. 2020); *see also* 133 Cong. Rec. H4061-02, 1987 WL 938753 (stating the bill would "protect Federal health benefits programs from fraud and other abuses"). Fueling Brains is not a healthcare provider. The AKS thus is wholly inapplicable and Relator's exclusive reliance on AKS cases, *see* ECF 45 at 17-23, is misguided.

While a separate statute—the Anti-Kickback Act ("AKA"), 41 U.S.C. §§ 87 *et seq.*—does

prohibit the payment of kickbacks in connection with certain procurements, Relator has not and cannot allege an FCA claim based on the AKA. Relator does not allege that the AKA's prohibition was incorporated into its contract with Fueling Brains, and courts in this Circuit have observed there is no authority for the proposition that a "violation of the AKA," which has no connection to claims for payment, "can serve as a basis for an FCA claim." *U.S. ex rel. Haight v. RRSA (Commercial Div.), LLC*, No. 16-cv-1975, 2020 WL 6163139, at *5 & n.12 (N.D. Tex. Oct. 20, 2020). To plead an *FCA* claim, Relator must both "tie . . . acceptance of kickbacks to [Fueling Brains'] submitted claims for payment," and allege facts that show Fueling Brains "actually passed [the kickback costs] on to the government." *U.S. ex rel. Vavra v. Kellogg Brown & Root, Inc.*, 903 F. Supp. 2d 473, 486-87 (E.D. Tex. 2011), *rev'd on other grounds*, 727 F.3d 343 (5th Cir. 2013). Relator does not even attempt to argue that the SAC passes muster under this standard.

Finally, even if Relator had plausibly alleged a kickback theory, Relator's opposition only underscores that it has not pled kickbacks with the particularity required by Rule 9(b). For example, Relator contends it has pled the "who" of the kickback scheme: "all Defendants, including Fueling Brains" participated in a "kickback scheme." ECF 45 at 18. This plainly fails to satisfy Rule 9(b), which requires a relator to specify the allegedly wrongful conduct attributable to *each* defendant and prohibits group pleading. *See U.S. ex rel. Hebert v. Dizney*, 295 F. App'x 717, 722 (5th Cir. 2008). While Relator generally contends that Fueling Brains "paid referral sources" "[d]uring the COVID-19 pandemic," Relator has not identified specific dates when specific alleged referral payments were made. *See U.S. ex rel. Paul v. Biotronik, Inc., No.* 8:18-CV-396-T-36JSS, 2021 WL 211474, at *3 (M.D. Fla. Jan. 21, 2021). And crucially, Relator does not specify the link between any alleged referral payments and claims of payments to the government, as is required. *See U.S ex rel. Bennett v. Medtronic, Inc.*, 747 F. Supp. 2d 745, 765

(S.D. Tex. 2010). The affidavits attached to the SAC do not change the calculus: they do not identify any specific referral payment, made on a specific date, that resulted in a specific fraudulent claim for payment to the government. Without these details, Relator cannot maintain FCA claims based on a kickback theory.[3]

### III. Relator Fails to Identify Any Authority To Support an FCA Theory Related to Conflicts of Interest

Relator's FCA claim based on Fueling Brains' alleged conflicts of interest should be dismissed because Relator has not identified any conflict-of-interest requirements applicable to Fueling Brains. Rather than address the SAC's mischaracterization of Head Start regulations highlighted in Fueling Brains' brief, ECF 37 at 17, Relator repeats the mischaracterization. The Head Start Act does not "strictly prohibit[] 'any conflict of interest . . . by . . . consultants and agents who provide services or furnish goods to the Head Start agency.'" ECF 45 at 23. It requires the Head Start grantee's *governing body* to refrain from conflicts of interest and further requires the governing body to establish written standards of conduct governing conflicts of interest. *See* 42 U.S.C. § 9837(c)(1)(E) (specifying that "the governing body shall" and then listing several tasks, including promulgating conflict-of-interest standards). The statute itself does not create conflict-of-interest standards that apply to consultants or vendors who provide services under the

---

[3] Relator's assertion that it can plead an FCA claim based on "information and belief" is incorrect. The case on which Relator relies expressly declined to "relax Rule 9(b) in the context of *qui tam* suits," explaining that the FCA "grants a right of action to private citizens only if they have independently obtained knowledge of fraud," and relaxing the particularity requirement would give a relator a "ticket to the discovery process that the statute itself does not contemplate." *U.S. ex rel. Russell v. Epic Healthcare Mgmt. Grp.*, 193 F.3d 304, 309 (5th Cir. 1999). The court further explained that "information and belief" pleading is appropriate in *qui tam* suits only where the information is "peculiarly within the [defendant's] knowledge." *See id.* That plainly is not the case here. Darrough was Relator's own senior employee, and Relator purportedly conducted an exhaustive internal investigation of her conduct, including her interactions with Fueling Brains. If there were evidence that Fueling Brains paid kickbacks (which there is not), that information would not be peculiarly within Fueling Brains' knowledge.

Head Start program. The Head Start regulation Relator relies on similarly provides that a "non-Federal entity must maintain written standards of conduct covering conflicts of interest," 45 C.F.R. Part 75, § 75.327(c)(1). A "non-federal entity" is a "state, local government, Indian tribe, institution of higher education (IHE), or nonprofit organization that carries out a Federal award as a recipient or subrecipient." 45 C.F.R. Part 75, § 75.2. Thus, while this imposes an obligation *on Relator* to maintain conflict of interest policies, it imposes no obligation on Fueling Brains.

Relator admits it did not incorporate conflict-of-interest provisions into its agreements with Fueling Brains. *See* ECF 45 at 24. Without the necessary predicate for its conflict-of-interest FCA claim, Relator tries to conjure it out of thin air, claiming "[i]t should . . . be clear to the Court that the inexplicable lack of Fueling Brains signing the normal contract documents . . . is simply part of the fraud employed by Darrough and Fueling Brains, working in union, circumventing Baker Ripley's processes and controls." *Id.* Setting aside that the SAC lacks any factual support for these musings, Relator offers no authority to support its argument that the Court can read a requirement into Fueling Brains' contract and sustain an FCA claim based on an alleged violation of that non-existent provision.[4]

## IV. Relator Cannot Proceed on Affirmative and Reverse FCA Theories for the Same Claims

Relator does not dispute that a reverse false claim action under 31 U.S.C. § 3729(a)(1)(G) is not actionable when it is based on a defendant's failure to refund payments that make up the

---

[4] Indeed, the cases Relator cites involved *contractual* conflict-of-interest requirements. *See United States v. Sci. Applications Int'l Corp.*, 555 F. Supp. 2d 40, 44 (D.D.C. 2008) ("SAIC promised in both contracts to forego entering into any consulting or other contractual arrangements . . . that could create a conflict of interest"); *U.S. ex rel. Harrison v. Westinghouse Savannah River Co.*, 352 F.3d 908, 910–11 (4th Cir. 2003) (defendant "certified . . . that no organizational conflicts of interest (OCI) existed"); *U.S. ex rel. Ervin & Assocs., Inc. v. Hamilton Sec. Grp., Inc.*, 370 F. Supp. 2d 18, 52 (D.D.C. 2005) (contract defined and prohibited "organizational conflict of interest").

basis for an affirmative FCA action. *Compare* ECF 34 at 18-19 (explaining that Relator's reverse FCA claims are not actionable), *with* ECF 45 at 24-25 (not disputing that Relator is recasting its affirmative false claims, and arguing only that they are "pled in the alternative"). Relator's attempt to salvage its reverse FCA claim by asserting that it may plead reverse and affirmative theories "in the alternative" is unavailing. The one case Relator cites, *United States v. United Techs. Corp.*, No. C-3-99-093, 2000 WL 988238, at *2 (S.D. Ohio Mar. 20, 2000), is about whether state common law claims may be pled in the alternative of FCA claims. It does not address whether claims under § 3729(a)(1)(G) can be alleged in the alternative of claims under § 3729(a)(1)(A).

The lack of *any* case permitting a relator to allege "in the alternative" a cause of action under § 3729(a)(1)(G) based on failure to refund monies obtained through false claims actionable under § 3729(a)(1)(A) is unsurprising. Courts "consistently dismiss[] [such] [reverse FCA] claim[s] as redundant." *United States v. Kinetic Concepts, Inc.*, 2017 WL 2713730, at *13 (C.D. Cal. Mar. 6, 2017); *see also* ECF 34 at 18-19. Stated differently, a relator fails to "plausibly allege a violation of § 3729(a)(1)(G)" when it "recast[s] [its] false statement claim by essentially alleging that the defendant failed to refund the false claims that the government paid." *U.S. ex rel. Behnke v. CVS Caremark Corp.*, No. CV 14-824, 2020 WL 1953626, at *10 (E.D. Pa. Apr. 23, 2020). That is all Relator does here so its reverse FCA claims should be dismissed.

## V.     Relator's Common Law Quasi-Contract Claims Should be Dismissed.[5]

The cases Relator cites to support its state law quasi-contract claims are inapplicable. First, Relator cites cases related to restitution for overpayments made on a contract. *See* ECF 45 at 31-

---

[5] For the reasons discussed above and in Fueling Brains' Motion, Relator's common law fraud claims should be dismissed because they fail Rule 9(b). Likewise, Relator's theft claim fails because Relator does not allege facts that plausibly show Fueling Brains intended to deprive Relator of property when it entered into its contract. *See* ECF 34 at 21-24.

32. But the SAC does not allege that Fueling Brains charged Relator in excess of the amounts agreed upon for its services; instead the SAC alleges that Fueling Brains breached its contract by performing partially or unsatisfactorily. Since Relator does not seek restitution for alleged overcharges, the cases related to restitution are irrelevant.

And while Relator claims that unjust enrichment can be pled in the alterative to a breach of contract claim, the case it cites, ECF 45 at 32, says the opposite. It allowed a quasi-contract claim to go forward only because the plaintiff had shown there was "no enforceable contract between the parties." *See Peters v. Norwegian Cruise Line Ltd.,* No. 01-05-00906-CV, 2007 WL 1633555, at *10 (Tex. App.—Houston [1st Dist.] June 7, 2007, no pet.). Texas courts consistently dismiss quasi-contract claims when an enforceable contract exists, and because Relator alleges such a contract existed here, its quasi-contract claims should be dismissed. S*ee, e.g.*, *U.S. ex rel. Campbell v. KIC Development, LLC*, No. EP-18-CV-193-KC, 2019 WL 6884485, at *17 (W.D. Tex. Dec. 10, 2019).

## **CONCLUSION**

For all of these reasons and those in Fueling Brains' motion, the Court should dismiss all counts in the SAC with prejudice, with the exception of Count Seven (Breach of Contract).

Dated: July 1, 2024

Respectfully Submitted,

*/s/ Allissa Pollard*
Allissa Pollard
Attorney-in-charge
Texas Bar No. 24065915
Southern District of Texas Bar No. 982820
**ARNOLD & PORTER KAYE SCHOLER LLP**
700 Louisiana St., Suite 4000
Houston, TX 77002
Tel.: (713) 576-2400
Fax: (713) 576-2499
Allissa.Pollard@arnoldporter.com

Randy Miller
Of counsel *(Pro Hac Vice pending)*
Colorado Bar No. 33694
**ARNOLD & PORTER KAYE SCHOLER LLP**
1144 Fifteenth St., Suite 3100
Denver, CO 80202
Tel.: (303) 863-1000
Fax: (303) 863-2301
Randy.Miller@arnoldporter.com

Christian Sheehan
Of counsel *(Pro Hac Vice)*
District of Columbia Bar No. 1045233
Megan Pieper
Of counsel *(Pro Hac Vice)*
District of Columbia Bar No. 1644966
**ARNOLD & PORTER KAYE SCHOLER LLP**
601 Massachusetts Ave, NW
Washington, DC 20001
Tel.: (202) 942-5000
Fax: (202) 942-5999
Christian.Sheehan@arnoldporter.com
Megan.Pieper@arnoldporter.com

**ATTORNEYS FOR DEFENDANT**
**KIDS U US, INC. d/b/a FUELING BRAINS**

## CERTIFICATE OF SERVICE

I hereby certify that on July 1, 2024, the foregoing document was electronically filed with the Clerk of Court using CM/ECF.

>Respectfully Submitted,
>
>*/s/ Allissa Pollard*
>Allissa Pollard