# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| United States of America, ex rel. BakerRipley 4450 Harrisburg, Suite 200 Houston, TX 77011 <br><br> & BakerRipley <br>         Plaintiffs <br><br> v. <br><br> Kids U US, Inc. d/b/a Fueling Brains, Cimberli Johnson Darrough, an individual, Antonio Corrales, an individual, Sterling Evaluation and Assessment, LLC, Michele Peters, an individual, and MNA Evaluation and Assessment, LLC <br>         Defendants | § § § § § § § § § § § § § § § § § § § | Case No. 23-CV-1124 |

### CORRALES DEFENDANTS' REPLY TO RELATOR'S RESPONSE
### TO CORRALES DEFENDANTS' MOTION TO DISMISS RELATOR'S
### SECOND AMENDED COMPLAINT

TO THE HONORABLE JUDGE LEE ROSENTHAL:

Defendant Antonio Corrales ("Dr. Corrales") and Sterling Evaluation and Assessment, LLC (collectively, the "Corrales Defendants") file this Reply to Plaintiff/Relator Baker's Response [Dkt. 47] to Corrales Defendants' Motion to Dismiss Relator's Second Amended Complaint ("SAC") [Dkt. 33], and in support would respectfully show as follows:

# I. TABLE OF CONTENTS

I. TABLE OF CONTENTS ……………………………………………………2

II. TABLE OF AUTHORITIES……………………………………………….3

III. ARGUMENT ………………………………………………………………5

    A. Relator Failed to Address How Its SAC Meets FRCP 9(b)'s "Particularity" Pleading Requirement……………………………………5

    B. The Theory of Implied False Certification Does Not Require Compliance With Every Potential Statutory or Regulatory Provision………6

    C. Corrales Defendants are Not Bound by the Head Start Act's Conflict of Interest Provisions …………………………………………………7

    D. Relator Fails to Respond to Corrales Defendants' Argument Against Violations Under the Anti-Kickback Act ……………………………8

    E. Relator Mischaracterizes Case Law in Support of Its Argument Against the Applicability of the Public Disclosure Bar…………………8

    F. Relator Cannot Transform Affirmative FCA claims to Reverse False Claims…………………………………………………………………9

    G. Relator's FCA Conspiracy Claims are Insufficient to Reasonably Infer an Agreement to Defraud the Government …………………………10

    H. Common Law Claims Failure to Meet FRCP 12(b)(6) and 9(b) Pleading Standards …………………………………………………11

        (1) Fraud, Fraud by Nondisclosure, and Civil Conspiracy Claims ………11

        (2) Relator's Quasi-Contractual Claims Fails Because Valid Contracts Govern the Issues in Dispute …………………………………13

        (3) Relator Does Not Demonstrate Sufficient Facts to Support Its TTLA Claim ……………………………………………………13

IV. REQUEST FOR RELIEF ………………………………………………14

# II. TABLE OF AUTHORITIES

**CASES**

*Archer v. Griffith*,
    390 S.W.2d 735 (Tex. 1964)......................................................................................12

*Fed. Recovery Services, Inc. v. United States*,
    72 F.3d 447 (5th Cir. 1995) ........................................................................................ 9

*Glaser v. Wound Care Consultants, Inc.*,
    570 F.3d 907 (7th Cir. 2009) ................................................................................. 8, 9

*Holcomb v. State*, 445 S.W.3d 767,
    (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) ..................................................13

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
    762 F. Supp. 2d 942 (S.D. Tex. 2010) ....................................................................13

*Neukranz v. Conestoga Settlement Servs., LLC*,
    No. 3:19-CV-1681-L, 2022 WL 19518462 (N.D. Tex. Nov. 23, 2022) ................12

*Pace v. Cirrus Design Corp.*,
    No. 22–60603, 2024 WL 739343 (5th Cir. Feb. 23, 2024)....................................11

*Porter–Garcia v. Travis Law Firm, P.C.*,
    564 S.W3d 75 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) .....................13

*U.S. ex rel. Davis v. District of Columbia*,
    679 F.3d 832 (D.C. Cir. 2012) ................................................................................. 9

*U.S. ex rel. Fowler v. Caremark RX, L.L.C.*,
    496 F.3d 730 (7th Cir. 2007) .................................................................................... 8

*U.S. ex rel. Grubbs v. Kanneganti*,
    565 F.3d 180 (5th Cir. 2009) .................................................................................... 8

*U.S. ex rel. Ligai v. ESCO Techs., Inc.*,
    611 Fed. Appx. 219 (5th Cir. 2015).........................................................................10

*U.S. ex rel. Ligai v. ETS–Lindgren Inc.*,
    No. CIV.A. H-112973, 2014 WL 4649885, at *13 (S.D. Tex. Sept. 16, 2014) ................... 10

*U.S. ex rel. Longhi v. U.S.*,
    575 F.3d 458 (5th Cir. 2009) ................................................................................................ 6

*U.S. v. Bracco USA, Inc.*,
    No. 20CV8719 (EP) (JSA), 2022 WL 17959578 (D.N.J. Dec. 27, 2022) ........................... 10

*U.S. v. Science Application Intern. Corp.*, 555 F. Supp. 2d 40, 43 (D.D.C. 2008) ............................. 7

*United States ex rel. Barko v. Halliburton Co.*,
    241 F. Supp. 37 (D.D.C. 2017) ............................................................................................ 7

*Universal Health Services, Inc. v. United States*,
    579 U.S. 176, 136 S. Ct. 1989, 195 L. Ed. 2d 348 (2016) ................................................... 6

**STATUTES**

31 U.S.C. § 3729(a)(1)(G) ............................................................................................................ 9

31 U.S.C. § 3729(a)(1)(A) ................................................................................................... 5, 6, 10

31 U.S.C. § 3729(a)(1)(B) ................................................................................................... 5, 6, 10

31 U.S.C. § 3730(b)(1) ............................................................................................................... 11

41 U.S.C. §§ 87 et seq. ................................................................................................................. 8

**RULES**

Fed. R. Civ. P. 12(b)(6) .............................................................................................................. 11

Fed. R. Civ. Proc. 9(b) ..................................................................................................... 5, 11, 12

## III. ARGUMENT

**A. Relator Failed to Address How Its SAC Meets FRCP 9(b)'s "Particularity" Pleading Requirement**

1. Relator contends its claims under §§ 3729(a)(1)(A) and (B) are pled with sufficient particularity in its SAC by simply copying and pasting excerpts from its SAC without demonstrating how it meets the requisite standard [Dkt. 47 at ¶ 7].

2. First, Relator alleges Corrales Defendants knowingly received a payment of $300,110, despite knowing the contract was only for $149,990, by making fraudulent demands for payment during disruptions in the government's financial system. However, Relator's Response fails to provide specific details regarding the nature of the alleged fraudulent demand, does not clarify how the demand was misleading, and omits any specific actions attributed to Corrales Defendants in deceiving the government.

3. Second, Relator alleges Corrales Defendants took advantage of the financial system's downtime to make fraudulent payment demands and that Corrales Defendants' refusal to pay back the overpaid funds demonstrates a reckless disregard for Corrales Defendants' fraudulent actions, thereby satisfying the scienter requirement [*See generally* Dkt. 47]. However, Relator's assertion that Corrales Defendants "t[ook] advantage of downed financial systems" is a conclusory and unfounded statement because Relator does not provide any factual basis showing Corrales Defendants knew of system issues, thus failing to meet the scienter requirement [Dkt. 47 at ¶ 8].

4. Finally, Relator alleges the fraudulent demands were material because the Government "actually paid" the fraudulent invoices [Dkt. 47 at ¶ 9]. In its Response, Relator relies solely on the mere fact the Government "actually paid" allegedly fraudulent invoices to establish materiality. However, as noted in *Longhi*, a case referenced by Relator in its Response, "[a]ll that is

required under the test for materiality...is that the false or fraudulent statements have the potential to influence the government's decisions." *U.S. ex rel. Longhi v. U.S.*, 575 F.3d 458, 470 (5th Cir. 2009) (emphasis added). Therefore, Relator's argument that materiality hinges on the Government's payment of purported fraudulent invoices is flawed because it fails to demonstrate which specific statements made by Corrales Defendants were false and how they were capable of influencing the Government's decision to make such payments.

5. The Response does not clearly establish how the SAC connects its allegations to the elements required under §§ 3729(a)(1)(A) and (B), thereby leaving Corrales Defendants' argument that the SAC does not conform to FRCP 9(b) unchallenged.

## B. The Theory of Implied False Certification Does Not Require Compliance With Every Potential Statutory or Regulatory Provision

6. Relator argues Corrales Defendants are liable under the theory of implied false certification by alleging Corrales Defendants failed to comply with the requirements for services he was contracted to provide [Dkt. 47 at ¶ 10]. When a defendant makes representations in submitting a claim but omits its violations of statutory, regulatory or contractual requirements, those omissions can be a basis for liability if they render the defendants representation misleading with respect to the goods or services provided. *Universal Health Services, Inc. v. United States*, 579 U.S. 176, 187, 136 S. Ct. 1989, 195 L. Ed. 2d 348 (2016).

7. The Reply sets forth the Supreme Court's two-prong test for liability under this theory [Dkt. 47 at ¶ 10] (citing *Universal Health Services, Inc.*, 579 U.S. at 187). However, the SAC does not satisfy the two-prong test because it does not: (1) specifically identify representations on Corrales Defendants' claims for payment that were impliedly false; and (2) specify the statute, regulation, or contracts terms Corrales Defendants did not comply with that rendered the specific

representation misleading half-truths [*See generally* Dkt. 22]. The mere act of submitting a claim alone does not imply compliance with all relevant statutes, regulations, and contract terms. *See, e.g.*, *United States ex rel. Barko v. Halliburton Co.*, 241 F. Supp. 37, 58–59 (D.D.C. 2017) (discussing Relator failed to link kickback allegations to false claims, and the court will not infer wrongdoing from investigations without additional evidence). Therefore, without meeting the elements of the two-prong test, Relator cannot sustain a claim based on the implied theory of false certification.

## C. Corrales Defendants are Not Bound by the Head Start Act's Conflict of Interest Provisions

8. Relator's FCA claim against Corrales Defendants should be dismissed because the Response relies on inapposite cases to support the claim, thereby failing to identify conflict of interest requirements applicable to Corrales Defendants. Relator does not address Corrales Defendants' argument regarding the inapplicability of the Head Start regulations [Dkt. 33 at ¶ 30]. Relator simply reiterates excerpts from its SAC, repeating the mischaracterization of the Head Start regulations, without providing any substantiated evidence that the contracts between Relator and Corrales Defendants contain a conflict of interest provision [Dkt. 47 at ¶ 21].

9. Relator references three federal cases that assert, "there can be little doubt that 'a government contractor's failures to disclose an organizational conflict of interest constitutes a false claim under the [FCA]'" [Dkt. 47 at ¶ 19]. However, these cases involve *contracts* that include an organizational conflict of interest provision. *See, e.g.*, *U.S. v. Science Application Intern. Corp.*, 555 F. Supp. 2d 40, 43 (D.D.C. 2008) (discussing the United States brought an FCA action against a Corporation alleging the Corporation failed to disclose organizational conflicts of interests as required under the two contracts between the Corporation and the Government).

10. In contrast, the contracts between Relator and Corrales Defendants do not include a conflict of interest provision or any similar restraints, and Relator has made no allegations to this effect [*See generally* Dkt. 22]; [*see also* Dkt. 47]. Without evidence supporting that there was a conflict of interest provision in the contracts, Relator's allegations remain unsupported and speculative and this deficiency further underscores the inapplicability of the cited cases and the insufficiency of Relator's argument.

## D. Relator Fails to Respond to Corrales Defendants' Argument Against Violations Under the Anti-Kickback Act

11. Relator's Response fails to address Corrales Defendants' argument that there was no violation under the Anti-Kickback Act of 1986[1] ("AKA"). As stated in Corrales Defendants' Motion to Dismiss, Relator's SAC fell short under the two-prong laid out in *Grubbs* [Dkt. 33 at ¶ 33–35]. *See U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009).

## E. Relator Mischaracterizes Case Law in Support of Its Argument Against the Applicability of the Public Disclosure Bar

12. To argue against the application of the public disclosure bar, Relator references *Caremark*, a Seventh Circuit case [Dkt. 47 at ¶ 26]. *See U.S. ex rel. Fowler v. Caremark RX, L.L.C.*, 496 F.3d 730, 737 (7th Cir. 2007), overruled by *Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907 (7th Cir. 2009). Relator's reliance on *Caremark* is misplaced because the Seventh Circuit overruled its interpretation of the public disclosure bar in *Glaser*. *See generally Glaser*, 570 F.3d 907 ("…*Caremark* parsed § 3730(e)(4) finely, but their focus on the dictionary meaning of 'based upon' alone was too narrow in context of the rest of the statute.").

---

[1] *See* 41 U.S.C. §§ 87 et seq.

13.     In *Glaser*, the Seventh Circuit states, "[w]e now adopt the majority position and conclude that a relator's FCA complaint is 'based upon' publicly disclosed allegations or transactions when the allegations in relator's complaint are *substantially similar to publicly disclosed allegations*. To the extent…*Caremark* interpreted the statutory phrase 'based upon' differently, those cases are *overruled*." *Glaser*, 570 F.3d at 960. (emphasis added). Under the majority view, a lawsuit is based upon publicly disclosed information when relator's allegations and the publicly disclosed allegations are substantially similar. *Glaser*, 570 F.3d at 915.

14.     In this case, information concerning the academic advisor-advisee relationship and Dr. Corrales's strategic partnership with Fueling Brains has been in the public domain well before Relator filed this lawsuit on March 27, 2023 [Dkt. 1].

15.     The Seventh Circuit case relied upon by Relator is improper because it was subsequently overruled, adopting the majority view taken by the Fifth Circuit. *See, e.g.*, *Fed. Recovery Services, Inc. v. United States*, 72 F.3d 447, 451 (5th Cir. 1995) ("An FCA qui tam action *even partly based upon* publicly disclosed allegations or transactions is nonetheless 'based upon' such allegations or transactions."). The allegations serving as the basis for Relator's FCA claims are substantially similar to information in the public domain prior to the Relator's suit. *See U.S. ex rel. Davis v. District of Columbia*, 679 F.3d 832, 836 (D.C. Cir. 2012). Therefore, the public information bar applies to Relator's lawsuit.

**F.     Relator Cannot Transform Affirmative FCA claims to Reverse False Claims**

16.     The Response heavily relies on federal cases outside the Fifth Circuit to support its contention that the § 3729 (a)(1)(G) of the FCA is applicable. However, this Court has ruled that a relator cannot transform affirmative FCA claims into reverse false claims. *See U.S. ex rel. Ligai v.*

*ETS–Lindgren Inc.*, No. CIV.A. H-112973, 2014 WL 4649885, at *13 (S.D. Tex. Sept. 16, 2014), aff'd sub nom. *U.S. ex rel. Ligai v. ESCO Techs., Inc.*, 611 Fed. Appx. 219 (5th Cir. 2015); *see also U.S. v. Bracco USA, Inc.*, No. 20CV8719 (EP) (JSA), 2022 WL 17959578, at *7 (D.N.J. Dec. 27, 2022) ("reverse false claims may not be based on the same conduct as a plaintiff's claims under 31 U.S.C. §§ 3729(a)(1)(A) and (a)(1)(B).").

17. Specifically, a failure to refund money paid by the government based on FCA claims is not actionable under the reverse FCA provision. Accordingly, Corrales Defendants' failure to refund "the same money the Government allegedly paid in relation to [Relator's] § 3729(a)(1)(a) and (B) claims" is not actionable under the reverse FCA provision. *See, e.g.*, *ETS–Lindgren Inc.*, No. CIV.A. H-112973, 2014 WL 4649885, at *13 (finding reverse FCA claims insufficient because relator merely alleged a failure to refund the same false claims the government paid and failed to identify an existing obligation to reimburse the Government.).

18. Here, no false record or statement was created by Corrales Defendants, and no overpayment form the government to Corrales Defendants occurred, failing to create an obligation to may any payment of the funds received as remuneration for the training courses to the Government.

## G. Relator's FCA Conspiracy Claims are Insufficient to Reasonably Infer an Agreement to Defraud the Government

19. The Response asserts the SAC alleges the illegal act of knowingly submitting false or fraudulent claims to the Government, with sufficient evidence of an agreement between Darrough and Dr. Corrales. In support of this contention, Relator argues Darrough and Dr. Corrales coordinated actions to ensure that Fueling Brains' false claims were paid using federal grant funding, exceeding procurement thresholds, and consolidating courses to submit false claims.

20. Relator alleges Corrales Defendants took advantage of a cyber-attack to incapacitate the Agency's financial tracking system and created a non-profit to financially benefit themselves and contents email communications further support the conspiracy, by showing coordinated efforts to market Fueling Brains and expand its reach.

21. Thus, Relator has not sufficiently alleged circumstances leading to a reasonable inference of an agreement between Darrough and Dr. Corrales to defraud the Government by submitting false claims.

## H. Common Law Claims Failure to Meet FRCP 12(b)(6) and 9(b) Pleading Standards

22. Corrales Defendants expressly incorporate the preceding paragraphs as fully set forth herein and its Motion to Dismiss for all purposes.

23. In the alternative, even if Relator's common-law causes of action are somehow not barred because of its status as a partial assignee pursuant to 31 U.S.C. § 3730(b)(1), Relator's claims still fail as a matter of law for failing to adhere to the plausibility-pleading standards provided in the Federal Rules of Civil Procedure.

24. Relator fails to plead facts sufficient to inject its common-law claims with the facial plausibility necessary for relief in accordance with FRCP 12(b)(6), as well as the heightened FRCP 9(b) standard applied to Relator's claims for Fraud and Fraud by Nondisclosure.

### (1) Fraud, Fraud by Nondisclosure, and Civil Conspiracy Claims

25. Relator's two state law fraud claims—fraud and fraud by nondisclosure—are subject to the same FRCP 9(b) requirements as their federal counterparts. *See Pace v. Cirrus Design Corp.*, No. 22-60603, 2024 WL 739343, at *3–4 (5th Cir. Feb. 23, 2024). Relator's Response contends it has plead facts setting forth the "who, what, when, where, and how" of any "knowing or

reckless material misrepresentation" because Relator's common-law claims are based on the conduct described in its argument supporting its FCA claims and are incorporated specifically by reference to avoid duplicity [Dkt. 47 at ¶ 35].

26. Relator's Response lists the elements required to establish a common law fraud claim [Dkt. 47 at ¶ 33]. However, the Response does not clearly demonstrate how the SAC connects its fraud claim to the required element, as listed in Relator's Response. Instead of providing a persuasive analysis, Relator attempts to establish its fraud claims through conclusory statements and unsupported assertions [*See generally* Dkt. 47].

27. As to Relator's fraud by non-disclosure claim, Relator lists the elements of when an affirmative duty to disclose may arise but does not explain whether Dr. Corrales had a duty to disclose his relationship with Darrough [Dkt. 47 at ¶ 34–35]. To establish Dr. Corrales had an affirmative duty to disclose, Relator must allege that Dr. Corrales owed Relator some legal or equitable duty and breached that duty. *See Archer v. Griffith*, 390 S.W.2d 735 (Tex. 1964). Relator has not identified in its Response or in its SAC: (1) any statute, regulation, or contract provision imposing a duty to disclose on Corrales Defendants; or (2) that Corrales Defendants acted as Relator's fiduciary or otherwise occupied a position in relation to Relator creating a duty to disclose. *See Neukranz v. Conestoga Settlement Servs., LLC*, No. 3:19-CV-1681-L, 2022 WL 19518462, at *13 (N.D. Tex. Nov. 23, 2022) (dismissing fraud by nondisclosure claim under FRCP 9(b) where the plaintiff had employed a group pleading and did not plead breach of fiduciary duty with specificity).

28. Lastly, the Response did not address Corrales Defendants' argument that Relator's claim for civil conspiracy should be dismissed [*See generally* Dkt. 47]. Thus, Corrales Defendants' argument in its Motion to Dismiss regarding Relator's failure to plead to plead any underlying

fraud, nor has it presented facts specific intent to defraud with particularity remains unchallenged [Dkt. 33 at ¶ 55]. *See In re Enron Corp. Sec., Derivative & ERISA Litig.*, 762 F. Supp. 2d 942, 1011 (S.D. Tex. 2010).

### (2) Relator's Quasi-Contractual Claims Fails Because Valid Contracts Govern the Issues in Dispute

29. Relator argues that if Corrales Defendants concede valid contracts exist between the parties, the case will proceed on the contractual claims, but the quasi-contractual claims nevertheless exist in the alternative [Dkt. 47 at ¶ 38]. However, Relator's argument fails because, by its own admission, there were valid contracts governing the issues at the core of the parties dispute [Dkt. 22 at ¶ 111]. Thus, Relator's quasi-contractual claims (e.g., unjust enrichment, payment by mistake, money had and received) against Corrales Defendants must be dismissed.

### (3) Relator Does Not Demonstrate Sufficient Facts to Support Its TTLA Claim

30. In Relator's Response, it addresses the TTLA against Defendant Peters, not Dr. Corrales [Dkt. 47 at ¶ 39].

31. Relator's Response claims its SAC sufficiently stated facts that Defendants knew they were not entitled to the funds, did not perform the contracted work, failed to disclose conflicts of interest, and schemed to defraud the Agency [Dkt 47 at ¶ 42]. However, "when a claim of theft is made in connection with a contract, there must be 'proof of more than an intent to deprive the owner of property and subsequent appropriation of the property.'" *Porter–Garcia v. Travis Law Firm, P.C.*, 564 S.W3d 75, 91 (Tex. App.—Houston [1st Dist.] 2018, pet. denied). Accordingly, a theory for breach of contract can support a TTLA claim only if the defendant "did not intend to deliver…at the time [it] entered into the contracts." *See Holcomb v. State*, 445 S.W.3d 767, 782 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd).

32. Relator's Response fails to allege any facts demonstrating Corrales Defendants never intended to perform at the time the parties entered into the contracts, rather it merely states, "Within the totality of the Second Amended Complaint, it is clear the Defendants…concocted a scheme to defraud the Agency and the Government" [*See* Dkt. 47 at ¶ 42].

33. Contrary to Relator's allegation that Corrales Defendants never intended to perform, Relator's SAC states, "Over the 10 month period, Sterling, at most, provided virtual emotional intelligence training to 3 people and provided financial literacy training to a total of 127 people" [Dkt. 22 at ¶ 112]. Corrales Defendants never contracted with Relator to market its services or guarantee attendance at the sessions. Nevertheless, as evidenced by Relator's SAC, the argument that Corrales Defendants never intended to perform their contractual obligations fails because Corrales Defendants provided services by holding training sessions. *Id.*

34. In conclusion, Relator's Response in support of its claim for violation of the TTLA does not include any new facts or evidence to support its claim and Corrales Defendants' Motion remains unchallenged.

## IV.  REQUEST FOR RELIEF

35. FOR THESE REASONS, Defendants Antonio Corrales and Sterling Evaluation and Assessment, LLC respectfully pray that this Court dismiss all claims asserted against them in Relator's Second Amended Complaint with prejudice, with the exception of Count Seven (Breach of Contract). Relator has already amended its complaint twice, yet has failed to cure basic pleading deficiencies, making further amendment futile.

Respectfully submitted,

**Mills Shirley L.L.P.**
2200 Market Street, Suite 300

Galveston, TX 77550
Phone: 409.763.2341
Fax: 409.763.2879

By: */s/ Fred Raschke*
 Fred D. Raschke
 Attorney-In-Charge
Texas Bar No. 16551450
S.D. Texas Bar No. 7123
fraschke@millsshirley.com
 Andres "Andy" Soto
Texas Bar No. 24071128
S.D. Texas Bar No. 1057789
asoto@millsshirley.com

**Attorneys for Defendants,
Antonio Corrales and
Sterling Evaluation and Assessment, LL**

## CERTIFICATE OF SERVICE

      By my signature, I hereby certify that a true and correct copy of this document has been served via efiling to all known parties and counsel of record on July 1, 2024.

                                        */s/ Fred Raschke*
                                        Attorney-In-Charge