United States District Court
Southern District of Texas

**ENTERED**

July 25, 2024

Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.* BAKERRIPLEY, | § § § § | |
| Plaintiff, | § | CIVIL ACTION NO. 23-cv-1124 |
| v. | § § | |
| KIDS U US, INC. d/b/a FUELING BRAINS, *et al.*, | § § § | |
| Defendants. | § § § | |

**MEMORANDUM AND OPINION**

BakerRipley, a Texas nonprofit and public charity that operates Head Start and Early Head Start federal programs throughout the Houston, Texas area, sues four defendants under the False Claims Act. (Docket Entry No. 22). BakerRipley is a designated Head Start Agency. (*Id.*). BakerRipley alleges that Kids U US, Inc. d/b/a Fueling Brains, Cimberli Darrough, Antonio Corrales d/b/a Sterling Evaluation and Assessment, LLC, and Michele Peters d/b/a MNA Evaluation and Assessment, LLC, submitted false claims and statements that defrauded the United States; engaged in a kickback program; and breached common law contractual obligations owing to BakerRipley. The defendants move to dismiss. (Docket Entry Nos. 32-36).

Based on the record and the applicable law, the court grants in part and denies in part the motions to dismiss. The reasons are set out below.

**I.     Background**

BakerRipley's claims arise from alleged conflicts of interest between its former senior director of the Head Start division (Darrough) and three vendors for Head Start programs who

provided virtual curriculum and training and who received government grants related to those programs (Corrales, Fueling Brains, and Peters). (*See generally* Docket Entry No. 22). Unbeknownst to BakerRipley, Corrales and Peters had an existing relationship with Darrough. (*Id.*). Both Corrales and Peters had served on Darrough's dissertation committee while she pursued her Ph.D. at the University of Houston—Clear Lake. Fueling Brains, Corrales, and Peters all secured grants from BakerRipley (approved by Darrough) to provide training, evaluation, and material support to BakerRipley's Head Start programs in Houston. (*Id.*).

BakerRipley claims that the defendants worked together to deceive and defraud both BakerRipley and other publicly funded entities throughout the Houston area. (*Id.* at ¶ 6). BakerRipley claims to have paid these three vendors in excess of $800,000 in federal funds as a result of their fraud and breaches of contract. (*Id.*). BakerRipley claims that Corrales failed to disclose that he had acted as a "Strategic Advisor" to Fueling Brains and that he had received payment for referring Head Start clients who signed service contracts with Fueling Brains. (*Id.* at ¶¶ 34, 142-154. Darrough also allegedly received payments from Fueling Brains, both for approving Fueling Brain's contracts with BakerRipley and for marketing the organization to other federally funded education providers across Houston. All three vendors allegedly engaged in this coordinated "kickback scheme," which helped the vendors obtain federal Head Start grants totaling over $3 million over the course of roughly two years. (*Id.* at ¶ 7).

BakerRipley also alleges that the three vendors only partially fulfilled their contracts with BakerRipley, and that Fueling Brains fraudulently misrepresented its capacity and willingness to deliver on its contractual obligations. (Docket Entry No. 45 at ¶¶ 15, 48). BakerRipley alleges that Darrough facilitated a conspiracy to circumvent the federal grant procurement requirements, so as to evade managerial scrutiny. (*Id.* at ¶ 28).

For contracts of $150,000 and over, BakerRipley used the Request for Proposal process, which takes approximately two to three months to complete and triggers additional managerial oversight. (Docket Entry No. 22 at ¶ 43). BakerRipley alleges that the three vendors, under Darrough's direction, intentionally submitted multiple invoices to BakerRipley for amounts less than that threshold to avoid the Request for Proposal process and the oversight it involves. (*Id.* at ¶ 98).

BakerRipley brings the following causes of action:

- **False Claims Act claims** (*qui tam*):
    - (1) Violation of the False Claims Act (31 U.S.C. § 3729(a)(l)(A)) – **The Submission of, or Causing the Submission of, False Claims** – *against all defendants*
    - (2) Violation of the False Claims Act (31 U.S.C. § 3729(a)(l)(B)) – **Use of False Statements** – *against all defendants*
    - (3) Violation of the False Claims Act (31 U.S.C. § 3729 (a)(l)(G)) – **Reverse False Claims** – *against all defendants*
    - (4) Violation of the False Claims Act (31 U.S.C. § 3729(a)(3)) – **Conspiracy to Violate the FCA U.S.C. 3729 (a)(l)(C)** – *against all defendants*
- **Common law claims**:
    - (5) **Unjust Enrichment** – *against Fueling Brains, Corrales, Peters*
    - (6) **Payment by Mistake** – *against Fueling Brains, Corrales, Peters*
    - (7) **Breach of Contract and Covenant of Good Faith and Fair Dealing** – *against Corrales, Peters*
    - (8) **Fraud** – *against all defendants*
    - (9) **Fraud by Nondisclosure** – *against all defendants*
    - (10) **Civil Conspiracy** – *against all defendants*
    - (11) **Money Had and Received** – *against Fueling Brains, Corrales, and Peters*
- **Texas Civil Practice and Remedies Code claims**:
    - (12) Violation of TTLA, Chapter 134 – **Theft** – *against Fueling Brains, Corrales, Peters*

## II.  The Legal Standards

### A.  Rule 12(b)(6)

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to

3

relief." Fed. R. Civ. P. 8(a)(2). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

To withstand a Rule 12(b)(6) motion, a complaint must include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Lincoln v. Turner*, 874 F.3d 833, 839 (5th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557). "A complaint 'does not need detailed factual allegations,' but the facts alleged 'must be enough to raise a right to relief above the speculative level.'" *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 765 (5th Cir. 2019) (quoting *Twombly*, 550 U.S. at 555). "Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (alterations omitted) (quoting *Twombly*, 550 U.S. at 558).

A court reviewing a motion to dismiss under Rule 12(b)(6) may consider "(1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial

notice may be taken under Federal Rule of Evidence 201." *Inclusive Cmtys Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019).

### B.  The False Claims Act and the Anti-Kickback Statute

The False Claims Act "is intended to protect the Treasury against the hungry and unscrupulous host that encompasses it on every side." *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 184 (5th Cir. 2009) (quotation omitted). "To aid the rooting out of fraud, the Act provides for civil suits brought by both the Attorney General and by private persons, termed relators." *Id.* "[R]elators share in the government's winnings, receiving a bounty of up to thirty percent of the government's proceeds." *United States ex rel. Ruscher v. Omnicare, Inc.*, No. 4:08-CV-3396, 2014 WL 2618158, at *2 (S.D. Tex. June 12, 2014) (quotation omitted).

Whether the action is prosecuted by the government or by relators, a violation of the False Claims Act occurs when: (1) "there was a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money or to forfeit moneys due (i.e., that involved a claim)." *United States v. Bollinger Shipyards, Inc.*, 775 F.3d 255, 259 (5th Cir. 2014). The scienter requirement of a False Claims Act claim requires the relator to show that false claims and records were "knowingly" made or caused to be made. *United States ex rel. Bennett v. Bos. Sci. Corp.*, 2011 WL 1231577, at *14. "Knowingly" means "actual knowledge of the information"; "deliberate ignorance of the truth or falsity of the information"; or "reckless disregard to the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A)(i)–(iii). "Material" means "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4). Specific intent to defraud is not required to establish knowledge. 31 U.S.C. § 3729(b)(1)(B).

A "kickback" is "any . . . gratuity, thing of value, or compensation of any kind that is provided to a . . . prime contractor employee . . . to improperly obtain or reward favorable treatment in connection with a . . . subcontract relating to a prime contract." 41 U.S.C. § 8701(2). The Fifth Circuit has concluded "that anything of value offered in order to subvert the 'proper' process for awarding contracts is a potential kickback." *U.S. ex rel. Vavra v. Kellogg Brown & Root, Inc.*, 848 F.3d 366, 380 (5th Cir. 2017). Examples of the "pursuit of improper favorable treatment" include receiving something of value in exchange for "forgiv[ing] deficiencies in performance, overlook[ing] shortcomings in a bid or suggested contract, . . . obtain[ing] some other treatment not generally available." *Id*.

### C.  Rule 9(b)

"[A] complaint filed under the False Claims Act must meet the heightened pleading standard of Rule 9(b)." *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009). Relators "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). That standard requires pleadings to "set forth the who, what, when, where, and how of the alleged fraud." *United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 266 (5th Cir. 2010) (quotation omitted). A relator's complaint may survive a motion to dismiss by alleging either "the details of an actually submitted false claim" or "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Grubbs*, 565 F.3d at 190.

## III.    Analysis

### A.  False Claims and False Statements under the False Claims Act

BakerRipley brings two causes of action against all defendants: (1) the submission of, or causing the submission of, false claims (31 U.S.C. § 3729(a)(1)(A)); and (2) the use of false

6

statements (31 U.S.C. § 3729(a)(1)(B)). These claims may be divided into two broad categories: (i) False Claims Act violations by the defendants stemming from their contracts with BakerRipley itself; and (ii) False Claims Act violations by the defendants due to the alleged kickback scheme stemming from Fueling Brains's contracts with other federal grantees.

### i. The False Claims Act Claims Arising from the Defendants' Contracts with BakerRipley

The False Claims Act "permits, in certain circumstances, suits by private parties on behalf of the United States against anyone submitting a false claim to the Government." *Hughes Aircraft Co. v. United States ex rel. Schumer,* 520 U.S. 939, 941 (1997). The Act attempts to balance the "promot[ion of] private citizen involvement in exposing fraud against the government" against the "prevent[ion of] parasitic suits by opportunistic late-comers who add nothing to the exposure of fraud." *U.S. ex rel. Reagan v. E. Texas Med. Ctr. Reg'l Healthcare Sys.*, 384 F.3d 168, 174 (5th Cir. 2004). The False Claims Act limits the subject-matter jurisdiction of courts adjudicating *qui tam* actions under the Act if the relator's suit is based on earlier public disclosures of sufficiently related information. The statute states:

> No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4)(A). The Fifth Circuit has established a three-question test to determine whether a public disclosure information bars a particular FCA suit:

(a) Was there a "public disclosure" of the allegations or transactions?
(b) Was the *qui tam* action "based upon" what was publicly disclosed?
(c) If so, was the relator an "original source" of the information that forms the basis of the complaint?

*U.S. ex rel. Sonnier v. Standard Fire Ins. Co*., 84 F. Supp. 3d 575, 586 (S.D. Tex. 2015) (citing

*Fed. Recovery Servs., Inc. v. United States*, 72 F.3d 447, 450 (5th Cir.1995)); see also *Graham*

*Cnty. Soil & Water Conservation Dist. v. United States*, 559 U.S. 280, 290, 130 S. Ct. 1396, 1404,

176 L. Ed. 2d 225 (2010).

The defendants argue that the public disclosure rule bars the False Claims Act claims

against Darrough and Peters related to BakerRipley itself. (Docket Entry No. 36 at ¶¶ 42-48).

BakerRipley does not dispute that Darrough's dissertation contained the information that Corrales

and Peters had served on Darrough's dissertation committee.  BakerRipley similarly does not

dispute that the dissertation has been and is available online—both on the scholarly database

ProQuest and on the University of Houston—Clear Lake's library website. (Docket Entry No. 46

at ¶ 44). The dissertation was published on the university's website in December 2021—well

before BakerRipley filed its complaint in March 2023. (*Id.*). Information in a dissertation published

on a  university's website, given the Supreme Court's broad interpretation of what counts as "news

media," meets the standard of a "public disclosure." *Graham Cty. Soil & Water Conservation Dist.*,

559 U.S. at 290 (2010) ("[t]he 'news media' referenced in [§ 3730(e)(4)(A)(iii)] plainly have a

broader sweep."); see also *Schindler Elevator Corp. v. U.S. ex rel. Kirk*, 563 U.S. 401, 408 (2011)

(holding that courts have interpreted the term "public disclosure" to include disclosures on

websites and online publications).

The public disclosure bar is meant to prevent suits that "add nothing to the exposure of

fraud"—in other words, to hinder those seeking to benefit from disclosing information that is

already publicly known.  *Reagan,* 384 F.3d at 174; *see also Jamison,* 649 F.3d at 332; *U.S. ex rel.*

*Branch Consultants v. Allstate Ins. Co.,* 560 F.3d 371, 381 (5th Cir.2009). Because the information

about a prior relationship between Darrough and Peters was publicly disclosed before the filing of this lawsuit, the information was publicly disclosed for the purpose of the False Claims Act.[1]

BakerRipley's False Claims Act causes of action against Darrough and Peters are fundamentally "based upon" the defendants' undisclosed associations with each other at the University of Houston—Clear Lake. (Docket Entry No. 22 at ¶ 17 ("Defendants knowingly failed to disclose their conflicts of interest to the Agency and other school systems and federal grantees, knowingly misrepresented their interrelationships, and made affirmative false representations of 'independence' in order to further their claims."); ¶¶ 10, 13, 16, 17, 37, 53, 57, 120, 125-27, 131, 141). BakerRipley argues that these claims are "not based upon the relationships in and of themselves, but the reciprocal nature and benefits received by virtue of those relationships[,]" (Docket Entry No. 47 at ¶ 26). But BakerRipley also states that it "would have refused to enter into . . . contract[s]" or make payments on defendants' claims, if it had known of each defendant's "affiliation with" the others (i.e., at UHCL). (Docket Entry No. 22 at ¶ 131). The public disclosure bar applies to BakerRipley's claims against Darrough and Peters.

By contrast, BakerRipley's claims against Fueling Brains and Corrales are based on separate allegations that both defendants participated in fraudulent invoicing practices and failed to provide promised goods and services, in breach of their Head Start vendor contracts with BakerRipley. (Docket Entry No. 22). A violation of the False Claims Act occurs when (1) "there was a false statement or fraudulent course of conduct; (2) made or carried out with the requisite

---

[1] BakerRipley has not proven itself to be an "original source" of the information that forms the basis of its claims. *Rockwell Int'l Corp. v. United States,* 549 U.S. 457, 467–68 (2007). An "original source" is "an individual who has 'direct' and 'independent' knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information." *Sonnier,* 84 F. Supp. 3d at 586 (citing 31 U.S.C. § 3730(e)(4)(B)). As established by both parties, BakerRipley relied specifically on the information disclosed in Darrough's dissertation (and published by the University of Houston—Clear Lake) to bring its False Claims Act causes of action.

scienter; (3) that was material; and (4) that caused the government to pay out money or to forfeit moneys due (i.e., that involved a claim)." *United States ex rel. Longhi v. Lithium Power Techs., Inc.,* 575 F.3d 458, 467 (5th Cir. 2009) (quoting *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.,* 525 F.3d 370, 376 (4th Cir. 2008)). False Claims Act claims must meet the heightened pleading standard of Rule 9(b). *Grubbs*, 565 F.3d at 185.  BakerRipley must either plead "the details of an actually submitted false claim" by Fueling Brains, or "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Grubbs*, 565 F.3d at 190.

BakerRipley's allegations of breach of contract do not allege a violation of the False Claims Act unless the allegations additionally satisfy the four requirements articulated in *Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 579 U.S. 176, 194 (2016) ("The False Claims Act is not 'an all-purpose antifraud statute,' or a vehicle for punishing garden-variety breaches of contract or regulatory violations.") (citation omitted). As BakerRipley concedes, Fueling Brains and Corrales did partially deliver on their contractual obligations, weighing against a finding of the scienter required to prove a violation of the False Claims Act.  And regardless of whether these defendants provided all the services called for by their contracts with BakerRipley, the complaint does not allege plausible facts that would support an inference that these defendants intentionally submitted "fictitious service offerings," or knowingly misrepresented that they could fulfill those service offerings. (Docket Entry Nos. 45 at ¶ 15; 22 at ¶¶ 70-80).

BakerRipley alleges that Fueling Brains submitted two invoices for "professional development" and "material kits" that were "double bill[s]." (Docket Entry No. 22 at ¶¶ 77, 89). BakerRipley also alleges that Corrales submitted two double-billed invoices for "trauma and emotional intelligence training" and "financial literacy training." (*Id.* at  ¶104). These factual

allegations are sufficiently specific to plead "reliable indicia" that Corrales and Fueling Brains possessed the requisite scienter when submitting duplicate invoices. *Grubbs*, 565 F.3d at 190. The invoices were facially redundant or identical, suggesting that the defendants should have known they were duplicates. The timing of Corrales's invoicing also suggests fraudulent intent.  He sent the second set of bills to BakerRipley soon after it had suffered a debilitating cyberattack, preventing it from verifying the procurements and payments to vendors in a timely manner. (Docket Entry No. 22 at ¶¶ 103-105). Darrough approved the duplicate invoices promptly after Corrales referred Darrough to the University of Houston College of Education Director of Student Relations for the purpose of furthering Darrough's career and networking contacts. (*Id* at ¶ 106). Finally, BakerRipley alleges that Fueling Brains and Corrales attempted to circumvent the automatic managerial review of contracts for $150,000 and over. Both defendants allegedly submitted multiple invoice "installments" for amounts just under that threshold, including a $149,000 invoice from Corrales, in order to evade scrutiny of the invoices they submitted.  (*Id*. at ¶¶ 68-69). This allegation, taken together with the alleged submission of duplicative invoices, sufficiently alleges fraud to meet Rule 9(b).

### ii.     FCA claims against Fueling Brains, Corrales, and Darrough for participating in a kickback scheme with other school systems

A "relator must provide reliable indicia that there was a kickback provided in return for the referral" to survive the Rule 9(b) standard. *U.S. ex rel. Parikh v. Citizens Med. Ctr.*, 977 F. Supp. 2d 654, 664 (S.D. Tex. 2013). Pleading reliable indicia of unlawful kickbacks requires BakerRipley to allege the wrongful conduct attributable to each defendant. *U.S. ex rel. Hebert v. Dizney*, 295 F. App'x 717, 722 (5th Cir. 2008). BakerRipley does not need to plead and prove the exact amount of the false claims, only that the defendants made specific false claims. *United States ex rel. Grubbs v. Kanneganti,* 565 F.3d 180, 189 (5th Cir. 2009).

Although BakerRipley admits that it is basing most of the allegations "on information and belief," a claim has "facial plausibility" when the pleaded facts allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).  Affidavits attached to the complaint[2] discuss the alleged kickback scheme in detail. Two former Fueling Brains employees, Dr. Nici Esch and Vinicius Ozorio, detailed a scheme by Corrales and Fueling Brains to sell Fueling Brains' services to educational entities receiving federal funding. (Docket Entry Nos. 23 at ¶¶ 8, 9; 23-1 at ¶ 8). Dr. Esch states in his affidavit that Corrales's "job was to get districts to sign up with Fueling Brains, for which he received 20% commissions." (Docket Entry No. 23 at ¶ 8). BakerRipley also alleged that Corrales emailed Fueling Brains that he expected to receive "cuts" from nine identified contracts with eight different school districts, allegedly in return for his "marketing services." (Docket Entry No. 22 at ¶ 156). Fueling Brains and Corrales both allegedly paid "referral sources"—individuals who "exercise discretion in connection with Federal Government contracts, purchases, payments, claims, or other financial transactions"—when potential clients coming through those sources accepted Fueling Brains' service proposals. (*Id.* at ¶ 34).

BakerRipley alleges that Darrough also marketed Fueling Brains to other school districts, using both her BakerRipley email and her personal email. (*Id.* at ¶¶ 142-154). Despite her knowledge of Fueling Brains's alleged failure to fulfill most of its contractual obligations with BakerRipley within the contractual timelines, Darrough appears to have worked with Corrales to sell Fueling Brains's services to other school districts. (*Id.*). In one email, Darrough provided

---

[2] When a "complaint relies substantially on the affidavits . . . these affidavits should be considered as part of the pleadings, such that the motion need not be treated as one for summary judgment." *Bosarge v. Mississippi Bureau of Narcotics*, 796 F.3d 435, 440 (5th Cir. 2015). Here the complaint relies heavily on the affidavits in the pleading of fraud, and the court can consider the affidavits as part of the pleadings at the motion to dismiss stage.

Corrales with a list of local Head Start providers, noting "This is everyone in the Houston Metropolitan Area that has any impact on Early Childhood Education…YOU OWE ME!" (*Id.*). BakerRipley also alleged that Darrough sent emails through her BakerRipley email account to the Bryan Independent School District and Fort Bend Independent School District trying to sell Fueling Brains's services. (*Id.*).

BakerRipley has pleaded that Fueling Brains, Corrales, and Darrough participated in the alleged kickback scheme, with other federal grantors, with sufficient particularity to meet Rule 9(b). BakerRipley's False Claims Act allegations for false claims and false statements under § 3729(a)(1)(A)-(B), against Fueling Brains, Corrales, and Darrough may proceed; the False Claims Act claims against Peters are dismissed.

### B. Reverse False Claims under the False Claims Act

In a reverse-false claims suit, the defendant's action "does not result in improper payment by the government to the defendants, but instead results in no payment to the government when a payment is obligated." *U.S. ex rel. Bain v. Georgia Gulf Corp.*, 386 F.3d 648, 653 (5th Cir. 2004). "Reverse false claim liability" for failing to disclose and return an overpayment from the government requires proof of the following elements: (1) a false record is created; (2) the provider knows the record is false; (3) the false record or statement is made, used, or caused to be made or used; (4) to conceal, decrease, or avoid an obligation to pay the government; and (5) the misrepresentation is material. *See* 31 U.S.C. § 3729(a)(1)(G); *U.S. ex rel. Ligai v. ETS-Lindgren Inc.*, No. CIV.A. H-112973, 2014 WL 4649885, at *12 (S.D. Tex. Sept. 16, 2014), *aff'd sub nom. U.S. ex rel. Ligai v. ESCO Techs.*, Inc., 611 F. App'x 219 (5th Cir. 2015).

BakerRipley alleges that the defendants submitted reverse false claims by "making false statements relating to their failure to provide materials and services it was to provide [BakerRipley]

and/or to repay [BakerRipley] for overpayments to which the Defendants were not entitled." (Docket Entry No. 22 at ¶ 182).   BakerRipley alleges that "had the Agency been aware of Defendants' wrongful conduct, it would have taken steps to recover" the overpayments. (*Id.* at ¶ 183). Pleading reverse-false-claims liability requires factually sufficient allegations that a contractor knowingly created a false record or knowingly concealed overpayments obtained by fraud and not repaid. *Ligai*, 2014 WL 4649885 at *12. The defendants' failure to refund "the same money the Government allegedly paid in relation to [Relator's] § 3729(a)(1)(A) and (B) claims" is not, itself, actionable under the reverse False Claims Act provision. *See U.S. v. Cath. Health Initiatives*, No. 4:18-CV-123, 2022 WL 2657131, at *11 (S.D. Tex. Mar. 31, 2022). The crux of BakerRipley's reverse false claims allegations is that the defendants did not refund the payments for the same alleged false claims at issue in the § 3729(a)(1)(A) and (B) claims. While it is true that BakerRipley or the federal government could have sought to reclaim the overpayments if reported, the failure to report the overpayments is part of the original false claims, and not a separate reverse false claim.

The allegations against the defendants do not plausibly plead a reverse false claim under the False Claims Act,   31 U.S.C. § 3729(a)(1)(G). This claim is dismissed as to all defendants.

### C.  Conspiracy to Violate the False Claims Act

To plead a conspiracy, BakerRipley must plead facts that show "(1) the existence of an unlawful agreement between defendants to get a false or fraudulent claim allowed or paid" and "(2) at least one act performed in furtherance of that agreement." *U.S. ex rel. Farmer v. City of Houston*, 523 F.3d 333, 343 (5th Cir. 2008). Specific intent to defraud is a required element, but allegations of intent are not required to be pleaded with the same level of particularity as other factual allegations. Fed. R. Civ. P. 9(b); *U. S. ex rel. Farmer v. City of Houston*, 523 F.3d 333, 343

(5th Cir. 2008). The allegations against Fueling Brains, Corrales, and Darrough described above meet the threshold for a claim of conspiracy to violate the False Claims Act. 31 U.S.C. § 3729 (a)(1)(C). The conspiracy claim against Peters does not, because there are no viable False Claims Act allegations against Peters, (*see supra* III.A), and it is dismissed.

### D.  State-law claims

#### i.      Quasi-contractual claims

BakerRipley brings claims for unjust enrichment, payment by mistake, and money had and received against Fueling Brains, Corrales, and Peters. Unjust enrichment, payment by mistake, and money had and received are quasi-contractual theories of liability. *U.S. ex rel. Campbell v. KIC Development, LLC*, No. EP-18-CV-193-KC, 2019 WL 6884485, at *17 (W.D. Tex. Dec. 10, 2019) (payment by mistake); *Stewart Title Guar. Co. v. Mims*, 405 S.W.3d 319, 339 (Tex. App.—Dallas 2013, no pet.) (unjust enrichment and money had and received).  "[W]hen a valid, express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory." *Fortune Production Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000). However, BakerRipley may plead quasi-contractual claims in the alternative, because  it disputes whether the contracts were validly formed. *See, e.g.*, *Peters v. Norwegian Cruise Line Ltd.*, No. 01-05-00906, 2007 WL 1633555, at *10 (Tex. App. June 7, 2007) (the plaintiff produced evidence that the contract was unconscionable, making his unjust enrichment claim a "viable alternative to his breach of contract claim"). The complaint adequately pleads  false claims and statements, including duplicate invoices and invoices presented in a way that circumvented internal review. (*See supra* III.A).  The quasi-contractual claims may proceed.

#### ii.     Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing

In Texas, "[t]he essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007). BakerRipley has pleaded with particularity that Fueling Brains, Corrales, and Peters, failed to completely fulfill their contracts and did not provide all the services required under their contracts. (Docket Entry No. 22).

Texas courts have resisted imposing an implied covenant of good faith and fair dealing in contracts unless there is a special relationship between the parties governed or created by a contract. *Arnold v. Nat'l Cnty. Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987). BakerRipley has not pleaded the existence of a special relationship, and the record discloses none. BakerRipley's breach of contract claims against Fueling Brains, Corrales, and Peters, may proceed; the claims for breach of covenant of good faith are dismissed.

### iii.    Fraud and Fraud by Nondisclosure

Under Texas law, a claim for fraud must allege:  (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009) (quoting *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001)). Breach of contract "combined with 'slight circumstantial evidence' of fraud is enough to support a verdict for fraudulent inducement." *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 305 (Tex. 2006). The elements of fraud by nondisclosure are that: (1) the defendant failed to disclose facts to the plaintiff; (2) the defendant had a duty to

16

disclose those facts; (3) the facts were material; (4) the defendant knew the plaintiff was ignorant of the facts and the plaintiff did not have an equal opportunity to discover the facts; (5) the defendant was deliberately silent when it had a duty to speak: (6) by failing to disclose the facts, the defendant intended to induce the plaintiff to take some action or refrain from acting; (7) the plaintiff relied on the defendant's nondisclosure; and (8) the plaintiff was injured as a result of acting without that knowledge. *Horizon Shipbuilding, Inc. v. Blyn II Holding, LLC*, 324 S.W.3d 840 (Tex. App.—Houston [14th Dist.] 2010).

Based on the plausible pleading of false claims and statements, (*see supra* III.A), BakerRipley has met the heightened standard for pleading fraud and fraud by nondisclosure against all the defendants except Peters. BakerRipley has not sufficiently alleged False Claims Act claims against Peters, because any information that could have provided the basis for such a claim was already publicly disclosed and therefore available to BakerRipley.

### iv.    Civil Conspiracy

"To allege civil conspiracy, the government and the relator must plead [] 'the defendants . . . had an agreement to commit an illegal act which resulted in the plaintiff's injury.'" *U.S. ex rel. Wilkins v. North Am. Constr. Corp.*, 173 F. Supp. 2d 601, 639 (S.D. Tex. 2001) (quoting *Thomas v. City of New Orleans*, 687 F.2d 80, 83 (5th Cir. 1982)). The "illegal act" here is the alleged knowing submission of a false or fraudulent claim to BakerRipley. Baker Ripley alleges with sufficient particularity how all the defendants except Peters worked together to submit false claims, statements, and records to BakerRipley and other government-funded school districts, in hopes of procuring contracts with BakerRipley and other educational entities to provide Head Start-related services at a substantial markup. (Docket Entry No. 45 at ¶¶19-21; *see supra* III.A).

### v.    Theft

"When a claim of theft is made in connection with a contract, there must be 'proof of more than an intent to deprive the owner of property and subsequent appropriation of the property'"; "the appropriation [must have been] a result of a false pretext or fraud." *Porter-Garcia v. Travis L. Firm,* P.C., 564 S.W.3d 75, 91 (Tex. App.—Houston [1st Dist.] 2018, pet. denied). A breach of contract can give rise to a Texas Theft Liability Act claim only if the defendant "did not intend to deliver at . . . at the time [it] entered into the contracts." See *Holcomb v. State*, 445 S.W.3d 767, 782 (Tex. App. —Houston [1st Dist.] 2014, pet. ref'd). As discussed above, BakerRipley does not plead with sufficient particularity facts showing that the defendants never intended to perform their contracts because the defendants did partially perform their contracts. (*See supra* III.A).

## IV.   Conclusion

For the reasons explained above, the defendants' motions to dismiss, (Docket Entry Nos. 32-36), are granted in part and denied in part, as follows—

- **False Claims Act claims** (*qui tam* actions)
    - (1) Violation of the False Claims Act (31 U.S.C. § 3729(a)(l)(A)) – *dismissed only against Peters*
    - (2) Violation of the False Claims Act (31 U.S.C. § 3729(a)(l)(B)) – *dismissed only against Peters*
    - (3) Violation of the False Claims Act (31 U.S.C. § 3729 (a)(l)(G)) – *complete dismissal*
    - (4) Violation of the False Claims Act (31 U.S.C. § 3729(a)(3)) – *dismissed only against Peters*
- **Common law claims**
    - (5) Unjust Enrichment – *no dismissal*
    - (6) Payment by Mistake – *no dismissal*
    - (7) Breach of Contract and Covenant of Good Faith and Fair Dealing – *no dismissal for Breach of Contract; complete dismissal of Breach of Covenant of Good Faith and Fair Dealing*
    - (8) Fraud – *dismissed only against Peters*
    - (9) Fraud by Nondisclosure – *dismissed only against Peters*
    - (10) Civil Conspiracy – *dismissed only against Peters*
    - (11) Money Had and Received – *no dismissal*
- **Texas Civil Practice and Remedies Code claims**
    - (12) Violation of TTLA, Chapter 134 – Theft – *complete dismissal*

The dismissed claims are dismissed with prejudice, as BakerRipley has already amended its complaint twice and further amendment would be futile.

SIGNED on July 25, 2024, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge