# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.* BakerRipley, | ) ) ) | |
| Plaintiffs/Relator, | ) ) | |
| v. | ) ) | Case No. 23-cv-1124 |
| Kids U US, Inc. d/b/a Fueling Brains; Cimberli Johnson Darrough; Antonio Corrales; Sterling Evaluation and Assessment, LLC; Michele Peters; and MNA Evaluation and Assessment, LLC, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## KIDS U US, INC. d/b/a FUELING BRAINS' OPPOSITION TO RELATOR'S AND PLAINTIFF'S MOTION TO QUASH SUBPOENA ISSUED TO ATTORNEYS FOR PLAINTIFF

Defendant/Counterclaim Plaintiff Kids U US, Inc. d/b/a Fueling Brains ("Fueling Brains") submits this opposition to Relator's and Plaintiff's Motion to Quash Subpoena Issued to Attorneys for Plaintiff, Schulman, Lopez, Hoffer & Adelstein ("the Firm") [Dkt. 83].

## **INTRODUCTION**

The Firm's motion puts the cart before the horse, asking this Court to effectively adjudicate a hypothetical disqualification motion without allowing Fueling Brains to take discovery regarding the underlying conduct that may support such a motion. The Firm does not seriously dispute that Fueling Brains' subpoena seeks information that is relevant to whether the Firm obtained and/or used Fueling Brains' confidential information in bringing this lawsuit. Nor does it assert, aside from a passing reference to the subpoena being "harassing" and "oppressive," that the subpoena imposes an undue burden or is otherwise disproportional to the needs of the case. *See* Dkt. 83 at 10-11. Indeed, the Firm admits that it has already identified at least some of the documents responsive to Fueling Brains' subpoena.

Nonetheless, the Firm argues it should not be required to respond to the subpoena unless Fueling Brains "produce[s] . . . evidence substantiating a claim for disqualification of counsel." *Id.* at 6. The Firm provides no authority to support its novel approach to discovery—that a party must first provide evidence to support its claim in order to take discovery regarding that claim. And for good reason; that gets the process exactly backwards. Requiring Fueling Brains to prove that disqualification is appropriate without receiving discovery would force Fueling Brains to litigate, and this Court to adjudicate, consequential issues on an incomplete record—and render the subpoena moot in the process. Moreover, the Firm seems to assume that disqualification is the only potential remedy for misuse of Fueling Brains' confidential information. But that is incorrect. Depending on what discovery reveals, other remedies may be available, including monetary sanctions and dismissal of the action. Fueling Brains is not required to prove that it is entitled to

such relief in order to take discovery.

Finally, the Firm does not explain what it believes would be sufficient to make the "preliminary showing" it says is necessary for Fueling Brains to obtain discovery. To the extent it means Fueling Brains must provide a good faith basis to believe the Firm may have an impermissible conflict of interest, Fueling Brains has easily met that standard. Attached to this brief as Exhibit 1 is the Declaration of Faisal Alimohd, Fueling Brains' Chief Financial Officer, which describes his recollection of the June 2021 meeting between Fueling Brains and Firm attorneys. As Mr. Alimohd explains, Fueling Brains sought representation from the Firm regarding its early education business in Texas. During that discussion, Fueling Brains discussed

███████████████████████████████████████████████████████████████████

████████████████████████████ Those issues go the heart of this case. Fueling Brains should be entitled to take discovery about whether the Firm received confidential information about Fueling Brains and whether and to what it extent it used that information in bringing this lawsuit.

The Court should deny the Firm's motion and order it to comply with the subpoena.

## BACKGROUND

### I.     Factual Background

As of Spring 2021, Fueling Brains was relatively new to the Texas early education marketplace. Ex. 1, Alimohd Decl. ¶ 3. It held contracts with seven customers, the second largest of which was the contract with BakerRipley that is the subject of this lawsuit. *Id*. In addition to seeking to expand its work to other school districts, Fueling Brains was also pursuing opportunities created by a recent State directive requiring public schools to provide "Pre-K3" services—that is, pre-kindergarten learning services for three-year-olds. *Id.* ¶¶ 3-4. Fueling Brains has extensive experience operating early childhood education centers in Canada and believed it could assist

schools in providing Pre-K3 services in Texas. *Id.* ¶ 4. To help Fueling Brains navigate this new potential endeavor, it began working with Ted Fujimoto, an individual who operated an educational consulting firm then called Landmark Consulting Group. *Id.*

On May 31, 2021, Mr. Fujimoto introduced Mr. Alimohd and Anil Karim, Fueling Brians Chief Executive Officer, to Joe Hoffer, an attorney with the Firm. *Id.* at ¶ 5. Mr. Fujimoto wrote that Mr. Alimohd and Dr. Karim were "looking for representation" in connection with Fueling Brains' contracts with school districts in Texas. *Id.* Mr. Fujimoto described Mr. Hoffer as "one of the top education lawyers in the State" and said that he and his firm were "well positioned to help" Mr. Alimohd and Dr. Karim. *Id.* Fueling Brains was interested in working with Mr. Hoffer because, unlike other attorneys with whom Fueling Brains had spoken, Mr. Hoffer represented charter schools, not public schools, and therefore he would not have any conflicts of interest in representing Fueling Brains. *Id.* Subsequently, Fueling Brains scheduled a meeting with Mr. Hoffer and his partner, Denise Pierce. *Id.* at ¶ 6.

The meeting took place via Zoom on June 14, 2021, and included Mr. Alimohd, Dr. Karim, Mr. Hoffer, and Ms. Pierce. *Id.* at ¶ 7. Mr. Alimohd and Dr. Karim discussed ███████████

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████████████████████████████████████

Mr. Alimohd understood his conversation with Mr. Hoffer and Ms. Pierce to be

confidential, and neither Mr. Hoffer nor Ms. Pierce ever suggested anything to the contrary. *Id*. Moreover, Mr. Hoffer and Ms. Pierce never informed him that they represented BakerRipley or had any conflicts of interest that would prevent them from representing Fueling Brains. *Id.* Mr. Alimohd left that meeting with the impression that the Firm would be able to represent Fueling Brains. *Id*. On June 18, 2021, Kaylee Kadlubar from the Firm sent an email to Mr. Alimohd, Dr. Karim, and Mr. Fujimoto, attaching what she described as the Firm's brochure, the Firm's "Profile and Personnel Resume," and an engagement letter. *Id*. at ¶ 10. Although Fueling Brains does not have any record of having signed and returned the engagement letter, Fueling Brains believed that the Firm would be available to it for legal advice moving forward. *Id.* at ¶ 11.

A few months later, on November 1, 2021, BakerRipley notified Fueling Brains that BakerRipley was terminating their contract. *See* 2d Am. Compl., ECF 22 at ¶ 82. Then, in April 2022, BakerRipley opened an internal investigation related to its contracts with Fueling Brains. *Id.* at ¶ 85. The Firm then represented BakerRipley in disclosures made to the government related to BakerRipley's mismanagement of federal funds, *see generally id.* at ¶ 20, which BakerRipley now seeks to blame on Defendants through this litigation.

On or around December 1, 2023, Fueling Brains learned that several of their school district customers had received public information requests about their work with Fueling Brains. *Id.* at ¶ 12. Fueling Brains' then-president, King Davis, reached out to the Firm to seek legal advice. *Id.* Mr. Davis was told that the Firm was not interested in the representation. *Id.* No one from the Firm informed Mr. Davis or Fueling Brains that the Firm could not represent Fueling Brains because it had filed a lawsuit against Fueling Brains. *Id.*

## II. Procedural Background

Once Fueling Brains' current counsel learned about the June 2021 meeting, it wrote to the

Firm, requesting that it preserve all documents related to communications with Fueling Brains and provide those documents to current counsel. Ex. 2, Letter from Miller to Hoffer (Aug. 29, 2024). Dr. Karim followed that letter with an email to the Firm authorizing the Firm to release the files. Ex. 3, Karim Email to Hoffer (Aug. 30, 2024). The Firm refused to provide the requested information, arguing (through newly retained counsel) that no attorney-client relationship existed and "[t]he law firm believes that any communication between it and members of [Fueling Brains] were general in nature" and not confidential. Ex. 4, Letter from Valdez to Miller (Sept. 3, 2024). Fueling Brains' response emphasized that Texas attorneys owe ethical duties to prospective clients and that Fueling Brains had a right, as a former prospective client, to the Firm's files related to Fueling Brains. Ex. 5, Letter from Sheehan to Valdez (Oct. 8, 2024). The Firm responded the same day, without addressing any of the authority cited in Fueling Brains' letter, and maintained its refusal to provide the information. Ex. 6, Letter from Valdez to Sheehan (Oct. 8, 2024). The Firm also suggested that Fueling Brains' attempt to obtain the requested information informally, without the need to involve the Court, was somehow an improper "dilatory tactic." *Id.* at 2.

Fueling Brains identified the dispute concerning its prior consultation with the Firm in the Joint Discovery/Case Management Plan as a threshold issue that should be resolved early in the litigation. *See* Dkt. 68 at 6. On January 30, 2025, Fueling Brains attempted to serve a subpoena, but the Firm refused to accept service. Fueling Brains' counsel subsequently conferred with the Firm's counsel, and the Firm agreed to identify the categories of documents in its possession that it believed were responsive to the subpoena. The Firm provided that information. *See* Dkt. 83-2.

Based on the Firm's representations that it had retained all relevant information, Fueling Brains revised the subpoena to remove a request related to the Firm's document retention policies.

Fueling Brains served the revised subpoena on February 21, 2025. *See* Dkt. 83-3.[1] The subpoena includes four targeted requests:

1. All documents related to communications with Fueling Brains, including any internal communications discussing the Firm's representation or potential representation of Fueling Brains.
2. All notes, calendar entries, files, or other documents related to the Firm's meeting with Fueling Brains in or around June 2021.
3. All engagement letters between the Firm and BakerRipley.
4. All documents reflecting or relating to the Firm's use of information obtained from Fueling Brains for purposes of This Lawsuit.

Dkt. 83-1. The Firm then moved to quash.

## LEGAL STANDARD

The Federal Rules "broad[ly] . . . permit[] the discovery of 'any nonprivileged matter that is relevant to any party's claim or defense.'" *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011) (quoting Fed. R. Civ. P. 26(b)(1)). This liberal approach to discovery applies equally to Rule 45 subpoenas. *McGehee v. Tex. Dep't of Crim. Just.*, 2018 WL 3996956, at *6 n.27 (S.D. Tex. Aug. 21, 2018).

"On a motion to quash or modify a subpoena, the moving party has the burden of proof." *Steel Dust Recycling, LLC v. Robinson*, 2023 WL 4946533, at *2 (S.D. Tex. Mar. 30, 2023). When the moving party objects on the basis of undue burden, it bears a "heavy" burden to demonstrate that "compliance with the subpoena would be unreasonable and oppressive." *In re Subpoenas to Plains All Am. Pipeline, L.P.*, 2014 WL 204447, at *3 (quoting *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818-19 (5th Cir. 2004)). Courts consider several factors in determining whether a subpoena is unduly burdensome: "(1) the relevance of the information requested; (2) the need

---

[1] The Firm incorrectly asserts that Fueling Brains refused to provide documents in its possession related to its June 2021 meeting with the Firm. *See* Dkt. 83 at 9. Fueling Brains offered to respond to a reciprocal subpoena, *see* Dkt. 83-3, but the Firm never served one.

of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed." *Id.* (quoting *Wiwa*, 392 F.3d at 818-19). If a party objects to a subpoena on the ground that it calls for privileged information, it must provide a privilege log. *See* Fed. R. Civ. P. 45(e)(2)(A); *Tolan v. Cotton*, 2010 WL 11468800, at *1 (S.D. Tex. Mar. 25, 2010).

## ARGUMENT

### I. The Firm Has Not Met Its Burden to Establish That Subpoena Requests 1, 2, and 4 Should Be Quashed

The sole basis on which the Firm moves to quash Requests 1, 2, and 4 is that Fueling Brains has not made a "preliminary showing" that it is likely to succeed on a potential disqualification motion. But the Firm points to no authority that such a showing is required. Further, although the Firm asserts that the subpoena is "overbroad, harassing, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence,"[2] it does not explain the basis for those conclusory objections, let alone support them with the specificity required by Fifth Circuit precedent.

To begin, the Firm does not cite a single case in which a court required the requesting party to make a "preliminary showing" that it is likely to succeed on a disqualification motion (or any type of motion) before it can take discovery related to such a motion. For good reason. The Firm's arguments go the merits of the potential disqualification motion—"a contested issue of fact that remains to be litigated"—and "do not give the Court a proper basis to quash or modify the subpoena[]." *W. Coast Prods., Inc. v. Does 1-5829*, 275 F.R.D. 9, 13 (D.D.C. 2011). The "merits of the [potential disqualification motion] are not relevant to the issue of whether the subpoena is

---

[2] Information need not be "reasonably calculated to lead to the discovery of admissible evidence" to be discoverable. *See* Fed. R. Civ. P. 26, 2015 advisory committee note. Here, the information Fueling Brains seeks is relevant to threshold questions to be resolved by the Court about whether the action may proceed and, if so, whether the Firm may continue to represent BakerRipley.

valid and enforceable." *Achte/Neunte Boll Kino Beteiliguns Gmbh & Co. v. Does 1-4,577*, 736 F. Supp. 2d 212, 215 (D.D.C. 2010); *see Sadis & Goldberg, LLP v. Banerjee,* 2019 WL 13403291, at *2 (S.D.N.Y. 2019) (characterizing merits arguments in a motion to quash as "premature").

To carry its burden, the Firm must demonstrate that Requests 1, 2, and 4 are unreasonable and oppressive. It has not even attempted to make such a showing—nor could it. Fueling Brains' subpoena is narrowly tailored to obtain information that is highly relevant to whether the Firm obtained Fueling Brains' confidential information and whether the Firm used that information in connection with this litigation. Fueling Brains has a compelling need for these documents. It is a small educational services company now facing an "essentially punitive" False Claims Act lawsuit, *Vermont Agency of Natural Resources v. U.S. ex rel. Stevens*, 529 U.S. 765, 784 (2000), brought by a law firm in which Fueling Brains previously confided. It is no exaggeration to say this case poses an existential threat to Fueling Brains and its ability to continue to provide its unique suite of goods and services to children in South Texas and across the United States.

Fueling Brains' subpoena seeks four discrete categories of documents for a limited time period: (1) documents related to the Firm's communications with Fueling Brains, including any internal communications discussing the Firm's representation or potential representation of Fueling Brains; (2) notes, calendar entries, files, or other documents related to the Firm's meeting with Fueling Brains in or around June 2021; (3) engagement letters between the Firm and BakerRipley; and (4) documents reflecting or relating to the Firm's use of information obtained from Fueling Brains for purposes of This Lawsuit. *See* Dkt. 83-1. The Firm cannot credibly argue that the subpoena imposes a significant burden; in fact, the Firm appears to already have identified many of the documents responsive to the subpoena. *See* Dkt. 83 at 4-5. The Court should deny the Firm's motion because it has not come close to satisfying its "heavy" burden under Rule 45.

Further, even if some sort of "preliminary showing" was required, Fueling Brains has made it. Contrary to the Firm's assertion, this is no "fishing expedition." *See* Dkt. 83 at 9. In his declaration, Mr. Alimohd attests that he and Dr. Karim met with Mr. Hoffer and Ms. Pierce to discuss █████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████ Mr. Hoffer and Ms. Pierce never suggested that this conversation was not confidential, nor did they inform Fueling Brains that the Firm had any conflicts of interest that would prevent it from representing Fueling Brains. *Id.* at ¶ 9. Mr. Alimohd left the June 14, 2021 meeting with the impression that the Firm would be able to represent Fueling Brains and received an email from the Firm on June 18, 2021 with an engagement letter attached. *Id.* at ¶¶ 9-10.

Fueling Brains is concerned that the information it shared in the June 14, 2021 meeting ████████████████████████████████████████████████████ is being used to Fueling Brains' detriment in this litigation. *Id.* at ¶ 13. BakerRipley's suit against Fueling Brains concerns the very subject matter that Fueling Brains discussed with Mr. Hoffer and Ms. Pierce—████████

███████████████████████████████████████████████████████████████

████████████████████ *See, e.g.,* Dkt. 22 at ¶¶ 33-38. At a minimum, Fueling Brains has a good faith basis to believe the Firm may have an impermissible conflict of interest sufficient to warrant the targeted discovery Fueling Brains seeks in the subpoena.

## II.     The Firm Has Not Met Its Burden to Establish That Subpoena Request 3 Should Be Quashed

The Firm objects to Request 3 on the basis that the information sought is protected by the attorney-client privilege. Dkt 83 at 6, 11. A privilege assertion, however, is not a basis for

wholesale refusal to comply with a subpoena. If the Firm believes Request 3 calls for privileged information, it must provide a privilege log. *See* Fed. R. Civ. P. 45(e)(2)(A); *Tolan*, 2010 WL 11468800, at *1 (denying motion to quash subpoena and explaining that a party "must confirm to [Rule 45(e)(2)(A)] if they wish to protect any part of the materials subpoenaed"); *Garza v. Universal Healthcare Servs., Inc.*, 2017 WL 11646817, at *5 (S.D. Tex. May 17, 2017) (similar).

Moreover, the preparation of a privilege log here is not an empty exercise. Privilege log information like the date on which BakerRipley retained the Firm and the subject matter of the representation may be relevant to a potential disqualification motion. For example, if the Firm was representing BakerRipley at the time of the Firm's June 2021 meeting with Fueling Brains and failed to disclose that during Fueling Brains' discussion of its work with BakerRipley, that may be probative of whether disqualification is appropriate. Similarly, if BakerRipley retained the Firm at a later date, the timing of that retention may be probative of whether the Firm used Fueling Brains' confidential information against Fueling Brains to build this case. Documents BakerRipley produced pursuant to this Court's February 13, 2025 order (Dkt. 75) show that BakerRipley's initial investigation, conducted by a different law firm, found no wrongdoing related to Fueling Brains. *See* Ex. 7, Investigation Summary (Feb. 4, 2022).[3] Only later—after Fueling Brains demanded that BakerRipley pay for the services it received—did BakerRipley change its tune and point the finger at Fueling Brains for BakerRipley's own shortcomings. Given this dramatic about-face, when the Firm began to represent BakerRipley in connection with Fueling Brains-related matters may also bear on the likelihood that the Firm shared Fueling Brains' confidential information.

---

[3] Although this document bears a "Privileged and Confidential" heading, Fueling Brains understands from other documents produced by BakerRipley that it waived privilege over its internal investigation and provided the underlying documents to the U.S. Government.

## CONCLUSION

For all of these reasons, the Court should deny the Firm's motion to quash and order it to produce the requested documents within seven days.

Dated: March 14, 2025

Respectfully Submitted,

*/s/ Allissa Pollard*
Allissa Pollard
Attorney-in-charge
Texas Bar No. 24065915
Southern District of Texas Bar No. 982820
**ARNOLD & PORTER KAYE SCHOLER LLP**
700 Louisiana St., Suite 4000
Houston, TX 77002
Tel.: (713) 576-2400
Fax: (713) 576-2499
Allissa.Pollard@arnoldporter.com

Randy Miller
Of counsel *(Pro Hac Vice pending)*
Colorado Bar No. 33694
**ARNOLD & PORTER KAYE SCHOLER LLP**
1144 Fifteenth St., Suite 3100
Denver, CO 80202
Tel.: (303) 863-1000
Fax: (303) 863-2301
Randy.Miller@arnoldporter.com

Christian Sheehan
Of counsel *(Pro Hac Vice)*
District of Columbia Bar No. 1045233
Megan Pieper
Of counsel *(Pro Hac Vice)*
District of Columbia Bar No. 1644966
**ARNOLD & PORTER KAYE SCHOLER LLP**
601 Massachusetts Ave, NW
Washington, DC 20001
Tel.: (202) 942-5000
Fax: (202) 942-5999
Christian.Sheehan@arnoldporter.com
Megan.Pieper@arnoldporter.com

**ATTORNEYS FOR DEFENDANT**
**KIDS U US, INC. d/b/a FUELING BRAINS**

## CERTIFICATE OF SERVICE

I hereby certify that on March 14, 2025, the foregoing document was electronically filed with the Clerk of Court using CM/ECF.

Respectfully Submitted,

*/s/ Allissa Pollard*
Allissa Pollard